assessment.  My own assessment of Dr. Dietz' expert forensic interview was that he did not include the necessary questions that are required to adequately assess PTSD.

Given what we now know about Mr. Purkey's exposure to physical, emotional, and sexual abuse during his childhood and adolescence it would be my hope that the court would have enlisted the help of an expert in the field of PTSD to provide expert testimony about the impact of Wesley Purkey's traumatic past on his psychological functioning on the day of the homicide. The expert would have administered instruments designed to measure PTSD and conducted a thorough assessment of Mr. Purkey's exposure to trauma over the course of his life. That trauma assessment would have included interviews with relatives and objective informants that could provide information about hiss exposure to trauma. The PTSD expert would have thoroughly evaluated Mr. Purkey for malingering and test many aspects of PTSD using standardized PTSD measures with demonstrated reliability and validity.

### Post-Conviction Mental Health Information

Post-conviction mental health data is collected, in part, to determine if the mental health data collected as part of the capital murder trial adequately explained the defendants' behavior at the time of the capital offense and to determine whether the court was provided with the information needed to understand the defendant's life and psychological challenges in ways that are useful in the sentencing phase.  New information about behavioral problems may provide a better way of understanding the defendant's behavior.

### Behavioral Changes Reported After Conviction

Receiving the death penalty meets DSM-5 PTSD Criteria A for a "traumatic event" because the death penalty signals the possibility of a loss of life. Because adult trauma interacts with exposure to childhood trauma to increase posttraumatic stress dramatic increases in Mr. Purkey's distress would validate the finding that Mr. Purkey has suffered from PTSD since his extensive trauma exposure as a child. After Mr. Purkey was convicted for the murder of Ms. Long and was sentenced to death he became increasingly agitated, unable to sleep, and showed increasingly severe problems in interpersonal functioning. While many of these problems would be considered a normal response to a death sentence, the symptoms that involve increased irritability and other hyperarousal symptoms as well as increasing interpersonal difficulties may reveal an exacerbation of his posttraumatic stress. These types of trauma-related behaviors are self-destructive and are often observed in people with complex PTSD[12]. These problems would also suggest that his problems with posttraumatic stress affect his ability to participate in his defense.

After experiencing increasing anxiety and fear Mr. Purkey requested psychiatric medications that had been prescribed in the past (trazadone, clozapine) and asked for increased mental health treatment. Throughout this period of increased agitation prison records noted "No sign of Mental Disorder" and his increased interpersonal problems were described as increases in antisocial behavior. As his agitation further increased, Mr. Purkey was confined to the SCU (June 2003). The SCU is an equivalent of solitary confinement. During this process Mr. Purkey was prescribed SSRI's, regarded as medications for posttraumatic stress, and in July of 2003 "Post-

---

[12] Cloitre, M., Miranda, R., Stovall-McClough, K. C., & Han, H. (2005). Beyond PTSD: Emotion regulation and interpersonal problems as predictors of functional impairment in survivors of childhood abuse. *Behavior Therapy*, *36*(2), 119-124.

9

000701

Ex_11-000114

Traumatic Stress Disorder" was added to Mr. Purkey's "Problem List". This was the first time in Mr. Purkey's long history of confinement in Department of Corrections facilities and the Federal Prison at Leavenworth that PTSD was identified as a cause of Mr. Purkey's behavioral problems. In fact, Mr. Purkey has shown high levels of anger and irritability, insomnia, and interpersonal problems throughout his thirty years of incarceration in the Kansas and Federal prison systems and his "new problems" simply represented an exacerbation of his childhood PTSD.

**Summary**: Mr. Purkey showed a pronounced increase in PTSD hyperarousal symptoms after learning that he had received the death penalty. His psychological reactions were indications of an exacerbation of his childhood PTSD and prison staff reported that PTSD was a behavior problem that was having an undeniable impact on his adult behavior.

### Historical Information Obtained After Conviction

As part of the post-conviction process mental health experts, childhood friends, relatives, and acquaintances of Mr. Purkey provided his legal team with important information that was relevant to his defense. This new information was available to the court at his capital trial. These declarations provided the following information:

1. Mr. Purkey was exposed to extremely high levels of emotional, physical, and sexual abuse over a period that spanned his early childhood, adolescence, and even his young adulthood. He was sexually abused by his mother from the age of nine through the age of twenty-two and was also abused by other people who his parents allowed inappropriate access into the Purkey home. He was emotionally and physically abused by both of his parents, other family members, teachers at school, and his first wife. Data regarding his sexual abuse was provided by his psychotherapist, Dr. Newton, who was informed of this sexual abuse in the late 1980's, years before Mr. Purkey was accused of a capital offense. As pointed in Dr. Cunningham's declaration this shows that Mr. Purkey was not fabricating reports of abuse to bolster his capital defense. Supporting declarations were provided by the following; Dr. Cunningham, Dr. Petersen, Mr. Aaron, Mr. Haggard, Dr. Newton, Margaret Noe, and Ms. Fisher.

2. Mr. Purkey was observed to use alcohol and a wide range of drugs including heroine, amphetamines, cocaine, LSD, marijuana, barbiturates, and benzodiazepines. His use of alcohol was observed to have started when was twelve years old and his drug abuse began when he was sixteen years old. His early use of alcohol and drugs was observed by many to be recreational in the early phases of his abuse, but friends noted that as he passed through his adolescence Mr. Purkey began to intoxicate himself to dampen the considerable emotional pain he suffered in response to psychological trauma and family dysfunction. Supporting declarations were provided by the following; Dr. Cunningham, Dr. Petersen, Mr. Hatfield, Mr. Bentley, Dr. Newton, Ms. Fisher, Ms. Broyles and Mr. Gary Purkey.

3. Several friends and relatives reported that Mr. Purkey was subjected to high levels of financial, material, familial, and environmental adversity and hardship as he was often not provided with sufficient financial and material support to allow him to eat a healthy diet, maintain his physical health, or dress at a standard that would be expected by his peers and adults. He was reported to lack psychological and material support from his family and was not aided by his school system or mental health providers in his community.

10

000702

Ex_11-000115

4. Mental health experts and professionals that testified at Mr. Purkey's capital murder trial was not provided with information about his extensive history of emotional, physical, and sexual abuse. In addition, experts with knowledge of Mr. Purkey's abuse were limited in their opportunities to inform the court about abuse that would clearly meet DSM-IV Criteria A for PTSD Traumatic Events. Criteria A events alert mental health professionals to either conduct a specialized PTSD assessment or make a referral to a specialist who has the expertise to conduct a specialized trauma assessment and if a PTSD diagnosis is assigned, to provide one of the evidence-based treatments for PTSD. Mr. Purkey was never provided assessment or treatment for his PTSD.

5. Family, acquaintances, counselors and therapists have reported that Mr. Purkey has shown significant signs of behavioral problems that include anxiety, irritability, depression, alcohol and drug abuse and addiction, impulsive aggression, self-destructive behavior, social and emotional withdrawal, criminal behavior, and violent behavior. Prominent behavioral abnormalities started when Mr. Purkey was approximately twelve years old. All these symptoms may be comorbid symptoms of PTSD and are often evidenced in people with a syndrome called "Complex PTSD". These reports indicate his posttraumatic stress showed an onset in childhood when Mr. Purkey was most vulnerable to the emotional, physical, and sexual abuse he suffered on a regular basis. This type of intense childhood trauma exposure has been associated with "Complex PTSD"[13].

6. High levels of alcohol and drug intoxication and addiction, violence, threatening behavior, loss of emotional control, verbal and physical aggression, unlawful behaviors including assaults, anxiety and depression, psychotic behavior, and physical, emotional, and sexual abuse were observed by acquaintances, family and friends who lived near of Mr. Purkey over the first twenty years of his life. These pathological influences increased stress in his environment and provided him with role models for unhealthy behaviors. The presence of constant threat and abuse in his immediate family and social environment increased his daily stress and undermined his family and social support, a combination of exacerbating illness factors and dramatically increasing a vulnerability to posttraumatic stress and other major mental disorders.

### Mental Health Information Available to the Court at Trial

An examination of the mental health data made available to the court indicates that information was not provided about important mental health problems that are normally associated with the types of psychological adversity and trauma experienced by Mr. Purkey. This failure to present critical information regarding environmental and family stressors and mental health problems in Mr. Purkey's lifetime include the following:

Lack of Information About Trauma Exposure: Information about Wesley Purkey's exposure to emotional, physical, and sexual abuse from the age of nine through twenty-two was not available to the court. This information was always available from Mr. Purkey. It has been reported through statements from family members, friends of the family, other convicts who heard him share about his trauma in group therapy and personal conversations, and from declarations provided by Dr. Stephen E. Peterson and Dr. Mark D. Cunningham both of whom prepared

---

[13] Roth, S., Newman, E., Pelcovitz, D., Van Der Kolk, B., & Mandel, F. S. (1997). Complex PTSD in victims exposed to sexual and physical abuse: Results from the DSM-IV field trial for posttraumatic stress disorder. *Journal of Traumatic Stress, 10*(4), 539-555.

11

Ex_11-000116

reports for Mr. Purkey's capital trial, and Dr. Rex Newton who was Mr. Purkey's psychotherapist in the 1980's at Oregon State Penitentiary. Dr. Newton was never contacted about the trial; Dr. Petersen was not called to testify in the guilt phase of the trial; and Dr. Cunningham requested information from family members regarding abuse but was never provided the information he needed to give strong testimony regarding abuse.

Lack of Information About PTSD: Much of the diagnostic information presented to the court by experts was collected when instruments were not available for the measurement of posttraumatic stress disorder. The court was never informed of that fact thus it appeared that Mr. Purkey did not show PTSD over the first thirty-five years of his life. Furthermore, when instruments that contain scales that measure PTSD were administered to Mr. Purkey the data from the PTSD scales were not included in the report of study findings (See Table 1).

Lack of Information from PTSD Assessments: Best practices for mental health indicate that a person should be assessed for exposure to traumatic events and that people who are exposed to traumatic stress should be evaluated for the presence of PTSD. This should be standard practice because a large proportion of the population of the United States has been exposed to at least one traumatic stressor and the degree of a person's exposure to traumatic stress predicts the likelihood that the person will develop PTSD. Conducting a specialized PTSD assessment is important because cases of PTSD are often missed by mental health personnel, especially when the person suffers from many Axis I Mental Health Disorders. For example, in a series of studies of the diagnostic process in community mental health centers in Connecticut it was reported that 70% of patients that met criteria for PTSD had no reference of PTSD in their Mental Health Center medical records[14].

Lack of Information About Purkey's Family History of Mental Illness and Violence: Information that three generations of Mr. Purkey's relatives suffered from alcoholism and drug addiction and committed horrendous acts of domestic violence on their partners while exposing their offspring to devastating levels of emotional, physical, and sexual abuse was withheld from the court. The empirically validated fact that multi-generational patterns of addiction and abuse transmit a familial and genetic vulnerability to alcoholism, drug addiction, and violent behavior may support an argument that Wesley Purkey was born with a genetic and familial vulnerability to PTSD, polysubstance abuse and addiction, and a propensity for violence when experiencing co-occurring posttraumatic stress and intoxication.

Court Not Informed that Individuals Exposed to Severe Repetitive Trauma During their Childhood Develop Complex PTSD: Individuals who are exposed to high levels of trauma throughout their childhood often develop "complex" forms of PTSD that are characterized by an inability to regulate their emotions, high levels of substance abuse, self-injurious and suicidal behavior, interpersonal violence, interpersonal deficits and pervasive problems with relationships, and dissociative symptoms that appear to be psychotic-like to those that are not trained in the assessment of complex PTSD. These individuals are prone to addictions and destructive behavior and their complex presentation of symptoms may not be recognized by professionals without high levels of expertise in posttraumatic stress.

---

[14] Mueser, K. T., Rosenberg, S. D., Fox, L., Salyers, M. P., Ford, J. D., & Carty, P. (2001). Psychometric evaluation of trauma and posttraumatic stress disorder assessments in persons with severe mental illness. *Psychological Assessment*, *13*(1), 110.

12

000704

Ex_11-000117

<u>Court Not Informed that People Exposed to Severe Childhood Trauma Are Susceptible to Brain Abnormalities That May Limit their Ability to Inhibit their Emotions:</u> Children exposed to high levels of traumatic stress have been shown in countless scientific studies to be vulnerable to damage of their developing brains. This damage may sensitize their HPA axis and increase their vulnerability to posttraumatic stress while damaging their executive functions and decreasing their complex reasoning abilities and their capacity to regulate their emotions and their behaviors. The impact of these potential abnormalities would be expected to interact with any possible traumatic brain injuries suffered by Mr. Purkey to decrease his ability to control his emotional behaviors and posttraumatic stress.

**Summary**

An analysis of the mental health data available to the court during Mr. Purkey's capital murder trial indicated that critically important mental health information was not available to the Court. Because it is now known that Mr. Purkey had been exposed to extensive trauma and abuse as a child it should be clear that his exposure to traumatic stress dictates that Mr. Purkey should receive a specialized PTSD assessment conducted by a PTSD expert. While data regarding Mr. Purkey's childhood trauma exposure and adult posttraumatic stress clearly indicate that he should be evaluated for PTSD a PTSD expert has never conducted a PTSD assessment with the defendant. In fact, Mr. Wesley Purkey has never been assessed for the presence of post-traumatic stress disorder in his life. Because the presence of PTSD might explain many of Mr. Purkey's behavioral problems and his behavior when committing the homicides, one could argue that Mr. Purkey was sentenced to death even though there was no information presented about the psychological disorder that is most likely to have influenced his behavior on the day of the homicide.

**Conclusions**

My analysis of mental health information that was provided to the Court at the capital trial of Mr. Wesley Purkey has supported the following conclusions:

1. The mental health data presented to the court in 2003 did not include important information regarding the mental health risk factors that influenced Mr. Purkey's behavior on the day of the capital offense.

2. The Court did not receive important information regarding Mr. Purkey's exposure to traumatic events over the first twenty years of his life. These traumatic events, many of which occurred during his childhood, would be expected to dramatically increase his risk of developing PTSD and other trauma-related mental disorders and would inhibit his ability to control angry or violent emotions.

3. The Court did not receive important mental health information that indicate that it is highly likely that Mr. Purkey suffered from PTSD when he committed the capital offense. The mental health assessments made available to the court did not adequately evaluate PTSD.

13

000705

Ex_11-000118

4. Expert testimony by Drs. Petersen and Dietz did not adequately address the possibility that Mr. Purkey suffered from PTSD on the day of the homicide. The facts that Mr. Purkey's exposure to traumatic stress was never ascertained in a scientific manner and neither expert used instruments designed to measure PTSD represent fatal flaws that threaten the validity of these expert findings.

5. The fact that Mr. Purkey was exposed to high levels of childhood trauma together with data showing that Mr. Purkey has shown emotion regulation problems, a substance abuse history, a long history of self-destructive behavior and interpersonal deficits suggests that he may suffer from a psychological syndrome called "Complex PTSD". The presence of this syndrome may explain many of Mr. Purkey's behaviors around the time of the homicide. Unfortunately, I cannot determine if Mr. Purkey suffers from complex PTSD without conducting an intensive PTSD assessment with Mr. Purkey. The lack of any previous PTSD assessments prevents me from making further inferences about the impact of PTSD on his adult behavior.

6. It is concluded that an expert trauma and PTSD assessment should be conducted with Mr. Purkey. Without such an assessment the Court will not have access to information about the psychological conditions that influenced his behavior on the day of the homicide.

Frederic Sautter, Ph.D.
Clinical Professor of Psychiatry
Department of Psychiatry and Behavioral Sciences
Tulane University Medical Center

14

000706

Ex_11-000119

# Exhibit 12



# Naples Neuropsychology, P.A.

### Robert H. Ouaou, Ph.D.

Neuropsychological Assessment                    Clinical and Forensic Psychology

## FORENSIC NEUROPSYCHOLOGICAL EVALUATION NOTE

**NAME:**          WESLEY PURKEY
**AGE:**           66

**DATE(s) OF EXAM:**    10/11/2016 & 10/12/2016

**DATE:**    October 26, 2018

Mr. Wesley Purkey was seen for a comprehensive neuropsychological evaluation on 10/11/2016 and 10/12/2016.  Voluminous medical records were reviewed at that time. Based on medical record review, interview with Mr. Purkey, and several hours of objective neurocognitive testing it was opined that the examinee suffered from the beginning stages of a dementia such as Alzheimer's disease.

It has come to my attention via his defense team that since the 2016 evaluation, Mr. Purkey has declined physically, cognitively, and psychiatrically.  There are reports that his physical appearance indicates rapid ageing, and that he becomes easily fatigued.  He is more forgetful and agitated.  Additionally, he has increased difficulties with communication and repeats himself.  At the same time, his normal activities (e.g. crafts) have diminished.

The reported pattern of change is very much consistent with progression of a cortical dementia.  Based on a review of recent records it is apparent that Mr. Purkey is not receiving the standard of care required for a person with dementia.  Mr. Purkey will likely decline further and far faster without proper medical care, especially given his multiple risk factors and 2016 test findings.  He requires further work-up (neurology, imaging) and subsequent medical treatment (e.g. a cholinesterase inhibitor) and reassessment of his neurocognitive status.

These opinions are given with a reasonable degree of neuropsychological certainty.

_____
Robert H. Ouaou, Ph.D.
Florida Licensed Psychologist (PY6868)
Neuropsychologist

801 Anchor Rode, Suite 203C • Naples, FL 34103 • Phone: 239.262.3007 • Fax: 239.263.3001
Neuropsych@me.com

Ex_12-000120