COP OUT

MR. ████████                    Turkey 14679045

    Every time you schedule me for phase II you set me up to fail - just in your nature to do so. I prefer to be right where I am rather than be what you are. Say one thing to a person then stab 'em in the back! That's the Christian thing to do. Not once since you collaborated with the good ole boy cop who issued me the retaliatory, political etc. shot have you recommended me for phase II and of course the weak and followers are going to deny it out right.

    Inmates have had to be helped to phase II being so drunk they couldn't walk. Others sent back to phase II after stabbing another inmate on phase II.

    You are definitely a good Christian man - you have a good day!

    Thank you Sir - hopefully no misnomers are found herein - or disciplinary action will be taken - won't it MR. ████████?

7/24/18

WP_GR100382

TRULINCS 14679045 - PURKEY, WESLEY IRA - Unit: THP-X-A

------------------------------------------------------------------------------------------------

FROM: 14679045
TO: USP SCU Unit
SUBJECT: ***Request to Staff*** PURKEY, WESLEY, Reg# 14679045, THP-X-A
DATE: 01/30/2018 05:24:03 PM

To: Mr. ▮▮▮▮▮
Inmate Work Assignment: ua

You advised me this date that OIC ▮▮▮▮▮ did not have to comply with SCU Policy particularly with scheluding inmates' for law library use, whereas under such policy an inmate is to submit a "written request 24 hrs before scheluding occurs" and then scheluding will take place on "a first come - first serve basis". You speciously contend that OIC ▮▮▮▮▮ has carte blanche unfettered discretion to supersede SCU Policy on whatever whim he has, and you make such bizarre untenable contention on unidentified policy promulgation. Within the applicable SCU Policy which I comply with on a daily basis by submitting a written request for law library usuage every morning at 5 a.m. for the following day allows "SCU Staff to "occasionally" make adjustments to the law library scheluding order to accommodate processes within the Unit". You connote this exception of "occasionally making adjustments to the law library scheluding order" spuriously and absolutely untenably to affording ▮▮▮▮▮ and his staff with unfettered discretion to scheduling law library scheluding. This is a palpable facade under the guise of policy mandates to cover-up ▮▮▮▮▮ retaliatory animus in circumverting my law library scheluding and you do so without conscience misgivings of any kind. Please advise me if the policy promulgation that I have identified is the applicable policy mandates that you relied on in your contention that ▮▮▮▮▮ and his staff has carte blanche authority to disregard policy dictates for scheluding inmates' law library access and if not please advise me of the authority and citation to such relied on./ Masquerading this language of given "occasional exception" for complying with policy clear and vivid mandates brings to bear the inherit facade such a guise to justify ▮▮▮▮▮ and his staff's retaliatory animus against me in circumventing my law library scheluding. As OIC ▮▮▮▮▮ and ▮▮▮ have made vividly clear that my complaints made against them for such circumvention has consequences of palcing my law library access last each and everyday - as is seen in the past three days. The counterfeit policy promulgation that you so palpably claim gives ▮▮▮▮▮ unfettered discretion to run rough-shod over my law library scheluding Mr. ▮▮▮▮▮ demonstrates the efforts taken to justify ▮▮▮▮▮ malicious retaliatory actions against me. Thank you sir for your attention to this matter.

cc: Cpt. ▮▮▮▮▮ K. ▮▮▮▮▮ /lg.dpt.; Warden ▮▮▮▮▮ /Rebecca Woodman/KCMO

WP GR100371

Ex_14-000880

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Purkey  Wesley  I.                    #14679-045          SCU          USP/TH
LAST NAME, FIRST, MIDDLE INITIAL           REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST** This administrative remedy timely follows the receipt of the attached BP-8 on March 13th, 2017 which S. ▮▮▮ refused to provide response to. See Attached BP-8. The facts germane to the issues presented here are delineated and enunciated through the attached material and will not be reiterated through subsequent paragraphs with exception of clarification purposes. Here S. ▮▮▮ claims inter alia, that his mailroom personal, J. ▮▮▮ can reject my incoming mail for whatever reasoning that they deem a security interest exist under without so much as identifying with any facts of what constitutes such security interest. Such arbitrary rejection of my incoming without affording me due processes owed to me under both applicable BOP Policy and well established law stands in acute violation of my most fundamental first amendment rights. On March 7th, 2017 Officer ▮▮▮ brought the attached BP-8 to me while I was at Recreations and asked me what this was all about. When I asked him to let me see the grievance he sarcastically told me that, "this is just your usual b.s. and I need you to go ahead and sign off on it that no informal resolution can be found - because we all know that you are not going to sign off on it anyway." "So this is just my usual b.s.," I reiterated to ▮▮▮ and he said, "that's right - your usual b.s.." "Don't worry I advised him, I will definitely quote on on these sentiments when I draft the BP-9 anent this issue. ▮▮▮ mentality shown here demonstrates the acute indifference shown to the issue presented through the attached material. Such sarcastic remarks by prison officials demonstrate indifference to prisoners legitimate issues presented via the grievance procedures. See Shimer v. Washinton, 100 F.3d 506, 509 (7th Cir. 1996); Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996). Contrary to the remark on the BP-8 response section the meeting by ▮▮▮ regarding this issue was not meaningful in effort to resolve such but to the contrary was malicious and retaliatory in effort to bully me to sign off on such.

3/14/17
DATE                    Continued Next Page                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

DATE                                                  WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                              CASE NUMBER: 896194-F1

                                                       CASE NUMBER: 896194-F1

**Part C– RECEIPT**

Return to: _____  _____  _____  _____
            LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT      INSTITUTION

SUBJECT: _____

                                          GR000448
DATE                                RECIPIENT'S SIGNATURE (STAFF MEMBER)          BP–229(13)
                                                                                  APRIL 1982
USP LVN        PRINTED ON RECYCLED PAPER

Ex_14-000881

Wesley I. Purkey #14679-045                                    BP - 9 Continued

    S. ▇▇▇ and his staff speciously believe that they can run rough-shod over inmates most fundamental rights with absolute impunity as seen here. No security interest existed for ▇▇▇ to reject my mail based on such blemish on it and per policy dictates if ▇▇▇ believed that such correspondence blemish was contraband/drugs of some sort then that material was to be immediately turned over to SIS for investigative. ▇▇▇ was without authorization under law or policy to summarily reject my correspondence based on his erroneous belief that a blemish coinstituted a security interest for doing so. Any correspondence being reject is subject to due process of advising the inmate of such reject and allowing them to give response to such first. This was not done either. Believe it or not even ▇▇▇ and ▇▇▇ are mandated to comply with BOP Policy and fundamental law. See Caldwell v. Miller, 790 F.2d 589, 610 (7th Cir. 1986). Further' prison officials must support their claims of security risk with facts, not mere blanket references to such, and not by conjectures or conclusory assertions as ▇▇▇ and his staff does. See Shimer v. Washington, supra.

    Here ▇▇▇ and his staffs' rejection of my correspondence was without affording me the mandated processes due before doing so and then doing so based on some untenable claims of security interest is both in violation of governing BOP Policy, as well as well established law.

End Of BP - 9

GR000449

Ex_14-000882

## THP/InmateToHealthSvcs - f0b3a0ed-19f2-4b11-93a1-1ca9745239e8

**From:**    THP/InmateToHealthSvcs
**To:**    ~^!PURKEY, ~^!WESLEY IRA
**Subject:**    f0b3a0ed-19f2-4b11-93a1-1ca9745239e8

The things you state that I have said are untrue. I have never stated this or anything remotely close to this. You brought a matter of pain and swelling to your lower jaw to my attention a few weeks ago (12/21/16) during SCU Department Rounds. I immediately contacted the MLP and asked them to evaluate you for your dental issue (because there was no dentist here at that time)so an antibiotic could be prescribed if needed. On 12/21/16 (that same day) you were prescribed an antibiotic for your dental issue.
On Jan 18, 2017, you stop me again during SCU Department Head Rounds and stat the infection and pain is back and that you have not been seen yet. I informed you, I had just gotten back from Leave and did not know of this issue. I then spoke directly with Dr. Buckley and asked him to please see you this week due to your dental issue. You were then seen by Dr. Buckley 01/19/2017.

The only sick call request I find was documented by Dr. Nimz on 01/15/17 for your dental issue.
In order to obtain copies of your Medical Record you must put in a hand written cop-out to Medical Records and let them know which records you would like copied.

A. Rupska, HSA
FCC Terre Haute

U.S. PENITENTIARY
TERRE HAUTE, IN 47808

>>> ~^!"PURKEY, ~^!WESLEY IRA" <14679045@inmatemessage.com> 1/20/2017 9:52 AM >>>
To: HSA Rumpka
Inmate Work Assignment: ua

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
f0b3a0ed-19f2-4b11-93a1-1ca9745239e8
Your response must come from the departmental mail box. Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***

Yesterday I was seen by Dr. Buckley who after taking xrays of the "claimed infected tooth" found a significant abscess at the very bottom of the tooth's roots clarifying the source of the protracted infection, pain and swelling. He readily conceded that waiting five days to be provided antibiotics for the pain and enormous infection was clearly unconceivable and should of been provided immediately after I made medical aware of the serious dental/medical problem. As I advised him that the reduction of pain, swelling and infection given from the antibibiotics quickly were reduced and the pain, swelling and infection returned. Of course this was bound to be the case where the root of the problem was never addressed - waiting five weeks to be seen for emergency

about:blank                              BOP 000100                              1/20/2017

Ex_14-000883

dental care as Dr. Buckely agreed was not acceptable for this aggravating abscess. It would appear Mr. Rumpka that your staff's antipathiness shown here by Nurse Cindy McGee who by the way is one of the most hateful and scornful medical peersonnel to ever work this unit underscores the acute failure to address this serious medical/dental problem, as you did as well for a protracted period. You Mr. Rumpka have pronounced the mentality that underscores McGee's and other medical staff's indifference shown to my serious medical needs, as well as all other prisoners and that is when you clarified to me that, "all inmates are liars about the pain and medical problems that they are suffering, so we always rely on the medical staff's triage notes to determine the care to be provided." Yes Sir' your pronouncement brings to bear the acute indifference shown to my serious medical/dental problem as delineated and clarified through the administrative remedies filed regarding this protracted and ossify indifference shown to such for a five week pedriod. I would appreciated a copy of Nurse Cindy McGee's triage notes for the date of December 17th, 2017 when I spoke with her and provided her with a Sick Call Request regarding the pain, infection and swelling being experienced. Yes Sir' please provide me with a copy of her Triage Notes for that morning! As Dr. Buckley immediately clarified after seeing the xray taken of the tooth - the abscess is blatant and there is no doubt that it has been causing substantial pain and infection - as the infection is in the bone of the tooth. Of course all imates' are liars as you have readily brought to bear - apparently your staff lacks character let alone any empathy for inmates who are actually suffering dire medical problems as both McGee and Nursed Nixm demonstrates by their indifferednce show to such. Thank You for your attention to these issues>
cc: file

BOP 000101

Ex_14-000884

U.S. DEPARTMENT OF JUSTICE                          REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

---

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Parkey  Wesley  T.                    #14679-045        SCU           USP/TH
_____
      LAST NAME, FIRST, MIDDLE INITIAL  *Parkey*   REG. NO.        UNIT         INSTITUTION

**Part A– INMATE REQUEST** This administrative timely follows the March 3rd, 2016 response to the attached Informal Formal Resolution that sought both redress and remedy for interrelated issues: Issue Number One being the retaliatory circumvention of the law library schelude by C.O. ███████ and other SCU Staff; Issue Number Two for SCU Unit Manager ███████ denying meaningful access to the courts' and the fundmental right to meaningfully assist in my capital post conviction proceedings by limiting my law library to one (1) hour. Both of these interrelated Issues have been delineated and articulate through the attached material and will not be reiterated through the repeated through subsequent paragraphs with exception when necessary for clarification purposes. In reponse to the interrelated issues presented the most unintelligent, asinine and evasive conclusionary claims are made literally bringing to bear the palpable cover-up occurring in-lieu of a genuine and anything within shouting distance of being a meaningful and impartial review of the irrefutable facts presented underscoring the issues presented. The response to the attached material is so palpably evasive and frivolous that it is not worth repeating what-so-ever because there is absolutely no substance to it what-so-ever. The facts articulated through the attached material brings the retaliatory circumvention of the law library schelude to bear by C.O. ███████ and other SCU Staff - whereas I have even been construed to of refused my law library schelude being forced to choose between a legal call with my Capital Attorneys' and/or have access to the law library during such call. This consideration demonstrates the maliciousness underscoring my retaliatory schelude circumvention claim, as does the many other facts presented through the attached material which the response demonstrates acute ostracism to and for good reason. The retaliatory claim is based on reprisals being taken against me for exercising my most fundamental rights to present complaints anent the conditions of my death row confinement which

March 4th, 2016                Continued Next Page                  [signature] Wesley T.
_____                                      _____
        DATE                                                  SIGNATURE OF REQUESTER

**Part B– RESPONSE**

                                                    RECEIVED
                                                  USP Terre Haute

                                                    MAR 0 7 2016

                                                    Administrative
                                                    Remedy Clerk
_____                      _____
        DATE                                  WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                       CASE NUMBER: _____
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                     CASE NUMBER: 854200-F1

**Part C– RECEIPT**

Return to: _____  _____  _____  _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT         INSTITUTION

SUBJECT: _____

_____         ⊛          _____
        DATE                                RECIPIENT'S SIGNATURE (STAFF MEMBER)            BP–229(13)
USP LVN            PRINTED ON RECYCLED PAPER                                                 APRIL 1982

WP_GR100340

Ex_14-000885

Wesley I. Purkey #14679-045
3/4/16

BP - 9 Continued
Retaliatory Acts/Law Library

C.O. ████ has clearly demonstrated his animus against me for doing for a protracted number of months. The retaliatory claim and the law library scheduling circumvention has been thoroughly brought to bear and palpably evaded by the response given to the same.

Issue Number Two was not tentatively addressed by the response regarding the undisputed law library restriction of one (1) hour by Unit Manager ████ revision of the applicable Institutional Supplement. Absolutely no reason, let alone a legitimate on exist for such heavy handed restriction especially seen under the facts set forth through the attached material bringing this issue to bear. Because of such needless one (1) hour time restrictions I am being denied the most fundamental right I have and that is to "meaningfully" assist in my capital post conviction proceedings.

I thank you for your attention to these interrelated matters and request a viable resolve of each of them in turn.

End Of Extra Page BP - 9

WP_GR100341

Ex_14-000886

INFORMAL RESOLUTION

Purkey, Wesley #14679-045
SCU/February 28th, 2016

This Informal Resolution seeks both redress and remedy for two interrelated issues under the applicable promulgation governing SCU Law Library Scheduling, and the same promulgation designating Law Library restricted time assessments for performing research and preparation of legal materials and pleadings.

Issue Number One: In retaliation for seeking redress for issues of my confinement via both the administrative remedy processes, as well as via non/formal channels Acting OIC ████ and other staff have sought reprisals against me utilizing the 'circumvention of the law library scheduling'. This issue has been addressed in the past, although it is ongoing to date. In fact ████ has clarified on different occasions that he did does not care when I submit a 'Written Request' for law library scheduling because he will make up the law library scheduling based on who he wants to take in whatever order he wants to take inmates to the law library. And' this is exactly what he does. Bringing this claim to bear on Friday 2/26/16 I submitted a Written Request at approximately 9 a.m. while in the Law Library and the officer who picked it up showed it to the Lieutenant who was stationed at the Officer's Table with OIC ████. At that time I asked that staff member if any other written law library request had been turned in for Saturday and in turn he assured me that no other written request or otherwise had been made for Saturday. The following day, Saturday I asked staff at approximately 9a.m. where I was at on the law library list and I was told that, "We don't know for sure, but you are on the list something'. This staff's typical equivocation to justify their palpable circumvention of the law library scheduling. at approximately 11:20 a.m. Inmate ███ was escorted to the law library from Upper B-Range, whereas he had not submitted a written request for law library the previous day, although told staff to 'put me back on the list' when he was escort back from the law library Friday 'Evening'. At approximately 12:30 p.m. when ███ was escorted back from the Law Library Saturday he told staff to 'place me back on the list for tomorrow'. Although I had placed a Written Request in prior to ███ making a verbal request for law on Friday for Saturday - he was taken to the main-law library. This is the usual games ████ and other staff members play when circumventing the SCU Law Library Scheduling - contrary to policy mandate that law library be given on first come-first serve basis, based on when an Inmate submits a Written Request 24 hours prior to scheduling - written request are not submitted with rare exception as I do whenever requesting scheduling - Staff just makes up a list at their discretion and takes whatever inmate they choose when they choose to do so. This bares out on this date as well, whereas I submitted a written request at 5 a.m. on Saturday for Sunday, whereas no other written request had been submitted prior to mine - at 9:30 a.m. I asked OIC ████ where I was at on the list - he provided the typical good ole boy response that, "I don't know, but you are on the list, and I will go look." ████ never returned informing me where I was at on the law library list, because he knew full well that the list

Initial Page

WP_GR100343

Ex_14-000887

was being circumvented by his co-staff ' █████ ' who is well known for such circumvention. After I refused my lunch tray this date – █████ finally allowed me to go to the law library. It is because no scrutiny takes place by Unit Manager █████ other than superficial scrutiny that is totally self-serving that these 'good ole boy retaliatory actions' continue to date.

Issue Number Two: Under █████ revised SCU Policy he has restricted mine and other inmates' library access to one (1) hour implements and did so w/o a tenable reason, let alone a legitimate one. Under well established law I have a fundamental right to assist in my capital post conviction litigation, which previous to Mr. █████ untenable restrictions I was meaningfully able to satisfy. No legitimate reason exist for such restrictions, whereas the SCU has four existing Trulincs Outlets and those Outlets sit vacant for hours at time without any inmate being access to such. So a suggested limited capacity for satisfying the different inmate's request for access isn't at issue – whereas I have submitted several different materials to Mr. █████ seeking redress for the untenable restrictions place on my law library access w/o response to date. In the recent past the true reason for these restrictions have come to light and that is that Mr. █████ and Warden █████ believes that death row inmates have had life way to easy for them in the past years. Based on the one (1) hour restrictions placed on me by Mr. █████ revised Inst.Suppl. I am being denying my most fundamental rights of access to the courts in my capital post conviction proceedings.

Thank You For Your Attention To These Matter Of Interrelated Nautre

End Of Extra Page Informal Resolution

WP_GR100344

Ex_14-000888

HW CAS 3NEJA

12/23/14

TRULINCS 14679045 - PURKEY, WESLEY IRA - Unit: THP-X-A

--------------------------------------------------------------------------------

FROM: USP SCU Unit
TO: 14679045
SUBJECT: RE:***Inmate to Staff Message***
DATE: 12/16/2014 10:57:02 AM

You have not been denied as you've alleged, rather you've been provided all the means necessary and appropriate to your needs. Concerning the privilege of microwave use and regarding your denial concerning the same, it has already been appropriately addressed to you through your administrative remedy process. Albeit perhaps not to your satisfaction, nonetheless addressed all the same. Additionally, as you've requested, a copy of the SCU policy is available in the Law Library for your review, and a copy has also been provided to you, which further provides the steps necessary to you for your being scheduled for and use of the Law Library. I hope that helps.
>>> ~^!"PURKEY, ~^!WESLEY IRA" <14679045@inmatemessage.com> 12/6/2014 6:09 PM >>>
To: Mr. Shoemaker
Inmate Work Assignment: ua

This correspondence addresses acouple of different issues the first being you staff, i.e. Mr. ▆▆▆▆ denying requisite grievance forms to take appeal to the Regional Office anent the erroneous rejection of a recently filed BP-9 regarding the ongoing and chronic retaliatory circumvention by your staff of my law library scheluding. Believe it or not Sir' denying me these requisite grievance forms is on par with denying me access to the courts. This documents such denial which occurred Friday, December 5th after sending Mr. ▆▆▆▆ a Cop Out requesting such via C.O. ▆▆▆▆ (misspelled) at 8:30 a.m. that date.
    Secondly' pretaining to your reburke regarding my request for a copy of the SCU Policy being relied on in denying me mircowave access on my range the shot by OIC ▆▆▆▆ utilized by you to reinforce your spurious claim of my ongoing disciplinary history was verbatim 'BOOGISH" as I initially advised the URC. The applicable Surrveillance Footage of the alleged incident irrefutably brought the fabrication of such claims by ▆▆▆▆ against me to bear, but of course you condone wahtever opprobrious absue of authority your staff takes against me or any other inmate for that matter. Integrity is a true commodity in this instance, isn't it! Perhaps Sir' you could demonsrate a wee bit of that commodity here and provide me with the purported policy flaunted in denying me access to the mircowave on my range - or perhaps no written policy exist and the tacit practice is "to make it up as you go." Surely not! Thank you for your genuine attention to this matter and if copying fees are required for copying of the 'flaunted policy' please advise and I will povide such.
    Last but not least Mr. ▆▆▆▆ as previously asked perhaps you could now answer whether or not ▆▆▆▆ and his staff are mandated to comply with SCU policy governing inmate's law library scheluding or are the allowed to circumvent it at whim and do so under the guise of compliance as Mr. ▆▆▆▆ interprets the applicable policy to allow? If they are then why aren't they in my case???????????? Thank you for your attention to this matter as well.

Contrary to MR. ▆▆▆▆ polpeble evesive languese I have asked him over a 003en times re steff is MAN-Dated to comply with Policy (see attached) for scheluing my law library access - after his typical equivocation as seen above he implicitly tells me that, "as long as I'm teken "sometime" to the law library is all that matters My Written Law Library Submittel everyday at 7AM are thrown in the trash - or you can verify by looking at the log book and seeing that they are not logged - the 4-12 OIC clarified policy has never been followed And will not be And either —

WP930164

Ex_14-000889

UNICOR FEDERAL PRISON INDUSTRIES, INC
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: ___Purkey___ ___Wesley___ ___I.___          #14679-045          SCU          USP/IH
        **LAST NAME, FIRST, MIDDLE INITIAL**          **REG. NO.**          **UNIT**          **INSTITUTION**

**Part A– INMATE REQUEST** This administrative remedy timely follows the SCU Case Manager ▮▮▮▮ response to my August 8th, 2013 BP-8 hereto attached. The BP-8 sought redress for the retaliatory taking of my religious diet by FSA ▮▮▮▮, Chaplain ▮▮▮▮ and ▮▮▮▮. The facts germane to that claim are delineated and clarified through the attached material and will not be reiterated herein with exception for clarification purposes through subsequent paragraphs. Two hours after submitting the attached BP-8 with allegation for the retaliatory taking of my religious diet Case Manager ▮▮▮▮ returns the BP-8 with his reponse (which demonstrates acute biasness) whereas he in mindboggling fashion claims that I have previously filed on this issue but that he will allow me to proceed with this grievance as well. This equivocal response id totally erroneous because this issue germinated the previous day, August 7th, 2013 so it awful difficult to ascertain what ▮▮▮▮ is referencing when he speciously claims that I had previously filed on this issue of my religious diet being taken in retaliation for exercising protected speech. Perhaps Mr. ▮▮▮▮ would be kind enough to step forward with such meterial utilized in previous redress sought anent this claim via administrative processes. No such material exist this maneuver was nothing more than a palpable effort to avoid addressing the merit of the claims presented. It is a given that ▮▮▮▮ should not of responded to allegations of abuse I made against him, whereas he as well utterly refused to comply with BOP Policy mandates in doing so. Under governing BOP Policy is he to perform a thorough investigation of all issues presented, documenting actions taken and then submit such findings to the SCU Unit Manager for review and signature. See Sp.Ex.(A) hereto attached. None of these mandates were complied with, but to the contrary Mr. ▮▮▮▮ tries to evade the allegations which include against himself by proviving from unintelligent evasive response. Mr. ▮▮▮▮ did verbally advise me when returning the attached material back to me that he had spoke with both FSA ▮▮▮▮ and Chaplain ▮▮▮▮ who refused to respond. This material follows in redress of ~~August 9th, 2013~~ the retaliatory taking of my religious diet. _____ SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____          _____
        **DATE**                              **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                          CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____          WP_GR000554
        **LAST NAME, FIRST, MIDDLE INITIAL**          **REG. NO.**          **UNIT**          **INSTITUTION**

WP_GR100177

Ex_14-000890

Retaliatory Taking Religious Diet/████ Chaplain ████

THX-1330.13K

Page 4

Attachment 1
THX-1330.13K

## FEDERAL CORRECTIONAL COMPLEX
## TERRE HAUTE, INDIANA
## INFORMAL RESOLUTION FORM

Inmate Name: Wesley I. Purkey _____ Reg. No. #14679-045
Unit: ____ SCU _____

August 8th, 2013

**NOTICE TO INMATE:** You are advised normally prior to filing a Request for Administrative Remedy, BP-229(13), you **must** attempt to informally resolve your complaint through your Correctional Counselor. Please follow the steps listed below:

1. **State your complaint:** This seeks both redress and remedy for the retaliatory taking of my religious diet by FSA ████ and Chaplain ████ and in support of these claims I state the following: that just hours after filing a grievance anent f/s shortages on the religious breakfast trays see Sp.Ex.(A)hereto attached FSA ████ came to the SCU - contacted Chaplain ████ and ████ had me removed from the c/f diet without affording me any of the required documentation and/or providing me with an opportunity to respond to such claims in writing. In fact the SCU administrative personnel, ████ refused to process this grievance under the ruse that I am prohibited from seeking

Continued Next Page

(If more space is needed, you may use up to one letter size (8 ½ x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to the BP-229(13) responses.)

2. **State what actions you have made to informally resolve your complaint:** Spoke with SCU Unit ████ w/o resolve, as well as with A.W. ████ who speciously claimed that f/s and religious service can have me taken off of the religious diets when-ever they choose and that he would have Chaplain ████ come speak with me - he was wrong on both accounts.

3. **State what resolution you expect:** To be immediate reinstated on the c/f diets and/or to be provided the requisite documentation per policy dictates for such removal and be allowed to respond to such allegation of violating such policy promulgation for removal.

Inmate's Signature: _[signature]_                    Date: August 8th, 2013

**Correctional Counselor's Comments (Steps to Resolve):** You have already been provided a BP9 regarding this same complaint once; another is attached for your continued process. To date no response has been received, and if you are inclined to proceed,
Counselor' Signature _[signature]_    Date: 8/8/13   you are directed
Unit Manager's Review _[signature]_    Date: 8/9/13   to do so.
Informally Resolved: _____    Date:

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED |
|---|---|---|---|---|
| DATE | | WP_GR000556 | | |

WP_GR100179

Ex_14-000891

Wesley I. Purkey #14679-045
August 8th, 2013

address for shortages and problems permeating the religious diet that occur on different dates. Of course this claim is nothing more than a ruse to erroneously reject this grievance to conceal the retaliation being spawn by. This tacit screening process created by SCU administrative personnel, ████ itself is in violation of well established law. Collins v. Goord, 438 F.Supp.2d 399, 415 (S.D.N.Y.2006). Here this rejection by ████ see Sp.Ex.(B) hereto attached demonstrates his complicity in the retaliation being taken against me by FSA ████, whereas no such mandate is promulgated under governing BOP Policy. See Inst.Suppl.#IHX-13.30K. This inventing of a screening process by prison office to reject a prisoners otherwise legitimate grievance is proscribed under tenets of the First Amendment and in this demonstrates a cross constitutional violation of ████ deliberate efforts to cover-up the grievance being filed on that date of August whereas, be speciously claims that the grievance was filed seven days earlier. Of course ████ efforts to muddle the date this grievance was filed on was to refute any retalitory claims that ████ actions were taken in retaliation, but all ████ did here through his palpable acts of misdirection was to solidify the retaliation being taken which he is complicit in by performing such acts.

On August 1st., 2013 during administrative rounds Wednesday morning ████ advised me with SCU Unit Manager ████ standing at my cell door that, "they were suppose to of taken you off c/f, why are you still on it," ████ asked me. I told him that that order was rescinded by the Chaplain Services and showed him the recission order. See Sp.Ex.(C) attached hereto. He told me that, "we will see about this because we are gettii you off the c/f meal and I don't care what the chaplain office said." With that he left the range. At this time I tried to address this matter with Ms. ████ who showed absolute indifference to such telling me that, "we'll let him and the chaplain deal with this issue. When I showed Ms. ████ the order by Chaplain Services rescinding the order to have me removed from the religious diets she merely acknowledged such and show indiff-erence to such otherwise. The following Tuesday after submitting a complain via a BP-8 (see Sp.Ex.(A)) anent further shortages and problems permeating the religious diets Soratto came to the SCU a few hours later - contacted the chaplian (I assume ████) and I was removed from the religious diet program w/o being afforded with any reason why, let alone given an opportunity to respond to such allegation of violating program mandates under PS #5360.09 as I have a ground right to do so under both policy and well established law in seeing the Y processes I have a right to a religious diet under law.

Here the taking of my religious diet anent complaints being made via the administrative runs afoul of the First Amendment's protective speech clause. See Lekas v. Briley, 405 F.3d 602, 614 (7th Cir.2005). In fact an act taken in retaliation for the exercise of constitutionally protected speech is actionable under law, even if that act when taken fror different reasons would of been proper. See Babcock v. White, 102 F.3d 267, 275 (7th Cir.1996). Even when conduct that does not violate the First Amendment rights of protective speech otherwise does when taken with a retaliatory animus. id. at 275. In fact a person who sets in motion an adverse action (such as ████ here) is just as liable for such retaliation as the person who actually commits the retaliation themselves. See King v. Zamiara, 680 F.3d 686, 692 (6th Cir.2012). Further, a person who is complicit in efforts to cover up such retaliation stands liable just the same as the person directly responsible for such retaliation as with SCU Case Manager ████ in the case sub judice. id. at 692; see alOso Purkey v. Marberry, 365 Fed.Appx. 575, 578 (7th Cir. July 13, 2010). Here ████ covert acts to cover-up ████ retaliatory actions of having me removed from the religious diets, as well as Chaplain ████ actions of having me removed from the same states cognizable First Amendment claims of retaliation themselves. See Diggie v. Riggle, 548 F.Supp.2d 548, 557 (N.D.Ind.2008).

Finally, contrary to A.W. ████ claiming implicitly that f/s or religious service can arbitrarily removed me from the religious diet program based on any whim they come up with is glaring contrary to well established particularly seen in the paramount fact that a prisoner's right to a religious diet is ground in fundament First Amendment rights. Here cross constitutional violation have been committed by ████, ████ and ████.

End Of Extra Page BP - 9

WP_GR000557

WP_GR100180

Ex_14-000892

PURKEY, Wesley
Reg. No. 14679-045
Unit: Special Confinement Unit

### Inmate Request to Staff Member Response

This is in response to your inquiries received September 5, 2012, alleging your Unit Manager is "burying his head in the sand" instead of ensuring your common fare entrees are properly cooked and stating your counselor is "playing good ole boy games, by not scheduling legal calls and denying your access to the agency's grievance process.

Once again, your Unit Manager has nothing to do with the preparation of food items. Each time you have submitted a complaint related to food preparation, it was forwarded to the Food Service Administrator and Assistant Food Service Administrator for review and to take any appropriate action needed to resolve your concerns.

You request legal call is scheduled for September 10, 2012, at 11:00 a.m. This date and time is at the request of your attorney.

As for your access to the administrative remedy process, in the first eight months of 2012, you have been issued **48** informal resolution forms; eight in January, five in February, 15 in March, three in April, five in May, three in June, three in July, and six in August. Further review of your allegation reveals that you have filed **23** formal written Administrative Remedy Request, 20 on the BP-229 (BP-9), and three Regional Administrative Remedy Appeal, BP-230 (BP-10). Therefore, evidence suggests you have not been denied access to the agency's administrative remedy process.

Furthermore, your personal attacks of staff's character are inappropriately demeaning and disrespectful. They serve no purpose, unnecessary, and will not be tolerated.

I trust this addresses your concerns.

_____9/5/2012_____
Date

Michael L. ▮▮▮▮
SCU, Unit Manager

WP928230

Ex_14-000893

PURKEY, Wesley
Reg. No. 14679-045
Unit: SCU

**Inmate Request to Staff Member Response**

This is in response to your correspondence dated April 20, 2012, concerning the grievances you filed the week of March 3, 2012.

A review of our records reveals you filed 15 grievances during the month of March. Each returned to you as indicated below:

Tracking No. 336, concerning the Law Library was returned to you on March 6, 2012;
Tracking No. 338, concerning Food Service was returned to you on March 6, 2012;
Tracking No. 339, concerning Food Service was returned to you on March 6, 2012;
Tracking No. 344, concerning Unit Officers was returned to you on March 12, 2012;
Tracking No. 345, concerning Unit Officer and Food Service was returned to you on March 15, 2012;
Tracking No. 347, concerning Food Service was returned to you on March 12, 2012;
Tracking No. 350, concerning Food Service was returned to you on March 16, 2012;
Tracking No. 351, concerning Food Service was returned to you on March 16, 2012;
Tracking No. 352, concerning Food Service was returned to you on March 16, 2012;
Tracking No. 353, concerning Food Service was returned to you on March 16, 2012;
Tracking No. 354, concerning Food Service was returned to you on March 16, 2012;
Tracking No. 355, concerning Food Service was returned to you on March 16, 2012;
Tracking No. 356, concerning Food Service was returned to you on March 16, 2012;
Tracking No. 357, concerning Food Service was returned to you on March 16, 2012;
Tracking No. 358, concerning Food Service was returned to you on March 23, 2012;

I trust this thoroughly addresses your concerns.

Michael L. ████, Unit Manager                    4/23/2012
                                                  Date

WP928911

Ex_14-000894

PURKEY, Wesley
Reg. No. 14679-045
Unit: SCU

### Inmate Request to Staff Member Response

This is in response to your correspondence dated April 19, 2012, where you allege I "equivocate" your complaint concerning the issue of you filing grievances.

When responding to your complaint I was not replying vaguely or ambiguously, nor have I attempted to mislead you, but rather informed you that I have not rejected your grievance form submissions nor have I suspended your access to the Administrative Remedy Program. However, I have returned handwritten correspondences which were illegible in need of clarification.

When you file multiple complaints Informal Resolution forms in a short period of time, it becomes unmanageable and prohibits staff from thoroughly investigating each complaint. The fewer complaints submitted each week allows staff adequate time to address your complaint.

As a reminder, as stated in Institution Supplement THX-1330.13K, Administrative Remedy Program, dated November 7, 2011, unit staff member will verbally discuss the complaint with the inmate and attempt to informally resolve the issue. If the issue is not resolved verbally, the inmate's Counselor will provide the inmate with an Informal Resolution form (BP-8).

Ordinarily, only one (1) Informal Resolution form will be issued at a time. This is not meant to impede an inmate's access to the formal review of an issue, but to ensure issues are thoroughly investigated and adequate time is allowed for informal resolution.

Correctional Counselors will ordinarily have five (5) calendar days from receipt of the form to complete the informal resolution process. An extension of two (2) days for the completion of the informal resolution process may be granted in unusual circumstances, i.e., staff involved are away from the institution, records needed cannot be located or have not yet arrived at the institution, etc.

I trust this unequivocally addresses your concerns.

Michael L. ████████, Unit Manager          Date

Ex_14-000895

Purkey, Wesley
Reg. No.  14679-045
SCU-X03-407L

---

### Inmate Request to Staff Member Response

I am in receipt of your letter received in my office on February 15, 2011, addressing your concerns in March 2010, about being woken up periodically throughout the night, and your allegations of being antagonized by staff.

Your concerns have been reviewed.   Our institutional policies require officers to ensure they observe a real person when conducting counts.   Each counting staff member must personally observe a living, breathing human body.   Staff are to ensure they observe flesh/skin for each inmate being counted.   When counting at night, a flashlight is used judiciously.   Enough light will be used to ensure the presence of the inmate, but not enough to disturb sleep unnecessarily.   I have been informed you cover yourself entirely with a blanket or towel which makes it difficult for the counting staff member to observe a living, breathing human body.   As a result, this may require the officer to knock on the door or wake you up.

The appropriate staff member was interviewed, along with a review of the cameras, and it has been determined the staff member was adhering to established procedures in a professional manner.

I trust this response addresses your concerns.

3/7/11
_____
Date

Charles L. Lockett
Complex Warden

WP928857

Ex_14-000896

BoP

## Declaration Under Penalty Of Perjury By Wesley I. Purkey

Wesley I. Purkey, being competent to make this declaration and having personal knowledge of the matters stated therein, declares pursuant to 28 U.S.C. § 1746 that:

1.    For over a year the 12 - 8 shift on the Special Confinement Unit (SCU) has and continues a campaign of retaliation taken against me for filing both grievances and lawsuits on my own behalf, as well as performing the same filings of such on the behalf of other inmates.  The retaliation consist primarily of denying me sleep throughout the night beginning from around 11:30 a.m. through 8 a.m. the following morning.  Although the 12 - 8 shift formally does not begin until 12 a.m. the 12 thr 8 shift arrive initially at 11:15 thr 11:30 to relieve the 2 - 10 shift staff.  Thereafter, that particular 12 - 8 shift staff, who is generally the Officer In Charge (OIC) makes rounds through the unit, and then the second 12 - 8 shift staff member arrives thereafter and makes rounds through the unit at approximately 11:50 thr 12 a.m.

2.    The campaign of retaliation by the 12 - 8 staff started approximately a year ago being initiated by C.O. ██████████, whereas I filed several grievances against C.O. ██████ regarding his continuous tactics of denying me sleep each and every night that he worked.  In fact I repeatedly discussed this retaliation with his supervising officer OIC ██████ who clarified that he does not control other staff members that they are accountable for their own actions, not him. During this same period ████████████ entered into the campaign of retaliation initiated by ████████████.  See Exhibit (A)P.(s)(1)thr(3) hereto attached. From that same period ████████████ has continued the campaign of retaliation denying me sleep each and every night that he works the 12 - 8 shift, and as well has recruited other 12 - 8 relief staff members to participate in such campaign of retaliation.

3.    An example of the tactics being employed against me by ████████████ and other 12 - 8 relief staff is seen through the past four nights of November 13th thr 16th, 2010.

4.    After being woke up repeatedly by a CO I did not recognize starting at around 11:40 and again and again up until around 2 a.m. I stop the other CO

p. 1 of 4

WP928858

Ex_14-000897

working on date on the 12 - 8 shift and asked her what her name was. In a very polite tone she stated that it was "Trout" like the fish. I then asked her what the other CO's name was and she asked me why I wanted it and I explained to her that he has persistently woke me up by standing either across the range blinking his flashlight repeatedly into my cell or standing at my cell door holding the flashlight in my face. Then after he wakes me up he takes off down the range and shortly returned within acouple of minutes and repeats his antics. CO ███ told me that his name was "████", and when I asked if I had heard her right she affirmed his name as being ███. ███ is approximately in his thirties, 6'3" or 4" and white. Almost immediately after stopping CO ███, ███ appeared on the range and began his tactics of walking by my cell blinking his flashlight and then immediately returning and standing across the range holding his flashlight in my face until I actual got up out of bed and went to my cell door, whereas he would then take off down the range. He repeated these tactics throughout the night, stopping briefly during the time breakfast was served and then begining again after trays were picked up.

5.    The following night these same tactics were employed by the 12 - 8 shift personnel, although I am not sure what staff members worked that night, as OIC ███ was off and relief staff was working the unit. I was repeatedly woke up by staff standing at my cell door holding their flashlights in my face and when I went to the door to get their names they continued to hold their flashlights in my face mocking me and then walking off down the range. At approximately 3:30 or 3:35 one of the 12 - 8 staff started beating on my cell door with his flashlight and simultaneously yelling in my cell "get the hell up you piece of shit." These tactic continued until around 5 a.m. when staff stood almost constantly at my cell door beating on it, shining their flashlights into my cell and into my face on a continuous basis until around 5:40 a.m. and breakfast was

served. After breakfast the harassment continued until 8 a.m.

6.    During the 12 - 8 shift November 15th, 2010 starting at around 11:50 COs' ███ and ███ repeatedly woke me up through 12:10. They continued to wake me up or deny me going to sleep by standing at my cell door or across the range and shining their flashlights into my cell and holding the light directly in my face. At approximately 1:30 a.m. I stop C.O. ███ on the range and asked him what the other officer's name was working witb him and he asked me why I wanted to know, whereas I told him that I was sick and tired of him and the

p. 2 of 4

WP928859

Ex_14-000898