# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WESLEY I. PURKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 19-03570 (TSC) |
| | ) | |
| WILLIAM P. BARR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, TO TRANSFER

Defendants hereby move this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) to dismiss Wesley Purkey's Complaint or, in the alternative, to transfer this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1404. A memorandum of law in support is attached, along with a proposed order.

Dated: February 24, 2020

Respectfully submitted,

TIMOTHY J. SHEA
United States Attorney

By   /s/ *J. Benton Hurst*

BRIAN P. CASEY
KATHLEEN D. MAHONEY
J. BENTON HURST (D.D.C. Bar #MO009)
DAVID WAGNER
Special Assistant United States Attorneys

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri   64106
Telephone: (816) 426-3122
Fax: (816) 426-5186
E-mail:   Brian.Casey@usdoj.gov
            Kate.Mahoney@usdoj.gov
            John.Hurst@usdoj.gov
            David.Wagner@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WESLEY I. PURKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 19-03570 (TSC) |
| | ) | |
| WILLIAM P. BARR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iv

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................4

LEGAL STANDARDS FOR DISMISSAL...................................................................8

ARGUMENT

    I.     Rule 12(b)(1): The Court Lacks Jurisdiction Because the Case Is Either Moot or Is Not Ripe .................................................................................10

    II.    Rule 12(b)(6): Purkey Fails to State a Claim Because Congress Requires *Ford* Challenges to be Brought under § 2241 ..........................................12

         A.     Congress's Enactment of § 2241 Precludes Any Implied Equitable Remedies Here .........................................................13

         B.     *Ford* Claims Must be Brought under § 2241 .............................14

         C.     Purkey Applies the Wrong Test to the Wrong Time .................16

         D.     Purkey's Complaint Cannot be Construed as a Habeas Petition ..............19

    III.    Rule 12(b)(6): Purkey's *Ford* Claim Fails to State a Claim for Relief Because He Has Not Plausibly Alleged He is Incompetent .................................21

         A.     Dr. Agharkar's Report Does Not Support a Plausible Claim of Incompetency ..................................................................21

         B.     Purkey's History of Mental Illness Does Not Support a Plausible Claim of Incompetency ..............................................25

         C.     Purkey's Filing of Grievances and Pro Se Litigation Do Not Support a Plausible Claim of Incompetency .............................26

         D.     Purkey's Dementia and Recent Alzheimer's Diagnosis Do Not Support a Plausible Claim of Incompetency .............................27

E.     Purkey's Difficulty Communicating with Counsel Does Not Support a Plausible Claim of Incompetency .............................................28

F.     Purkey's Own Statements and Writings Show He Understands the Reason for His Execution .........................................................................29

IV.    Rule 12(b)(6): Purkey's Due Process Claim Fails to State a Plausible Claim for Relief Because a Competency Hearing Is Not Required Unless and until a Prisoner Makes a Substantial Showing of Incompetency ...................31

V.     If this Court Does Not Dismiss Purkey's Claims, It Should Transfer the Case to the Southern District of Indiana ...................................................33

A.     Purkey Could Have Brought His Claims in the Southern District of Indiana.........................................................................................................33

B.     The Convenience of the Parties and Witnesses and Interests of Justice Warrant Transfer .........................................................................34

CONCLUSION....................................................................................................................39

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014).................................................18

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)..................................................11

*Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251 (D.D.C. 2013)..........................8

*Accurso v. Fed. Bureau of Prisons*, No. 17-cv-02626 (APM), 2018 WL 4964501
 (D.D.C. Oct. 15, 2018)...................................................................................38

*Aktieselskabet v. Fame Jeans, Inc.*, 525 F.3d 8 (D.C. Cir. 2008)......................9

*Alexandar v. Sandoval*, 532 U.S. 275 (2001) .................................................14

*Alston v. Johnson*, 208 F. Supp. 3d 293 (D.D.C. 2016)...................................10

*Aref v. Lynch*, 833 F.3d 242 (D.C. Cir. 2016)..................................................11

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ......................11

*\*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ...........13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................9, 24

*Atkins v. Virginia*, 536 U.S. 304 (2002)..........................................................5, 20

*Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156 (D.C. Cir. 1997) .....11

*Bally Gaming, Inc. v. Kappos*, 789 F. Supp. 2d 41 (D.D.C. 2011)..................33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................9

*Briggs v. Goodwin*, 569 F.2d 1 (D.C. Cir. 1977)............................................33

*Bucklew v. Precythe*, 587 U.S. ___, 139 S. Ct. 1112 (2019) ............................3

*Burton v. Stewart*, 549 U.S. 147 (2007)...........................................................11

*Coe v. Bell*, 209 F.3d 815 (6th Cir. 2000).......................................................28

*D.C. Ass'n of Chartered Pub. Sch. v. Dist. of Columbia*, 930 F.3d 487 (D.C. Cir. 2019) ............13

*Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660 (D.C. Cir. 2013)................................................16

*Day v. Trump*, 860 F.3d 686 (D.C. Cir. 2017)......................................................................19, 20

*EC Term of Years Trust v. United States*, 550 U.S. 429 (2007) ..........................................14

*Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21 (D.D.C. 2014) ..............................29

*\*Ford v. Wainwright*, 477 U.S. 399 (1986) ...................................................................1, 21, 32

*Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66 (2013)...................................................10, 11

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1 (D.C. Cir. 2019) ....11

*\*Hill v. McDonough*, 547 U.S. 573 (2006)......................................................................15, 16, 17

*Hinck v. United States*, 550 U.S. 501 (2007) ..................................................................14

*Hines v. GEO Grp., Inc.*, 544 F. Supp. 2d 39 (D.D.C. 2008) ......................................................36

*In re Pope*, 580 F.2d 620 (D.C. Cir. 1978) ..................................................................34

*In re Sealed Case*, 494 F.3d 139 (D.C. Cir. 2007).........................................................9

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249 (D.C. Cir. 2005)............8, 9

*Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35 (D.D.C. 2006)..........................................38

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) ..............................................11

*Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1 (D.D.C. 2016)..........................................9

*\*Madison v. Alabama*, 586 U.S. __, 139 S. Ct. 718 (2019) ..................................21, 25, 27, 28, 32

*Mathis v. Geo Grp., Inc.*, 535 F. Supp. 2d 83 (D.D.C. 2008)...................................36, 38

*Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (TSC),
2019 WL 6691814 (D.D.C. Nov. 20, 2019) .................................................................6

*McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809 (10th Cir. 1997)...............................18

*Moghaddam v. Pompeo*, __ F. Supp. 3d __, No. 19-cv-688 (CKK), 2020 WL 364839
(D.D.C. Jan. 22, 2020) ..................................................................................8

*Muhammad v. Close*, 540 U.S. 749 (2004).................................................................14

*Nelson v. Campbell*, 541 U.S. 637 (2004) ...............................................................14, 15, 17, 18

*Nestor v. Hershey*, 425 F.2d 504 (D.C. Cir. 1969) ...................................................34

*Panetti v. Quarterman*, 551 U.S. 930 (2007)...............................................21, 29, 32

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)...............................................................14, 15

*Purkey v. Green*, 28 F. App'x 736 (10th Cir. 2001) ...............................................26, 27

*Purkey v. United States*, 729 F.3d 860 (8th Cir. 2013)...........................................5

*Purkey v. United States*, No. 19-cv-414, 2019 WL 6170069
   (S.D. Ind. Nov. 20, 2019)...............................................................6, 20, 37

*Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79 (D.D.C. 2015) ...........................29

*Reid v. Hurwitz*, 920 F.3d 828 (D.C. Cir. 2019) ...............................................11

*Roman-Salgado v. Holder*, 730 F. Supp. 2d 126 (D.D.C. 2010) ...............................34

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ...............................................................19, 20

*Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017)...................13, 14

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) ...............................................................14

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ...........................................14

*Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019) ...................................................13

*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005)...........................18

*Stafford v. Briggs*, 444 U.S. 527 (1980) ...............................................................33

*Stanley v. Davis*, 2015 WL 435077 & n.4 (N.D. Cal. Feb. 2, 2015) ...........................18

*Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974)...................................34, 35, 36, 38

*Stern v. Fed. Bur. of Prisons*, No. 07-00564, 2007 WL 1555830 (D.D.C. Mar. 22, 2007)...........38

*Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998)...................................................11

*Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235 (D.C. Cir. 2004) ...............................19, 20

*Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215 (D.D.C. 2012)...........................10

*True the Vote, Inc. v. Internal Revenue* Serv., 831 F.3d 551 (D.C. Cir. 2016)............................11

*United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005)..........................................................4

*United States v. Sanchez-Gomez*, 584 U.S. —, 138 S. Ct. 1532 (2018) ........................................10

*Vanover v. Hantman*, 77 F. Supp. 2d 91 (D. D.C. 1999)........................................................10

*Wales v. Whitney*, 114 U.S. 564 (1885) ........................................................................20

*Walton v. Johnson*, 440 F.3d 160 (4th Cir. 2006)..............................................................28

*Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117 (D.D.C. 2011) ........................10

*Ward v. Hutchinson*, 558 S.W.3d 856 (Ark. 2018)...............................................................18

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) ........................................................16, 20

*Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163 (D.D.C. 2007) ................................8

*Young v. Dir., U.S. Bureau of Prisons*, 367 F.2d 331 (D.C. Cir. 1966) ................................33, 38

*Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir. 2000)...........................................................26

## Statutes

18 U.S.C. § 3596.............................................................................................5

28 U.S.C. § 1391........................................................................................33, 34

28 U.S.C. § 1404...........................................................................................33

28 U.S.C. § 2241...............................................................................1, 5, 19, 30

28 U.S.C. § 2254...........................................................................................19

28 U.S.C. § 2255.........................................................................................4, 6

42 U.S.C. § 1983...........................................................................................14

## Rules

Fed. R. Civ. P. 12(b)(1)..................................................................................1, 8

Fed. R. Civ. P. 12(b)(6)....................................................................................9

**<u>Regulation</u>**

28 C.F.R. § 26.4 ..................................................................................................................34

## INTRODUCTION

A federal jury convicted Plaintiff Wesley Ira Purkey of kidnapping, raping, and murdering a 16-year-old girl named Jennifer Long and returned a verdict of death. Purkey's conviction and sentence were affirmed on appeal, and he exhausted his post-conviction remedies. On July 25, 2019, the Attorney General scheduled Purkey's execution for December 13, 2019.

Purkey filed suit in this Court late last year claiming that he is incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986). He alleges that carrying out his execution would violate the Eighth Amendment and seeks a declaratory judgment that he is incompetent and an injunction preventing his execution. He also claims that carrying out his execution without first providing a hearing on the issue of his competency would violate the Due Process Clause of the Fifth Amendment and the Eighth Amendment.

Purkey's lawsuit is fatally defective and should be dismissed. *First*, Purkey's *Ford* claim is either moot or unripe, so this Court lacks subject matter jurisdiction. Since Purkey filed his Complaint, his scheduled execution date has passed, and in a separate litigation this Court has preliminarily enjoined the Government from carrying out Purkey's execution. As his claims only ripen when his execution has been scheduled, this Court must dismiss. Furthermore, Purkey alleges that any period of incompetency could be temporary, so any determinations this Court could reach about Purkey's competency while the preliminary injunction remains in place would be advisory, and Purkey's competency may need to be litigated all over again after a new execution date is set.

*Second*, Purkey fails to state a claim because his *Ford* challenge must be brought through a habeas petition under 28 U.S.C. § 2241 in the district of his confinement. Purkey claims to be seeking equitable relief directly under the Constitution, but he cannot state a claim for implied equitable relief because Congress displaced equitable causes of action by enacting a remedial

scheme under habeas. Purkey cannot avoid the procedures enacted by Congress—including limitations on venue—simply by asking this Court to imply an equitable cause of action. Purkey seeks a declaration that would bar the Government from carrying out his execution, so he must bring his claim in habeas in the Southern District of Indiana.

*Third*, Purkey fails to state a claim for relief under *Ford* because he does not plausibly allege he is incompetent to be executed. A single psychiatrist, Dr. Bhushan Agharkar, interviewed Purkey and opined that although Purkey said he accepts that he will be executed for murdering Jennifer Long, Purkey is actually "parroting" and does not rationally understand why he will be executed. However, as Purkey's own writings and statements attached to his Complaint make clear, Dr. Agharkar confused Purkey's understanding of the reason for his execution with Purkey's alleged understanding of why the Government scheduled his execution date. Purkey is currently litigating a separate pro se lawsuit that challenges the reason for setting his execution date and argues that the Government scheduled his execution date in retaliation for his frequent grievances and pro se lawsuits. But Purkey's alleged confusion about the reason for setting his execution date does not mean that he cannot understand why he was sentenced to death and will be executed.

Purkey also alleges that he has a history of mental illness, is delusional about BOP retaliation, was recently diagnosed with Alzheimer's disease, and does not get along with his lawyers, but none of these allegations address the core question of whether he is capable of rationally understanding the reason for his execution. Purkey's own writings and statements attached to his Complaint show that he is.

*Fourth*, Purkey fails to state a claim for relief under the Due Process Clause because he is not entitled to a hearing on the issue of his competency until he first makes a substantial threshold showing of incompetency, which he has failed to do.

Purkey's claims should be dismissed, but if this Court declines to dismiss either or both of them, it should transfer this case to the Southern District of Indiana, where Purkey is incarcerated. Purkey could have brought this case in the Southern District of Indiana, and the convenience of the parties and witnesses and interests of justice all warrant transfer.

*   *   *

Purkey's litigation strategy in this case and others he is pursuing in parallel is self-evident: He seeks to avoid imposition of his lawfully imposed sentence by filing as many claims as possible in as many courts as possible to cause as much delay as possible. In particular, Purkey's *Ford* claim became ripe as soon as his execution date was set on July 25, 2019 for December 13, yet he waited until November 26—less than a month before his execution date— to file this lawsuit. And he inexplicably filed in this Court, even though it has no connection to his crime, his conviction and sentence, or his place of incarceration, and even though he concedes he could have brought his claims through a habeas petition in the court where he is already simultaneously pursuing habeas relief on other grounds.

The Supreme Court recently cautioned against permitting death row inmates to pursue litigation tactics designed to delay their executions, *see Bucklew v. Precythe*, 587 U.S. __, 139 S. Ct. 1112, 1133-34 (2019), which is exactly what Purkey is attempting here. This Court should reject Purkey's dilatory litigation ploy and either dismiss this case or transfer it to the Southern District of Indiana, where it can be expeditiously resolved.

## BACKGROUND

Purkey is currently confined in the United States Penitentiary in Terre Haute, Indiana, awaiting execution. Compl. ¶ 1, ECF No. 1.

In 2003, a jury in the Western District of Missouri convicted Purkey for his 1998 interstate kidnapping, rape, and murder of 16-year-old Jennifer Long. Special Verdict Form, *United States v. Purkey*, No. 01-CR-00308-FJG (W.D. Mo. Nov. 19, 2003), ECF No. 487; *see also United States v. Purkey*, 428 F.3d 738, 744 (8th Cir. 2005). Purkey confessed to the crime against Ms. Long while awaiting state prosecution for the murder of 80-year-old Mary Ruth Bales. *Purkey*, 428 F.3d at 745. He disclosed the location where he had discarded Ms. Long's undergarments and jawbone, but the remainder of Ms. Long's body was unrecoverable because he had dismembered it with a chain saw and then burned the remains. *Id.* At the penalty phase of the trial in 2004, the jury found as an aggravating factor that Purkey had killed Ms. Bales by repeatedly striking her in the head with a hammer. *Id.* at 746. The jury determined that Purkey should be sentenced to death. *Id.*

Prior to Purkey's trial, a magistrate judge conducted a hearing to determine his competency to stand trial. Minute Entry, *United States v. Purkey*, No. 01-CR-00308-FJG (W.D. Mo. Sept. 17, 2002), ECF No. 105. Purkey was found competent. Report and Recommendations on Competency, *United States v. Purkey*, No. 01-CR-00308-FJG (W.D. Mo. June 6, 2003), ECF No. 219; Order Adopting Report and Recommendations, *United States v. Purkey*, No. 01-CR-00308-FJG (W.D. Mo. July 29, 2003), ECF No. 237.

The Eighth Circuit affirmed Purkey's conviction and sentence on direct appeal. *Purkey*, 428 F.3d at 764. He exhausted his post-conviction remedies in 2014, after the Eighth Circuit affirmed the denial of his motion under 28 U.S.C. § 2255, and the Supreme Court denied his

petition for certiorari. *Purkey v. United States*, 729 F.3d 860 (8th Cir. 2013), *cert. denied*, 135 S. Ct. 355 (2014).

On July 25, 2019, the United States Department of Justice scheduled Purkey's execution for December 13, 2019. Compl. ¶ 1; *see also* 18 U.S.C. § 3596(a).

On August 27, 2019, Purkey filed a petition in the Southern District of Indiana under 28 U.S.C. § 2241 raising eight grounds for relief, including contentions that his trial counsel ineffectively failed to investigate mitigation evidence related to his mental health and that his death sentence violated *Atkins v. Virginia*, 536 U.S. 304 (2002). Petition for Writ of Habeas Corpus, *Purkey v. United States*, No. 19-CV-00414 (S.D. Ind. Aug. 27, 2019), ECF No. 1. Though he included an *Atkins* claim challenging the imposition of his death sentence based on his alleged incompetence when he committed the offense, *see id.* at 192-200, Purkey did not include a *Ford* claim challenging his present competence to be executed.

During the course of that § 2241 litigation, however, Purkey's counsel informed the Southern District of Indiana that they were "diligently preparing a petition that Mr. Purkey is incompetent to be executed, a claim that did not become ripe until his execution date was set and has required additional investigation and updated mental health evaluations and testing." The document containing this statement was filed ex parte in the Southern District of Indiana but was filed in this case as Exhibit 28 to the Declaration of Rebecca E. Woodman. *See* ECF No. 7-30 at 5. In the § 2241 litigation, Purkey's counsel sought ex parte an order directing that Purkey undergo certain brain imaging tests that "will also bear on the question of whether Mr. Purkey is competent to be executed, an issue that is ripe in his case." Ex. 20 to Woodman Decl. at 1, ECF No. 7-22; Compl. ¶ 6.

5

Also during the pendency of that § 2241 litigation, Purkey filed an action in this Court challenging the Government's lethal injection protocol. Complaint, *Purkey v. Barr*, No. 19-cv-03214-TSC (D.D.C. Oct. 25, 2019), ECF No. 1. That suit was consolidated with other similar challenges. *See In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (TSC) (D.D.C.).

On November 20, 2019, the Southern District of Indiana found that none of Purkey's claims satisfied the saving clause of 28 U.S.C. § 2255(e) and accordingly denied Purkey's § 2241 petition with prejudice. *Purkey v. United States*, No. 19-cv-414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019). The court also denied Purkey's motion for a stay of his execution. *Id.* Purkey appealed the denial of three of those claims to the Seventh Circuit, and that appeal is pending. *See Purkey v. United States*, No. 19-3318 (7th Cir.).

Also on November 20, 2019, this Court stayed the executions of Purkey and other federal prisoners pending further litigation concerning the Government's execution protocol. *In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (TSC), 2019 WL 6691814, at *8 (D.D.C. Nov. 20, 2019). The United States appealed the stay, and that appeal is currently pending before the D.C. Circuit. *See In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-5322 (D.C. Cir.). Per order of this Court, briefing on a dispositive motion in that litigation is currently scheduled to be complete on October 5, 2020. Order, *In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (TSC) (D.D.C. Feb. 19, 2020), ECF No. 81.

Six days after the Southern District of Indiana denied his § 2241 petition, Purkey filed the present civil Complaint in this Court raising the *Ford* claim that he omitted from his § 2241 petition in the Southern District of Indiana. Compl., ECF No. 1. Purkey's Complaint pleads two

claims. First, Purkey alleges that carrying out his execution would violate the Eighth Amendment because he is incompetent. Compl. ¶¶ 109-14. Second, Purkey alleges that executing him without first providing a hearing to determine his competency would violate the Due Process Clause of the Fifth Amendment and the Eighth Amendment. Compl. ¶¶ 116-21. Purkey seeks a declaration that he is incompetent, an evidentiary hearing to determine whether he is competent, and an injunction barring his execution during any period of incompetency and lasting until his competency is restored. Compl. at 57.

Along with his Complaint, Purkey filed a "Notice of Designation of Related Civil Cases Pending in This or Any Other United States Court" stating that his *Ford* litigation is related to the protocol cases before this Court. ECF No. 3. Purkey did not identify his § 2241 litigation to this Court as a related case. Purkey's Complaint does not explain why he chose not to raise his *Ford* claims under § 2241 in the Southern District of Indiana, although he filed his habeas petition there after the Attorney General had scheduled his execution date.

On December 4, 2019, Purkey moved this Court to preliminarily enjoin his execution, despite the fact that this Court has already stayed his execution in the protocol litigation. Plaintiff's Motion for a Preliminary Injunction, ECF No. 7. The Government responded that Purkey could not raise his *Ford* claim in the District of Columbia because jurisdiction for that claim lies only in the Southern District of Indiana. Defendants' Opposition, ECF No. 10.

This Court granted Purkey's subsequent motion to withdraw his preliminary injunction motion, but ordered him to answer the Government's challenge to the Court's jurisdiction over his *Ford* claim. Minute Order (Dec. 31, 2019). Purkey's counsel filed a response on January 14, 2020. ECF No. 14. Both the Government and Purkey filed additional briefing on the topic. ECF Nos. 16, 17.

In addition to the litigation described above, Purkey also has two additional pro se actions pending in the Southern District of Indiana: On July 26, 2019, Purkey raised claims relating to his dental care. Bivens Action, *Purkey v. Underwood*, 19-cv-355-JMS-DLP (S.D. Ind. July 26, 2019), ECF No. 1. On October 28, 2019, Purkey filed a pro se action challenging his selection for an execution date. Civil Rights Complaint, *Purkey v. Barr*, No. 19-cv-517-JRS-DLP (S.D. Ind. Oct. 28, 2019), ECF No. 1.

To sum up, Purkey is currently litigating four cases relating to his execution in two different districts: (1) this case, (2) his § 2241 petition filed in the Southern District of Indiana and currently on appeal in the Seventh Circuit, (3) his pro se action in the Southern District of Indiana challenging his selection for an execution date, and (4) the execution protocol litigation in this Court.

## LEGAL STANDARDS FOR DISMISSAL

*Rule 12(b)(1)*. A Rule 12(b)(1) motion tests this Court's subject-matter jurisdiction. "In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged." *Moghaddam v. Pompeo*, __ F. Supp. 3d __, No. CV 19-688 (CKK), 2020 WL 364839, at *3 (D.D.C. Jan. 22, 2020). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* (quoting *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007)). "Finally, in determining whether it has jurisdiction, the Court 'may consider materials outside of the pleadings.'" *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 257 (D.D.C. 2013) (quoting *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C.

Cir. 2005)). "Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence." *Id.*

*Rule 12(b)(6).* A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. To survive a motion to dismiss, a complaint must contain sufficient facts that, when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Aktieselskabet v. Fame Jeans, Inc.*, 525 F.3d 8, 16-17 (D.C. Cir. 2008); *In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing *Twombly*). Under this standard, a complaint must contain "more than 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). A plaintiff must therefore plead facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and offer "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While a plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged," this Court "need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 11-12 (D.D.C. 2016) (quotation omitted).

When ruling on a motion under Rule 12(b)(6), the Court may consider "facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" and "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."

*See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 n. 2 (D.D.C. 2011) (declining to convert motion to dismiss to motion for summary judgment) (internal quotations and citations omitted). "[W]here a document is referred to in the complaint or is central to the plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D. D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002). "'Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint.' Otherwise, 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" *Alston v. Johnson*, 208 F. Supp. 3d 293, 298 (D.D.C. 2016) (Chutkan, J.) (quoting *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217-18 (D.D.C. 2012)) (internal citation omitted).

## ARGUMENT

### I.     Rule 12(b)(1): The Court Lacks Jurisdiction Because the Case Is Either Moot or Is Not Ripe

Purkey seeks an injunction against his execution, but this Court has already enjoined his execution, the date set for his execution has passed, and the Department of Justice has not set a new date. For so long as that injunction remains in place, this Court lacks jurisdiction because this case is either moot or unripe.

First, a claim must be ripe to present a case or controversy. "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *United States v. Sanchez-Gomez*, 584 U.S. —, 138 S. Ct. 1532, 1537 (2018) (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)). "Where injunctive or declaratory relief is sought, the doctrine of ripeness serves 'to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156, 166 (D.C. Cir. 1997) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). A *Ford* claim does not ripen until the Government sets an execution date. *See Burton v. Stewart*, 549 U.S. 147, 154-55 (2007) (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998)).

Second, the claim must remain live throughout the litigation. "A corollary to this case-or-controversy requirement is that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Symczyk*, 569 U.S. at 71 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)). A case is moot if the court's decision "will neither 'presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 12 (D.C. Cir. 2019) (quoting *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016)). "As applied in the context of injunctive litigation, if there remains no conduct to be enjoined, then normally there is no relief that need be granted, the case or controversy has ceased, and the jurisdiction of the court has expired under Article III." *True the Vote, Inc. v. Internal Revenue Serv.*, 831 F.3d 551, 561 (D.C. Cir. 2016). "The party seeking jurisdictional dismissal must establish mootness, while the opposing party has the burden to prove that a mootness exception applies." *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019).

Purkey's *Ford* claim was ripe when he filed his Complaint because the Attorney General had scheduled his execution. Since then, however, the scheduled execution date has passed, and this Court has enjoined the Government from executing Purkey's sentence. While that preliminary injunction remains in place, Purkey cannot be executed, and this Court cannot effectively grant him the injunctive relief he seeks. Purkey apparently recognized as much when he moved to withdraw his motion for a preliminary injunction in this case. Motion to Withdraw, ECF No. 11.

Furthermore, if Purkey's assertion that any period of competency may be temporary were true, *see* Brief at 2, 7-9, ECF No. 14; Reply Brief at 2-3, ECF No. 17, any factual conclusions this Court could reach about Purkey's competency during the period that the preliminary injunction remains in place would be advisory. For this reason, Purkey's claim is either unripe or moot, and this Court lacks jurisdiction to consider it.

## II.    Rule 12(b)(6): Purkey Fails to State a Claim Because Congress Requires *Ford* Challenges to be Brought under § 2241

Purkey now claims not to seek relief under the Administrative Procedure Act, but instead to seek equitable relief directly under the Constitution. Brief at 5-6, ECF No. 14; Reply Brief at 4, ECF No. 17. Purkey cannot state a claim for implied equitable relief, however, because Congress has enacted a remedial scheme under habeas, which precludes any possible equitable cause of action seeking the same relief. Purkey cannot avoid the procedures enacted by Congress—including limitations on venue—by asking this Court to imply a cause of action without those procedures.

Challenges to the execution of a death sentence must be brought in habeas if "a grant of relief would necessarily bar the execution." Purkey attempts to avoid this conclusion by framing the injunction he seeks as a temporary one, but the Supreme Court considers whether a ruling

would "necessarily bar the execution" by considering the present effect of a successful claim, not whether future circumstances might undermine it.

Because Purkey's claims can only be heard in habeas, they must be brought against his custodian and in the Southern District of Indiana. This Court cannot hear them and should dismiss.

### A.    Congress's Enactment of § 2241 Precludes Any Implied Equitable Remedies Here

Purkey's claim to "seek equitable relief directly under the Constitution," Reply Brief at 4, ECF No. 17; *see* Brief at 5-6, ECF No. 14, elides a critical distinction between the purported *source* of the right he asserts and the *cause of action* he needs to seek relief. "[S]uits to enjoin official conduct that conflicts with the federal Constitution are common," but "the cause of action for such claims does not arise under the Constitution itself." *D.C. Ass'n of Chartered Pub. Sch. v. Dist. of Columbia*, 930 F.3d 487, 493 (D.C. Cir. 2019); *accord Sierra Club v. Trump*, 929 F.3d 670, 694-98 (9th Cir. 2019). "Rather, it exists as 'the creation of courts of equity.'" *D.C. Ass'n*, 930 F.3d at 493 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)). As another court has noted in following *Armstrong*, the Supreme Court drew a "careful distinction between the 'source of [a] federal right[]' and the 'creat[ion of] a cause of action.'" *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 900 n.10 (10th Cir. 2017) (quoting *Armstrong*, 575 U.S. at 324-25).

Because he fails to understand this difference, Purkey fails to recognize that Congress may limit a court's power to provide equitable relief, even for violations of constitutional rights. "The power of federal courts in equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong*, 575 U.S. at 327. The principle is "well-established" that, "in most contexts, 'a precisely drawn, detailed statute pre-empts more general

remedies.'" *Hinck v. United States*, 550 U.S. 501, 506 (2007) (quoting *EC Term of Years Trust v. United States*, 550 U.S. 429, 433 (2007)). "Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).

The Supreme Court has refused to imply a cause of action for injunctive relief where it found Congress had "implicitly preclude[d] private enforcement." *Armstrong*, 575 U.S. at 328. The Court concluded that Congress intended to foreclose private enforcement of Medicaid's reimbursement provisions in part because the statute provided for enforcement by the Secretary of Health and Human Services, and "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* (quoting *Alexandar v. Sandoval*, 532 U.S. 275, 290 (2001)). "We have no warrant," the Court concluded, "to revise Congress's scheme simply because it did not 'affirmatively' preclude the availability of judge-made action at equity." *Id.* at 329; *cf. Safe Streets Alliance*, 859 F.3d at 900 n.11. This was true even though refusing to imply the cause of action left the plaintiffs with no recourse at all. *Armstrong*, 575 U.S. at 329.

### B.    *Ford* Claims Must be Brought under § 2241

Relying on similar principles, the Supreme Court has held that the federal habeas statute precludes resort to more general causes of action. For example, an action under 42 U.S.C. § 1983 "must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence." *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)); *accord Muhammad v. Close*, 540 U.S. 749, 750-51 (2004). "It would wholly frustrate congressional intent," the Court has held, to permit

prisoners to evade the habeas statute's procedural requirements "by the simple expedient of putting a different label on their pleadings." *Preiser*, 411 U.S. at 489. "By contrast, constitutional claims that merely challenge the conditions of a [state] prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance." *Nelson*, 541 U.S. at 643.

The Supreme Court has recognized that the distinction between challenges to the "fact of [a] conviction or the duration of [a] sentence" and claims challenging "the conditions of a prisoner's confinement" does not translate perfectly to the death penalty. *Id.* at 644. Instead, in death penalty litigation the Court has written that the "criterion" is "whether a grant of relief to the inmate would necessarily bar the execution." *Hill v. McDonough*, 547 U.S. 573, 583 (2006). If so, that claim must be brought in habeas. *See id.* at 580-83; *Nelson*, 541 U.S. at 643-44. For example, *Nelson* concludes that "[a] suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity' of the sentence itself—by simply altering its method of execution, the State can go forward with the sentence." 541 U.S. at 644. Likewise, *Hill* explains *Nelson*'s holding by concluding that the claim in *Nelson* "did not challenge an execution procedure required by law, so granting relief would not imply the unlawfulness of the lethal injection sentence." 547 U.S. at 580. *Hill* ultimately reaches the same conclusion: the plaintiff could sue under § 1983 because his "action if successful would not necessarily prevent the State from executing him by lethal injection." *Id.* at 580-81 (noting that the prisoner alleged that the State could avoid unnecessary pain "while still being able to enforce the sentence ordering a lethal injection").

Unlike the prisoners in *Nelson* and *Hill*, Purkey asks this Court to stop the Defendants from executing him, and therefore he must bring his claim in habeas. Unlike the method-of-

execution challenges in *Nelson* and *Hill*, Purkey's *Ford* claim would, if successful, "necessarily bar [his] execution." *Hill*, 547 U.S. at 583. This Court need look no further than Purkey's prayer for relief, which asks the Court to "[e]nter an injunction preventing his execution during any period of incompetency, and lasting until such time as his competency is restored." Compl. at 57. He asks this Court to declare that "executing him in his present condition violates his rights as guaranteed by the Eighth Amendment to the United States Constitution," Compl. at 57, but fails to acknowledge that "a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence," *Webster v. Daniels*, 784 F.3d 1123, 1139 (7th Cir. 2015) (en banc). Unlike the prisoners in *Nelson* and *Hill*, Purkey does not challenge the means of his execution, but the Government's ability to execute him at all. Because Congress has provided habeas as the exclusive cause of action for Purkey's claim, he has failed to state a claim and this Court should dismiss his Complaint.

### C.     Purkey Applies the Wrong Test to the Wrong Time

In his prior briefing on this point, Purkey fails to recognize that *Nelson* and *Hill* have changed the preclusion analysis in death penalty cases. Brief at 7-9, ECF No. 14; Reply Brief at 2, ECF No. 17. Purkey describes the test as one of whether the claim will "*necessarily* imply the invalidity of confinement or shorten its duration" Brief at 7, ECF No. 14, which is the test courts have applied outside of the death penalty realm. *See, e.g.*, *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 665 (D.C. Cir. 2013). Having stated that test, Purkey baldly asserts that he is not "seeking to invalidate or rescind his sentence" or to "reduce the duration of his confinement" and therefore his claim is not precluded by habeas. Brief at 7, ECF No. 14.

But Purkey misstates the proper test for whether a death penalty challenge must be brought in habeas. *Nelson* states that, when considering the preclusive effect of habeas on challenges to a death sentence, "[n]either the 'conditions' nor the 'fact or duration' label is

particularly apt" and that it "makes little sense to talk of the 'duration' of a death sentence." 541 U.S. at 644. Instead, the Supreme Court instructs that in death penalty challenges the proper "criterion" is "whether a grant of relief to the inmate would necessarily bar the execution." *Hill*, 547 U.S. at 583. When *Nelson* and *Hill* discuss a challenge to the "fact of a conviction" or the "duration of a sentence" that must be brought in habeas, they consider not whether the prisoner is seeking to "invalidate or rescind his sentence," but whether success in his suit will bar the execution. *Hill*, 547 U.S. at 583; *see Nelson*, 541 U.S. at 645-47. As discussed above, if successful Purkey's suit will necessarily bar his execution and therefore must be brought under § 2241.

Rather than confront the test that the Supreme Court has announced, Purkey suggests instead that his claim lies outside of habeas because, though he certainly cannot be executed *now*, he may be competent to be executed *someday*. *See* Brief at 7-9, ECF No. 14; Reply Brief at 2-3, ECF No. 17. Purkey's argument misunderstands the relevant temporal considerations. The Supreme Court reviews the exclusivity of habeas based on what a successful claim would require *today*. For example, in *Hill* the Court held that the claim could proceed under § 1983 because, "*at this stage of the litigation*, the injunction Hill seeks would not necessarily foreclose the State from implementing the lethal injection sentence *under present law*." 547 U.S. at 583 (emphasis supplied). Likewise, in *Nelson* the Court asked whether enjoining the use of the lethal injection would "require statutory amendment or variance," such that the state could not "met[e] out a sentence of death in a timely fashion." 541 U.S. at 644. The necessary implication is that where a successful claim would permit execution only after the time and expense of statutory amendment, it would effectively bar the execution and could proceed only in habeas. In the same way, where a successful claim would bar the execution until the occurrence of a future condition

that might never occur at all—that is, until such time as Purkey might be restored to competency—the claim would effectively bar the execution and can proceed only in habeas.

Purkey concedes that he could have brought his claim in habeas. Brief at 7, ECF No. 14. In his view, Congress created a cause of action under habeas but did not prohibit this Court from implying a cause of action that provides the same exact relief without the procedural hurdles of a habeas petition: "In fact," he argues, "*Ford* claims have been brought under the civil rights laws by state prisoners facing execution." Reply Brief at 4, ECF No. 17.

The cases Purkey cites, however, do not support his position. The first case, *Ward v. Hutchinson*, 558 S.W.3d 856 (Ark. 2018), involved a state prisoner proceeding in state court and gives no indication whether the federal habeas statute would preclude a federal prisoner from proceeding in federal court under an implied right of action. Though the second case, *Stanley v. Davis*, hypothesizes that "at least under some circumstances" a *Ford* claim could proceed under § 1983, it also notes that "[t]he parties do not cite to, nor is the Court aware of, any caselaw authorizing consideration of a *Ford* claim pursuant to section 1983" and expressly refuses to decide the question: "The issue has not been definitively decided by the Supreme Court or the Ninth Circuit. This Court need not decide the issue now." No. 07-cv-4727, 2015 WL 435077, at *4-5 & n.4 (N.D. Cal. Feb. 2, 2015). Moreover, the prisoner in that case ultimately brought his *Ford* claim under habeas. *See* Finalized Petition for Writ of Habeas Corpus at 324-31, *Stanley v. Davis*, No. 07-cv-4727 (N.D. Cal. Dec. 12, 2016), ECF No. 252. The final case, *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005), involved not a *Ford* claim but a challenge to the conditions of confinement—a claim that, in the Tenth Circuit, could not have been brought under habeas at all. *See Aamer v. Obama*, 742 F.3d 1023, 1037-38 (D.C. Cir. 2014) (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)); *cf. Nelson*, 541 U.S. at

643. None of Purkey's cases stands for the proposition that a federal prisoner can avoid the restrictions of habeas and pursue a *Ford* claim using an implied cause of action under the Constitution.

Purkey's argument also defies logic. If Purkey were correct, not only would every federal prisoner facing execution have the opportunity to bring his *Ford* claim in this Court without complying with the jurisdictional and venue requirements of § 2241, but every state prisoner facing execution would have the option to file his or her *Ford* claim in the first instance in federal court, notwithstanding the requirement under the federal habeas statute that they exhaust state remedies before filing in federal court. *See* 28 U.S.C. § 2254(b)(1)(A). As Purkey notes, Compl. ¶ 103 n.5, many states have implemented death penalty procedures that account for claims under *Ford*. If habeas were not an exclusive remedy for *Ford* claims, state prisoners nationwide facing execution could avoid those procedures by filing a claim under § 1983 in any federal court with jurisdiction. That cannot have been Congress's intent.

### D.      Purkey's Complaint Cannot be Construed as a Habeas Petition

This Court cannot construe Purkey's complaint as a habeas petition, because this Court lacks jurisdiction over an absent and necessary party: Purkey's custodian, the warden of the prison where he is confined.

"Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *accord Day v. Trump*, 860 F.3d 686, 689 (D.C. Cir. 2017); *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238-39 (D.C. Cir. 2004). As the Seventh Circuit has held, the Southern District of Indiana is the "one and only proper venue" for the § 2241 claim of a federal prisoner held at the U.S. Penitentiary at Terre Haute alleging that he is "categorically and constitutionally ineligible for the death penalty" under

*Atkins v. Virginia*, 536 U.S. 304 (2002). *Webster*, 784 F.3d at 1125, 1144. Purkey has sued the wrong parties in the wrong court.

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld*, 542 U.S. at 434 (quoting 28 U.S.C. § 2242). "[T]hese provisions contemplate a proceeding against some person who has *immediate custody* of the person detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Id.* at 435 (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)). "In accord with the statutory language and *Wales*' immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.*; *accord Day*, 860 F.3d at 689; *Stokes*, 374 F.3d at 1238 ("As an initial matter, it is clear that the only proper respondent to Stokes's habeas petition was his 'immediate custodian,'—that is, the warden of the Ohio facility in which he was incarcerated at the time he filed the petition."). "This rule, derived from the terms of the habeas statute, serves the important purpose of preventing forum shopping by habeas petitioners." *Rumsfeld*, 542 U.S. at 447.

Purkey is confined at the United States Penitentiary in Terre Haute, Indiana. Compl. ¶ 6. T.J. Watson is the warden of Purkey's prison and the only proper defendant to claims sounding in § 2241. Though Purkey named Attorney General Barr and Bureau of Prisons Director Sawyer in this action, he failed to name Warden Watson. His omission is notable in light of his ongoing habeas litigation against Watson, currently on appeal before Seventh Circuit. *See Purkey v. United States*, No. 19-cv-00414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019), *appeal filed*, No.

19-3318 (7th Cir. Nov. 22, 2019). Because Purkey in fact cannot sue Warden Watson in a habeas petition here in the District of Columbia, this Court cannot construe his Complaint as a habeas petition and should dismiss it instead.

### III.   Rule 12(b)(6): Purkey's *Ford* Claim Fails to State a Claim for Relief Because He Has Not Plausibly Alleged He is Incompetent

The Eighth Amendment prohibits executing an insane person. *Ford v. Wainwright*, 477 U.S. 399, 409-10 (1986). Specifically, the Eighth Amendment prohibits executing a prisoner who cannot "'reach a rational understanding of the reason for his execution.'" *Madison v. Alabama*, 586 U.S. __, 139 S. Ct. 718, 723 (2019) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 958 (2007)). "[T]he issue is whether a prisoner's concept of reality is so impaired that he cannot grasp the execution's meaning and purpose or the link between his crime and its punishment." *Id.* (quotations omitted).

Purkey's Complaint raises five broad categories of allegations to support his claim that he is incompetent to be executed: (1) a report by psychiatrist Dr. Bushan Agharkar, Compl. ¶¶ 21-32; (2) Purkey's history of mental illness, Compl. ¶¶ 38-85; (3) his filing of prison grievances and pro se litigation, Compl. ¶¶ 70-85; (4) his dementia and recent diagnosis of Alzheimer's disease, Compl. ¶¶ 86-102; and (5) his difficulty working with his counsel, Compl. ¶¶ 103-08. However, whether considered separately or together, none of these allegations states a plausible claim of incompetence. Furthermore, Purkey's own statements and writings included in the exhibits attached to his Complaint demonstrate that he rationally understands why he will be executed.

### A.   Dr. Agharkar's Report Does Not Support a Plausible Claim of Incompetency

The only allegations in Purkey's Complaint that directly relate to his current competency to be executed are those based upon the report of Dr. Bhushan Agharkar, which is attached as

Exhibit 1 to the Complaint. Compl. ¶¶ 21-32. Dr. Agharkar is a psychiatrist who interviewed Purkey for approximately three hours on September 8, 2016, and for approximately two hours on November 8, 2019. Compl. Ex. 1 at 2. Although Dr. Agharkar opines that Purkey is incompetent to be executed, his report is fundamentally flawed on its face because it conflates Purkey's understanding of the reason for his *execution*, which would be constitutionally disqualifying under *Ford*, with Purkey's understanding of the reason for *scheduling his execution date*, which is not.

Dr. Agharkar admits that Purkey is able to articulate the reason for his execution. "When I was finally able to shift the topic to Mr. Purkey's execution, Mr. Purkey first stated that he knew what an execution was and said that he accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11. However, Dr. Agharkar proceeds to opine—with no basis or justification—that Purkey's statement was an "attempt[] to 'fake good' at the outset of our interview." Compl. Ex. 1 at 11. "As the visit continued, . . . Mr. Purkey began to talk about the 'real reason' he was going to be executed. He told me that he was actually being executed because he is filing lawsuits for other people's cases." Compl. Ex. 1 at 11. Dr. Agharkar writes that "[w]hen I inquired further, Mr. Purkey also told me that he was given a date for execution unfairly and for reverse discrimination. He told me that we didn't need to talk about this because I could just read his filings." Compl. Ex. 1 at 11.

Based on that recounting of his discussion with Purkey, Dr. Agharkar's report offers the following opinion:

> In my opinion, to a reasonable degree of medical certainty, at the time of the evaluation, Mr. Purkey lacked a rational understanding of the basis for his execution. While Mr. Purkey can recite the fact that his execution is for the murder of Jennifer Long, he lacks rational understanding of that fact. This is an example of parroting, rather than having a rational understanding. He lacks a true understanding or rationality that the murder is the basis for his execution. Instead,

> Mr. Purkey has a fixed belief that he is going to be executed in retaliation for his legal work, to prevent him from being a hassle for the government. This prevents him from having a rational understanding of the purpose of his execution. This belief is part of his long-standing delusions about the "conspiracy" of retaliation.

Compl. Ex. 1 at 12.

Purkey's pro se filings, which he told Dr. Agharkar to read, make clear that Dr. Agharkar either misunderstood or misconstrued Purkey's statements and confused Purkey's understanding of the reason for his execution with his understanding of the reason for scheduling his execution date.[1]

On October 28, 2019, Purkey filed a pro se civil rights action in the Southern District of Indiana against the Attorney General, the Director of the BOP, Purkey's warden, and another prison employee. *See* Civil Rights Complaint, *Purkey v. Barr*, No. 19-cv-517 (S.D. Ind. Oct. 28, 2019), ECF No. 1. That pro se complaint is included in Exhibit 15 to his Complaint in this case.

Purkey's pro se complaint alleges that his constitutional rights were violated by "the defendants['] deliberate arbitrary selection of his execution date, which was substantially motivated by his protracted jailhouse lawyering." Compl. Ex. 15 at 994. Specifically, Purkey alleges that when the warden informed him that his execution had been scheduled for December 13, 2019, Purkey asked what criteria had been used to select him for an execution date, considering other death row inmates had exhausted their appellate rights before he did. Compl. Ex. 15 at 996. The warden allegedly responded that he did not know. Compl. Ex. 15 at 996. From that, Purkey alleges, apparently based on inference, that he was given an execution

---

[1] It is unclear whether Dr. Agharkar actually reviewed Purkey's pro se filings, as Purkey suggested he should do. Although Dr. Agharkar writes that he "reviewed voluminous documentary evidence" and evidently attached an index of these documents to his report, Compl. Ex. 1 at 2, the index is not included with the version of Dr. Agharkar's report attached to the Complaint.

date based on either his "protracted jailhouse lawyering activities" or reverse racial discrimination. Compl. Ex. 15 at 1002-03. But nothing in Purkey's pro se complaint indicates he believes these are the reasons he was sentenced to death.

Purkey's Complaint in this case alleges that he "has consistently maintained this delusional understanding of his execution since he was provided with an execution warrant on July 25, 2019." Compl. ¶ 34. It is clear why Purkey's alleged delusion suddenly began on July 25, 2019—that was the date the Government scheduled his execution for December 2019, and his alleged delusion relates only to the reasons for scheduling his execution date. Purkey's Complaint fails to provide a single fact to the contrary. *See Iqbal*, 556 U.S. at 678. Although Purkey alleges his execution date was set out of retaliation, that allegation is entirely consistent with his having a rational understanding of the reason for his execution.

A declaration from one of Purkey's mitigation specialists further reinforces this distinction. Dr. Elizabeth Vartkessian states that "[s]ince Wes received an execution date I have seen him four times . . . . Each time he has noted that he is facing an execution date because of his use of the grievance process and because of his efforts to file lawsuits about the conditions of confinement." Compl. Ex. 5 at 42. Purkey's statement to Dr. Vartkessian is consistent with his pro se complaint and his statements to Dr. Agharkar. Purkey apparently claims his execution date was set in retaliation for his "jailhouse lawyering." But those claims, even if he believes them, do not prevent him from understanding the reason he was sentenced to death and will be executed. His allegation of retaliation simply has nothing to do with what he needs to plead to state a *Ford* claim.

Purkey's alleged confusion about the reason for scheduling his execution is constitutionally irrelevant. The Eighth Amendment does not prohibit executing a prisoner who

lacks a rational understanding of the reason for scheduling his execution date. As the Supreme

Court has emphasized, "the sole inquiry for the court remains whether the prisoner can rationally

understand the reasons for his *death sentence*." *Madison*, 139 S. Ct. at 728 (emphasis added).

The Supreme Court has articulated two reasons for this inquiry. First, the Supreme Court

explained that "execution has no retributive value when a prisoner cannot appreciate the meaning

of a community's judgment." *Madison*, 139 S. Ct. at 727. Second, the Court explained that "it

offends humanity to execute a person so wracked by mental illness that he cannot comprehend

the meaning and purpose of the punishment." *Id.* (quotations omitted). Neither rationale extends

to a prisoner who cannot understand the reason for scheduling his execution date. Even if Purkey

misunderstands why the Government scheduled his execution to take place on December 13,

2019, he is still able to appreciate (and indeed has said he accepts) that he will be executed for

kidnapping, raping, and murdering Jennifer Long and to comprehend the meaning and purpose

of his punishment.

### B.       Purkey's History of Mental Illness Does Not Support a Plausible Claim of Incompetency

Purkey alleges that he has "a history of mental illness, trauma, and paranoid delusional

thinking." Compl. ¶ 38. Even crediting the truth of these allegations, they do not establish that he

is incapable of rationally understanding the reason for his execution. With the exception of

Dr. Agharkar, whose report is deficient on its face as explained above, Purkey does not allege

that any of the numerous mental health professionals who examined him over the years have

concluded that his mental issues prevent him from comprehending the reason for his execution.

Furthermore, Purkey's alleged mental illness extends back many years, but it did not prevent him

from being found competent to be tried for his crime.

### C.    Purkey's Filing of Grievances and Pro Se Litigation Do Not Support a Plausible Claim of Incompetency

Purkey alleges that his "delusions and paranoia" about retaliation from BOP personnel "are predominately featured in the countless grievances he has regularly filed for over a decade." Compl. ¶ 70. But the grievances themselves, which are attached to Purkey's Complaint, reflect not delusion but instead a calculated strategy and understanding of legal principles governing inmate complaints. Purkey's grievances consistently allege retaliatory acts because he is familiar with the legal principle that otherwise permissible actions taken against inmates can be impermissible if done for purposes of retaliation. *See*, *e.g.*, *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (noting that "otherwise permissible conduct can become impermissible when done for retaliatory reasons" and citing cases). Purkey occasionally attempts to cite to this case law in his grievances. *See* Compl. Ex. 14 at 842 (grievance dated August 22, 2019, citing cases); Compl. Ex. 14 at 860 (grievance dated December 7, 2018, citing cases); Compl. Ex. 14 at 892 (grievance dated August 8, 2013, citing cases). Purkey's grievances reflect that he understands he must allege retaliation for most of his complaints to have any legal significance.

Furthermore, Purkey started submitting grievances alleging harassment and retaliation by prison staff well before his capital trial in 2003. *See* Compl. Ex. 14 at 980-81 (grievance dated August 10, 2000, complaining about harassment by guards, including "improper motivated disciplinary report" and destruction of grievances). In one of his grievances, dated December 5, 2008, Purkey cites to his own prior pro se case before the Tenth Circuit, which involved alleged mistreatment by guards at the Wyandotte County Jail in 1998. *See* Compl. Ex. 14 at 969 (citing *Purkey v. Green*, 28 F. App'x 736, 740-41 (10th Cir. 2001)). In the Tenth Circuit case, Purkey alleged, among other things, that guards had retaliated against him for litigation he was preparing

to file. *See Green*, 28 F. App'x at 741. In short, Purkey's grievances show on their face that he alleges retaliation in an effort to make his complaints actionable, not because he is delusional.

The fact that Purkey's grievances are baseless and allege things that never took place or accuse people of saying things they never said, *see* Compl. ¶¶ 74-81, does not support a plausible claim of incompetence. His grievances no more indicate he is out of touch with reality than the more plausible inference that he is simply lying.

Purkey's pro se filings likewise do not support his alleged incompetence. At most, those filings show that he periodically becomes so frustrated with the conditions of his confinement or the breakdown in communication with his attorneys that he files petitions to expedite his execution. Compl. ¶ 84. Once he gets the attention he wants, he rescinds these petitions. Compl. ¶ 85. Furthermore, Purkey acknowledges that he does not believe he is being executed because he asked to be, Compl. ¶ 85, so his pro se petitions to expedite his execution are simply irrelevant to his current claim of incompetency.

> ### D. Purkey's Dementia and Recent Alzheimer's Diagnosis Do Not Support a Plausible Claim of Incompetency

Purkey alleges that he has dementia and was diagnosed with Alzheimer's disease. Compl. ¶¶ 86-98. However, the alleged fact that Purkey has dementia does not establish incompetence, because although dementia "can cause such disorientation and cognitive decline as to prevent a person from sustaining a rational understanding of why the State wants to execute him," "dementia also has milder forms, which allow a person to preserve that understanding." *Madison*, 139 S. Ct. at 729.

Purkey does not allege that his dementia has advanced to such a stage that he is unable to rationally understand why the Government wants to execute him. His condition bears little resemblance to that of the defendant in *Madison v. Alabama*, who "suffered a series of strokes,

including" two major ones, "was diagnosed as having vascular dementia, with attendant disorientation and confusion, cognitive impairment, and memory loss," and "claim[ed] that he [could] no longer recollect committing the crime for which he ha[d] been sentenced to die." 139 S. Ct. at 723. By contrast, Purkey alleges he was diagnosed in 2016 with "'the beginning stages of a cortical neurodegenerative disease, such as dementia.'" Compl. ¶ 86 (quoting Ex. 9 at 89, report from neuropsychologist Robert H. Ouaou). He also alleges he was diagnosed with Alzheimer's disease in August 2019. Compl. ¶ 97; Compl. Ex. 3.

Neither alleged diagnosis includes an opinion that his condition has progressed to the point where he is unable to understand the reason for his execution, and that omission is determinative. Purkey's allegation that he has dementia does not support a plausible claim that he is incompetent to be executed.

### E. Purkey's Difficulty Communicating with Counsel Does Not Support a Plausible Claim of Incompetency

Purkey alleges that his "long-term inability to effectively communicate with counsel is evidence of his present incompetence." Compl. ¶ 103. However, a prisoner's competency to be executed does not depend on his ability to assist his counsel. *See Walton v. Johnson*, 440 F.3d 160, 172 (4th Cir. 2006) ("[W]e conclude that there is no Constitutional requirement under *Ford* that Walton be able to assist counsel to be deemed competent to be executed."); *Coe v. Bell*, 209 F.3d 815, 826 (6th Cir. 2000) ("We agree that a prisoner's ability to assist in his defense is not a necessary element to a determination of competency to be executed."); *see also Madison*, 139 S. Ct. at 731 ("The sole question on which . . . competency depends is whether [the prisoner] can reach a rational understanding of why the state wants to execute him." (quotation omitted)). Purkey's alleged inability to get along with his counsel may reflect any number of personality disorders, but it does not bear upon his ability to understand the reason for his execution.

F.  **Purkey's Own Statements and Writings Show He Understands the Reason for His Execution**

Purkey's own statements contained in documents attached to his Complaint directly contradict his claim of incompetency. *See Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 89 (D.D.C. 2015) (Chutkan, J.) ("'[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.'" (quoting *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 26 n.4 (D.D.C. 2014))).

As Dr. Agharkar admits, Purkey told him "that he knew what an execution was and said that he accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11. In his Complaint, Purkey attempts to explain away this statement by aligning it with the defendant's statement in *Panetti*. Compl. ¶ 114. But *Panetti* does not help him. The expert in *Panetti* "explained [that] although [Panetti] claims to understand that the state is saying that it wishes to execute him for his murders, he believes in earnest that the stated reason is a sham and the state in truth wants to execute him to stop him from preaching." *Panetti*, 551 U.S. at 954-55 (cleaned up and quotations omitted). By contrast, Dr. Agharkar never indicates Purkey attributed the reason for his execution to the Government. Instead, Purkey "accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11. Unlike in *Panetti*, Purkey did not tell Dr. Agharkar that he believed the reason for his execution was a sham. Instead, Purkey said that "he was given a date for execution unfairly and for reverse discrimination." Compl. Ex. 1 at 11. In other words, Purkey makes no allegation that, like in *Panetti*, he claimed that the reason he was sentenced to death was a sham. Rather, based on his own allegations, Purkey accepts the reason for his execution, but he claims he was unfairly selected for an execution date.

Other materials attached to Purkey's Complaint further belie his incompetency claim and demonstrate that he was not "parroting" when he told Dr. Agharkar why he is being executed. For example, on May 13, 2019, Purkey filed a handwritten pro se "Petition to Expedite Execution of Petitioner's Death Sentence Pursuant to 28 U.S.C. § 2241" in the Southern District of Indiana. Compl. Ex. 15 at 1029. In this petition, Purkey wrote that "[o]n January 23, 2004 U.S. District Judge Gaitan sentenced Purkey to death after a jury found him guilty of kidnapping resulting in death and recommended a sentence of death (WDMO Case No. 01-CR-00308-FJG-DCD 506)." Compl. Ex. 15 at 1029-30. Purkey's own handwritten petition demonstrates he understands he was sentenced to death for his crime and possesses a rational understanding of the reason for his execution.

Dr. Frederic Sautter, a psychologist who evaluated Purkey in November 2016 and diagnosed him with complex PTSD, noted the following:

> The two topics that elicited the most intense emotions from Mr. Purkey were the killing and dismemberment of Ms. Long and the sexual abuse he suffered from a priest. He was not able to discuss the dismemberment of Ms. Long. He became distraught with emotion *as he communicated his shame for killing Ms. Long* and the fact that his behavior deprived his daughter and grandchildren of having a supportive parent or grandparent.

Compl. Ex. 10 at 91 (emphasis added). Purkey's expression of "shame" for murdering Jennifer Long, and his ability to connect his crime to his punishment, demonstrate that he is capable of understanding the reason for his execution.

In October 2015, Purkey filed a pro se complaint challenging his exclusion from the BOP's Trust Fund Limited Inmate Computer System (TRULINCS), which enables federal prisoners to communicate through email. Compl. Ex. 15 at 1321. Purkey's pro se complaint explains that a jury had convicted him of interstate kidnapping resulting in death and recommended a death sentence, and that Judge Gaitan had sentenced him to death. Compl. Ex.

15 at 1326. This complaint further reflects Purkey's understanding that he was sentenced to death for his crime.

Other documents attached to Purkey's Complaint further undermine his unsupported assertion that he cannot rationally understand the reason for his execution. A declaration from Purkey's daughter states that he calls her every year around the anniversary of her child's death, sends presents to his grandchildren on their birthdays, and calls her every week to check on her and her children. Compl. Ex. 19 at 1475-76. Purkey's Buddhist monk, who has known him since 2009 and visits him monthly, states that Purkey has been taking Spanish lessons, and his "ability to learn Spanish has been quite remarkable." Compl. Ex. 21 at 1485, 1487. He also states that Purkey consistently reports the latest news about his daughter and grandchildren and corresponds with pen pals. Compl. Ex. 1488. These statements by people who know Purkey well are inconsistent with his claim that he is unable to understand why he is being executed.

In short, Purkey's Complaint alleges at most that he lacks a rational understanding of the reason for setting his execution date. Purkey does not *plausibly* allege that he is incapable of understanding the reason for his execution, and his own statements and writings show that he is. Purkey's Eighth Amendment claim should be dismissed.

## IV.    Rule 12(b)(6): Purkey's Due Process Claim Fails to State a Plausible Claim for Relief Because a Competency Hearing Is Not Required Unless and until a Prisoner Makes a Substantial Showing of Incompetency

Purkey alleges that "Defendants [sic] announced plan to carry out Mr. Purkey's execution without providing a hearing violates the Fifth and Eighth Amendments." Compl. ¶ 118. This claim puts the cart before the horse. Purkey is not entitled to a hearing unless and until he first makes a substantial threshold showing of incompetence, which he has failed to do.

The Constitution does not require the Government always to evaluate a prisoner's competency prior to carrying out an execution. Purkey was already found competent to stand

trial, so the Government "may properly presume that [Purkey] remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process." *Ford*, 477 U.S. at 426 (Powell, J., concurring). A competency hearing is required only if a prisoner first makes a substantial threshold showing of incompetence. "[O]nce a prisoner makes the requisite preliminary showing that his current mental state would bar his execution, the Eighth Amendment . . . entitles him to an adjudication to determine his condition." *Panetti*, 551 U.S. at 934-35. A prisoner who has made "'a substantial threshold showing of insanity'" is constitutionally entitled to "a 'fair hearing,'" which "'may be far less formal than a trial.'" *Id.* at 949 (quoting *Ford*, 477 U.S. at 426-27).

As explained above, Purkey has not plausibly alleged, much less made a "substantial threshold showing," that he is incapable of rationally understanding the reason for his execution. His allegations of incompetency bear little resemblance to the allegations in the cases he relies upon. *See Madison*, 139 S. Ct. at 723 (prisoner suffered strokes, including two major ones, was diagnosed with vascular dementia, and claimed he could no longer remember committing the crime); *Panetti*, 551 U.S. at 954-55 (prisoner believed his execution was part of spiritual warfare between demons and angels and, although he claimed to understand the state said it wanted to execute him for his crime, he believed that reason was a sham and the state wanted to execute him to stop him from preaching); *Ford*, 477 U.S. at 402-03 (prisoner believed members of his family were being held hostage in the prison, referred to himself as the pope, believed he could not be executed, and regressed into speaking in code). Purkey is not entitled to a hearing, and his due process claim should be dismissed.

**V.      If this Court Does Not Dismiss Purkey's Claims, It Should Transfer the Case to the Southern District of Indiana**

If this Court declines to dismiss Purkey's claims, it should transfer the case to the Southern District of Indiana. "[D]eclaratory judgment actions brought by inmates not confined in the District of Columbia, not sentenced in the District of Columbia, and seeking resolution of issues in no way related to this jurisdiction," "absent extraordinary circumstances . . . should ordinarily be transferred as a matter of course." *Young v. Dir., U.S. Bureau of Prisons*, 367 F.2d 331, 332 (D.C. Cir. 1966) (per curiam).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Purkey could have brought his claims in the Southern District of Indiana, and the convenience of the parties and witnesses and interests of justice support transferring his claims to that court.

**A.      Purkey Could Have Brought His Claims in the Southern District of Indiana**

Defendants are sued in their official capacities, so they are subject to personal jurisdiction in any district. *See* 28 U.S.C. § 1391(e)(2) (providing nationwide service of process for actions suing federal officials in their official capacity); *Briggs v. Goodwin*, 569 F.2d 1, 7-8 (D.C. Cir. 1977) (holding that nationwide service of process under § 1391(e) confers personal jurisdiction and comports with the Constitution), *rev'd on other grounds sub nom. by Stafford v. Briggs*, 444 U.S. 527 (1980); *Bally Gaming, Inc. v. Kappos*, 789 F. Supp. 2d 41, 45-47 (D.D.C. 2011) (discussing cases holding that statutes providing nationwide service of process confer personal jurisdiction independent of minimum contacts analysis).[2]

---

[2]As explained above, if this Court agrees Purkey's Complaint sounds in habeas, jurisdiction over his warden would lie only in the Southern District of Indiana.

Venue is proper in the Southern District of Indiana because an action against a federal official in his or her official capacity may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). At least one of the John Doe defendants responsible for carrying out Purkey's execution—the warden of his prison—resides in the Southern District of Indiana. *See* 28 C.F.R. § 26.4 (describing responsibilities of the warden); *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969) ("Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties." (quotation omitted)). The events giving rise to Purkey's claim—his alleged mental decline and resulting incompetency—occurred during his incarceration in the Southern District of Indiana. Purkey resides in the Southern District of Indiana. *See In re Pope*, 580 F.2d 620, 622 (D.C. Cir. 1978) (per curiam) (holding that a prisoner resides in his place of confinement) (citing *Starnes v. McGuire*, 512 F.2d 918, 925 n.7 (D.C. Cir. 1974)).[3]

**B.    The Convenience of the Parties and Witnesses and Interests of Justice Warrant Transfer**

The D.C. Circuit has identified five factors to consider when deciding whether to transfer a prisoner's lawsuit: (1) difficulty of communicating with counsel, (2) difficulty of transporting the prisoner, (3) availability of witnesses and files, (4) whether the complaint in fact sounds in habeas, and (5) speed of final resolution. *See Starnes v. McGuire*, 512 F.2d 918, 929-32 (D.C.

---

[3]Under Seventh Circuit law, Purkey may be deemed not to reside in the district where he is incarcerated. *See Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 130 (D.D.C. 2010) (recognizing a split between the D.C. Circuit and the Seventh Circuit). But this Court is bound to apply the law of this Circuit. *See In re Pope*, 580 F.2d at 622. In any event, irrespective of Purkey's residence, there are two separate bases for venue in the Southern District of Indiana.

Cir. 1974). The D.C. Circuit has also recognized "the fact that many, if indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate." *Id.* at 926. This case is not the exception, and consideration of the relevant factors shows that transfer is warranted.

*1. Difficulty of communicating with counsel.* Purkey's lead counsel for this action are based in the District of Columbia, which will make it difficult for Purkey to consult effectively with them. While Purkey is also represented by counsel located in Kansas City and Springfield, Missouri, Purkey's D.C. counsel has informed Defendants' counsel that they are the point of contact for this litigation. Furthermore, even Purkey's attorney based in Kansas City has complained about the burden of traveling all the way to Terre Haute. Woodman Decl. ¶ 14, ECF No. 7-2. Particularly given Purkey's history of raising concerns about communicating with counsel, *see* Compl. ¶¶ 103-08, it is important that he be represented by attorneys who can easily meet with him. It would be easier for Purkey to communicate with counsel in or near Terre Haute than with his current counsel based in D.C.

*2. Difficulty of transporting the prisoner.* The difficulty and expense of transporting Purkey to D.C. weigh strongly in favor of transfer. "The burdens and dangers involved in transporting a prisoner across long distances are . . . a significant inconvenience to the Bureau of Prisons and will normally justify transfer." *Starnes*, 512 F.2d at 931. Purkey will be a key witness in any merits proceedings on the issue of his competency. If Purkey does not testify on his own behalf, Defendants intend to call him.

Transporting Purkey to this Court for a hearing would incur significant expense. As explained in the Declaration of Melissa Reardon attached as Exhibit A to this motion, the U.S.

Marshals Service would need to lease an airplane and staff it with three security personnel and one medic. Ex. A at ¶ 5. It would cost approximately $49,000 to transport Purkey from Terre Haute to D.C. *Id.* Transporting him back to Terre Haute would incur additional expense. *Id.*

*3. Availability of witnesses and files.* The witnesses and documents relevant to the issues in this case are primarily located in the Southern District of Indiana. The materials Purkey sought in his preliminary injunction motion, including his medical and mental health records and video surveillance of his cell, are located in the Southern District of Indiana. *See* Memorandum in Support at 28, ECF No. 7-1. The most important witness in this case—Purkey himself—is located in the Southern District of Indiana. *See Hines v. GEO Grp., Inc.*, 544 F. Supp. 2d 39, 42 (D.D.C. 2008) (transferring action raising claims of medical treatment and disability discrimination to district of incarceration in part because "witnesses and evidence relevant to these claims, including evidence that plaintiff himself might provide, likely would be found [there]").

Most or all of the prison officials with information relevant to Purkey's mental competency are also located in the Southern District of Indiana. *See Mathis v. Geo Grp., Inc.*, 535 F. Supp. 2d 83, 87-88 (D.D.C. 2008) (transferring in part because the number of the defendants' employees with relevant information was far greater in the transferee forum). Although the two named defendants (Attorney General Barr and BOP Director Sawyer) reside in the District of Columbia, their residence does not matter because they lack information relevant to Purkey's claims. To the extent there is a need for any federal official not based in Terre Haute to testify, "the greater ease with which federal officials can travel to the prison to give evidence, as opposed to the difficulties of transporting the prisoner, is an appropriate factor to be considered." *Starnes*, 512 F.2d at 928.

Purkey alleges that "several key witnesses in this case, including Dr. Jonathan DeRight and mitigation specialists John Fox and Dr. Elizabeth Vartkessian, reside in close proximity to the District of Columbia. Compl. ¶ 12.[4] However, Purkey cannot plausibly contend that it would be inconvenient for any of these potential witnesses to travel to Terre Haute to testify. Dr. DeRight has already met with Purkey at the prison in Terre Haute at least once; Mr. Fox has met with Purkey about 25 times; and Dr. Vartkessian has met with Purkey 25 times. Compl. Ex. 3 at 25, Ex. 5 at 40, Ex. 7 at 70.

4. *Whether the complaint in fact sounds in habeas*. As explained in Part II above, Purkey's *Ford* claim sounds in habeas. If this Court declines to dismiss this action on that basis, it should transfer the case to the appropriate forum for a habeas action.

5. *Speed of final resolution*. The Southern District of Indiana has demonstrated its ability to expeditiously adjudicate Purkey's claims. It resolved Purkey's 219-page habeas petition in less than three months. *See* Petition, *Purkey v. United States*, No. 19-cv-414 (S.D. Ind. Aug. 27, 2019), ECF No. 1; *Purkey v. United States*, No. 19-cv-414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019). Furthermore, the fact Purkey pursued a claim related to his competency—albeit his competency at the time of the offense—in his habeas proceedings is another factor supporting transfer of this case. *See* Amended Petition at 193, *Purkey v. United States*, No. 19-cv-00414 (Sept. 12, 2019), ECF No. 23. One of the reasons for transferring lawsuits brought by out-of-state prisoners is to "discourage duplicitous litigation and . . . relieve the courts of this jurisdiction from the unnecessarily onerous task of deciding cases brought by a prisoner incarcerated far away from Washington, D.C., and based on events alleged to have taken place in

---

[4]More specifically, Dr. DeRight has offices in McLean and Woodbridge, Virginia; Mr. Fox is based in Silver Spring, Maryland; and Dr. Vartkessian is based in Baltimore, Maryland. Compl. Exs. 4, 6, 8.

distant parts of the country." *Young*, 367 F.2d at 333 (quotations omitted). This Court should not countenance Purkey's attempt to pursue two actions in two separate fora, both alleging claims related to his mental competency.

No countervailing interests support litigating this case in this Court. *See Starnes*, 512 F.2d at 932-33 (noting that even if the five factors support transfer, countervailing interests can dictate the case be retained). In particular, Purkey does not challenge a national policy, which distinguishes this case from others this Court has declined to transfer. *See, e.g.*, *Accurso v. Fed. Bureau of Prisons*, No. 17-cv-02626 (APM), 2018 WL 4964501, at *2 (D.D.C. Oct. 15, 2018) (declining to transfer when prisoner's warden relied upon a national BOP policy when denying prisoner's request to keep religious items in his cell). The only issue in this case is Purkey's competency to be executed. Even if Purkey's claims could be construed as implicating a national policy, "that factor is not determinative," and venue would still be more appropriate in the Southern District of Indiana where any policy would be implemented. *See Stern v. Fed. Bur. of Prisons*, No. 07-00564, 2007 WL 1555830, at *2 (D.D.C. Mar. 22, 2007); *see also Starnes*, 512 F.2d at 929 (holding that even if the plaintiff had raised a national policy issue, transfer was not warranted when the plaintiff's claim related primarily to his particular circumstances and the witnesses were located in the transferee forum).

Finally, it is true that a plaintiff's choice of forum is generally a relevant factor in the transfer analysis. *See, e.g.*, *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 37 (D.D.C. 2006). However, a plaintiff's preference is entitled to less weight when, as here, this district is not the plaintiff's home forum. *See Stern*, 2007 WL 1555830, at *1 (observing that a court "may give substantially less deference [to a plaintiff's forum choice] when the forum preferred by the plaintiff is not his home forum"); *Mathis*, 535 F. Supp. 2d at 87 (noting that plaintiffs'

"preference is not insurmountable, and here, it is entitled to less weight given the posture of many of the plaintiffs as out-of-state prisoners seeking injunctive and declaratory relief"). This district has no connection to Purkey, his crimes, or his sentence, so Purkey's preference for pursuing his lawsuit in this Court should be given little weight.

In short, the interests of justice and the convenience of the parties and witnesses all support transferring this case to the Southern District of Indiana.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Purkey's claims in their entirety. In the alternative, any surviving claims should be transferred to the Southern District of Indiana.

Dated: February 24, 2020
       Respectfully submitted,

       TIMOTHY J. SHEA
       United States Attorney

      By  /s/ *J. Benton Hurst*

       BRIAN P. CASEY
       KATHLEEN D. MAHONEY
       J. BENTON HURST (D.D.C. Bar #MO009)
       DAVID WAGNER
       Special Assistant United States Attorneys

       Charles Evans Whittaker Courthouse
       400 East 9th Street, Room 5510
       Kansas City, Missouri 64106
       Telephone: (816) 426-3122
       Fax: (816) 426-5186
       E-mail: Brian.Casey@usdoj.gov
          Kate.Mahoney@usdoj.gov
          John.Hurst@usdoj.gov
          David.Wagner@usdoj.gov

       *Attorneys for Defendants*