**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WESLEY IRA PURKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03570-TSC |
| | ) | |
| WILLIAM P. BARR and MICHAEL CARVAJAL[1], | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF WESLEY PURKEY'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER**

---

[1] Mr. Purkey has amended the case caption pursuant to Federal Rule of Civil Procedure 25(d). Under this rule, the substitution of successor public officials is automatic and does not require formal amendment.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

LEGAL STANDARDS .......................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

    I.    Mr. Purkey's *Ford* claims are ripe for review and this court has jurisdiction. ................. 7

        A.    Mr. Purkey's *Ford* due process claim is ripe for review. ..................................... 7

        B.    Mr. Purkey's execution is imminent and, accordingly, his *Ford* claim that he is currently incompetent to be executed is also ripe. ................................................. 10

        C.    At a minimum, Mr. Purkey's *Ford* claims fall under an exception to the mootness doctrine because it is capable of repetition yet evading review. ......................... 13

    II.    Mr. Purkey's *Ford* claims are not "core habeas" and are properly before this Court. ...... 14

        A.    The relief Mr. Purkey seeks is not limited to habeas because it does not challenge his conviction or sentence and would not "necessarily bar" his execution. ......... 14

        B.    The habeas statute does not preempt a constitutional claim for equitable relief. 17

    III.    Mr. Purkey's Complaint easily satisfies the pleading standard for showing that he is incompetent to be executed and is entitled to process and an evidentiary hearing. .......... 20

        A.    Defendants apply the wrong standard of review. ................................................. 20

        B.    Mr. Purkey has stated a sufficient claim of incompetency under any standard. ... 21

            i.    Defendants' attack on the quality and variety of sources corroborating Mr. Purkey's allegations of incompetence is inconsistent with the case law and well beyond the scope of review on a motion to dismiss. ......... 22

            ii.    Unsupported attacks on expert conclusions are also not a basis for dismissal at this stage of the case. ........................................................... 26

            iii.    Mr. Purkey's own alleged statements and actions in related litigation also provide no basis for dismissal. ................................................................ 30

            iv.    Mr. Purkey's ability to work with counsel is not irrelevant. ................. 32

    IV.    Venue is proper in the District of Columbia. ................................................................. 34

CONCLUSION .................................................................................................................. 35

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Amaya-Ruiz v. Steward*,
    136 F. Supp. 2d 1014 (D. Ariz. 2001) ............................................................. 23

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ......................................................................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 6, 21

*Barr v. Roane*,
    140 S. Ct. 353 (2019) (Mem. Op.) ................................................................... 4

*Billiot v. Epps*,
    No. CIV.A. S86-0549(L), 2005 WL 2877731 (S.D. Miss. Oct. 28, 2005) ....... 11

*Billot v. Epps*,
    671 F. Supp. 2d 840 (S.D. Miss. 2009) .......................................................... 24

*Bingham v. State*,
    169 P.2d 311 (Okla. Crim. App. 1946) ........................................................... 34

*Carlson v. Green*,
    446 U.S. 14 (1980) ........................................................................................... 18

*Commonwealth v. Banks*,
    29 A.3d 1129 (Pa. 2011) ...................................................................... 10, 18, 32

*Commonwealth v. Banks*,
    943 A.2d 230 (Pa. 2007) ................................................................................... 8

*Commonwealth v. Jermyn*,
    652 A.2d 821 (Pa. 1995) ................................................................................. 34

*Commonwealth v. Sam*,
    952 A.2d 565 (Pa. 2008) ................................................................................. 16

*Connor v. Sec'y, Fla. Dep't of Corr.*,
    713 F.3d 609 (11th Cir. 2013) ........................................................................ 11

*Davis v. Kelley*,
    854 F.3d 967 (8th Cir. 2017) .......................................................................... 16

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
    Case No. 19-mc-145 (TSC), 2019 WL 6691814 (D.D.C. Nov. 20, 2019) ...... 1, 4

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
  No. 19-5322 (D.C. Cir. Nov. 22, 2019) ......................................................................... 4

*Ford v. Wainwright*,
  477 U.S. 399 (1986) ................................................................................................. *passim*

*Guo Wengui v. Clark Hill, PLC*,
  Civil Action No. 19-3195 (JEB), 2020 WL 837166 (D.D.C. Feb. 20, 2020)........................ 6

*Hill v. McDonough*,
  547 U.S. 573 (2006) ............................................................................................. 15, 17

*Holmes v. Neal*,
  816 F.3d 949 (7th Cir. 2016) ........................................................................................ 11

*Hubbard v. Campbell*,
  379 F.3d 1245 (11th Cir. 2004) (Barkett, J., dissenting) ...................................................... 19

*Indiana v. Edwards*,
  554 U.S. 164 (2008) ....................................................................................................... 16

*Isom v. State*,
  462 S.W.3d 638 (Ark. 2015) ......................................................................................... 11

*Ex parte Jordan*,
  758 S.W.2d 250 (Tex. Crim. App. 1988) (en banc) .......................................................... 8

*Kemp v. Cockrell*,
  No. 4:99-CV-490-Y, 2003 WL 21448584 (N.D. Tex. Mar. 25, 2003) ........................ 13, 14

*Kingdomware Techs., Inc. v. United States*,
  136 S. Ct. 1969 (2016) ................................................................................................. 13

*Meshal v. Higgenbotham*,
  804 F.3d 417 (D.C. Cir. 2015) (Pillard, J., dissenting)....................................................... 18

*Moghaddam v. Pompeo*,
  Civil Action No. 19-668 (CKK), 2020 WL 364839 (D.D.C. Jan. 22, 2020) ........................ 6

*Nelson v. Campbell*,
  541 U.S. 637 (2004) ..................................................................................................... 15

*In re Ohio Execution Protocol Litig.*,
  Case 2:11-cv-01016-EAS- MRM (S.D. Ohio Apr. 30, 2018)............................................. 30

*Overstreet v. State*,
  993 N.E.2d 179 (Ind. 2013)............................................................................................ 34

*Panetti v. Dretke*,
  401 F. Supp. 2d 702 (W.D. Tex. 2004) ......................................................................... 24

*Panetti v. Quarterman,*
    551 U.S. 930 (2007) ................................................................................ 23, 24, 29

*Roane v. Gonzalez,*
    Civ. Action No. 05-2337 (D.D.C. July 22, 2008) ........................................... 10

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996) .......................................................................................... 18

*Simmat v. U.S. Bureau of Prisons,*
    413 F.3d 1225 (10th Cir. 2005) ..................................................................... 19

*Singleton v. Norris,*
    319 F.3d 1018 (8th Cir. 2003) ....................................................................... 16

*In Re Smith,*
    176 P. 819 (N.M. 1918) .................................................................................. 34

*Stanley v. Davis,*
    No. 07-cv-4727, 2015 WL 435077 (N.D. Cal. Feb. 2, 2015) ........................ 19

*Stanley v. Martel,*
    No. 3:14-cv-4109 04727-EMC (N.D. Cal. Feb. 15, 2012) ............................ 19

*State v. Downs,*
    631 S.E.2d 79 (S.C. 2006) .............................................................................. 33

*State v. Harris,*
    789 P.2d 60 (Wash. 1990) (en banc) .............................................................. 33

*State v. Irick,*
    320 S.W.3d 284 (Tenn. 2010) ....................................................................... 34

*State v. LeGrande,* 95 CRS 567 (N.C. Super. Ct. June 27, 2008) ..................... 29

*State v. Perry,*
    610 So.2d 746 (La. 1992) ............................................................................... 26

*Thompson v. Bell,*
    580 F.3d 423 (6th Cir. 2009) ................................................................... 25, 26

*United States v. Cooper,*
    91 F. Supp. 2d 90 (D.D.C. 2000) ................................................................... 12

*United States v. Dahl,*
    807 F.3d 900 (8th Cir. 2015) ......................................................................... 16

*United States v. Grape,*
    549 F.3d 591 (3d Cir. 2008) ........................................................................... 16

*United States. v. Nelson,*
    419 F. Supp. 2d 891 (E.D. La. 2006) ..................................................... 9, 15, 17

*United States v. Sanchez-Gomez*,
    138 S. Ct. 1532 (2018) ............................................................................................. 7

*Ward v. Hutchinson*,
    558 S.W.3d 856 (Ark. 2018) .................................................................................. 19

*Wood v. Quarterman*,
    572 F. Supp. 2d 814 (W.D. Tex. 2008), *aff'd sub nom. Wood v. Stephens*, 619 F.
    App'x 304 (5th Cir. 2015) ...................................................................................... 23

*Young v. Dir., U.S. Bureau of Prisons*,
    367 F.2d 331 (D.C. Cir. 1966) ............................................................................... 35

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ........................................................................................... 18

*Zimmerman v. Tribble*,
    226 F.3d 568 (7th Cir 2000) .................................................................................. 32

**Statutes**

18 U.S.C. § 3596(c) ......................................................................................................... 8, 18

28 U.S.C. § 1391(e) ............................................................................................................. 34

28 U.S.C. § 2201(1) ............................................................................................................. 20

28 U.S.C. § 2202 ................................................................................................................. 20

28 U.S.C. § 1391(e) ............................................................................................................. 34

Ala. Code § 15-16-23 .......................................................................................................... 33

Ark. Code Ann. § 16-90-506(d)(1)(b)(i) ............................................................................. 34

Colo. Rev. Stat. § 18-1.3 ..................................................................................................... 33

Colo. Rev. Stat. § 18-1.4 ..................................................................................................... 33

Fla. Stat. Ann. § 922.07 ...................................................................................................... 34

Ky. Rev. Stat. Ann. § 431.213(2) ........................................................................................ 34

Miss. Code Ann. § 99-19-57(2) ........................................................................................... 33

Mo. Rev. Stat. § 552.060(1) ................................................................................................ 33

N.C. Gen. Stat. Ann. § 15A-1001(a) ................................................................................... 33

Neb. Rev. Stat. Ann. § 29-2537 .......................................................................................... 33

Ohio Rev. Code. Ann. § 2949.28 ........................................................................................ 33

Ohio Rev. Code. Ann. § 2949.29 ................................................................................................... 33

Utah Code Ann. § 77-15-2 ............................................................................................................. 33

**Other Authorities**

ABA Task Force on Mental Disability & the Death Penalty, *Recommendation and Report
    on the Death Penalty and Persons with Mental Disabilities*, 30 Mental & Physical
    Disability L. Rep. 668 (2006) ................................................................................................. 33

Black's Law Dictionary (11th ed. 2019) ....................................................................................... 15

Fed. R. Civ. P. 8(a) ..................................................................................................................... 2, 6

Fed. R. Civ. P. 12(b)(1) .................................................................................................................. 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 2, 6, 20, 21

John Blume et al., *Killing the Obvious: An Empirical Study of Competency to Be
    Executed Litigation*, 82 UMKC L. Rev. 335 (2014) ............................................................... 26

U.S. Const. amend. V .......................................................................................................... 4, 8, 17

U.S. Const. amend VIII ....................................................................................................... *passim*

## INTRODUCTION

Plaintiff Wesley Purkey, as a practical matter, is facing the imminent enforcement of a federal death sentence, and nothing Defendants have said or done indicates or suggests otherwise. Despite that posture, Defendants assert in their Motion to Dismiss that Mr. Purkey's claims in the instant action are not ripe for consideration by this Court. Defendants make that assertion, moreover, while the government presses vigorously in separate related litigation before this Court[2] to clear the legal path to Mr. Purkey's execution at the earliest possible date. This logical inconsistency cannot withstand scrutiny and precludes the dismissal of Mr. Purkey's pursuit of his constitutionally-guaranteed right to have the question of his mental competency adjudged in advance of his execution pursuant to *Ford v. Wainwright*, 477 U.S. 399 (1986), and its progeny.

In their motion, Defendants mischaracterize the nature and legal sufficiency of Mr. Purkey's claims, asserting that this action is not the appropriate vehicle to raise such legal challenges or, alternatively, has not been filed in the proper venue. For many of the same reasons set forth in Plaintiff's prior briefing on the jurisdictional question, this Court has jurisdiction to hear Mr. Purkey's claims and neither dismissal nor transfer of venue would be proper under the circumstances.

Briefly summarized, the grounds for denying Defendants' motion include the following:

First, Mr. Purkey's *Ford* claims are ripe and not moot because, at minimum, there is a live controversy related to the complete lack of federal *Ford* claim procedures. In addition, Mr. Purkey's *Ford* competency claim is ripe because his execution is imminent given Defendants' instruction to government officials to initiate the execution of Mr. Purkey and several others, the

---

[2] *See generally In re Fed. Bureau of Prisons' Execution Protocol Cases*, Case No. 19-mc-145 (TSC), 2019 WL 6691814, at *8 (D.D.C. Nov. 20, 2019).

previous issuance of an execution warrant, and the Defendants' continuous and targeted efforts to expedite litigation to proceed as quickly as possible to Mr. Purkey's execution. While a hearing on Mr. Purkey's competency claim is not necessary or appropriate until Mr. Purkey is provided constitutionally-sufficient due process and access to critical information withheld so far by Defendants, the ripeness of Mr. Purkey's claims is evident. Finally, even if the Court finds that Mr. Purkey's *Ford* claims are moot, the situation falls squarely within an exception to the mootness doctrine where a controversy is capable of repetition yet evades review.

Second, Mr. Purkey's federal *Ford* claims are not limited to habeas because Mr. Purkey does not challenge in this action the validity of his conviction or sentence. Mr. Purkey only asks this Court to enjoin his execution during his period of incompetency and competency may be restored, a concept Defendants do not contest. Moreover, the habeas statute itself does not implicitly or explicitly preempt or limit *Ford* claims to habeas proceedings, and Defendants fail to cite authority mandating that habeas proceedings are the exclusive remedy for death row prisoners' federal *Ford* claims.

Third, Mr. Purkey's Complaint pleads more than sufficient facts to state a plausible claim for relief, consistent with the standards under Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Defendants' motion goes well beyond the proper scope of Rule 12(b)(6) and, instead of assuming the veracity of the Complaint's well-pled facts, attempts to dispute the veracity of the facts themselves. Moreover, Defendants' merit-based arguments are not only inappropriate at this stage, they demonstrate a misunderstanding of the legal and factual issues applicable to competency claims under *Ford* and its progeny.

Fourth, venue is proper in the District of Columbia ("D.C.") because the named Defendants, residents of D.C., are responsible for executing Mr. Purkey, directed the issuance of

an initial death warrant from D.C., will direct the issuance of any subsequent death warrants from D.C., and are responsible from D.C. for failing to devise and implement constitutionally-mandated *Ford* processes applicable to Mr. Purkey and others similarly situated. There can be no credible dispute that Defendants are the critical actors and decision-makers relating to the attempt to execute Mr. Purkey. Further, several key witnesses reside in close proximity to D.C.

In light of the foregoing, and the arguments set forth below, Mr. Purkey respectfully requests that this Court deny Defendants' Motion to Dismiss, or in the Alternative, to Transfer, and find that this Court has jurisdiction over Mr. Purkey's claims, which have been sufficiently pled, and that venue in D.C. is proper.[3]

## BACKGROUND

Mr. Wesley Purkey was convicted and sentenced to death in 2003. Compl. ¶ 13, ECF No. 1. Now, more than ten years later, Mr. Purkey is 68 years old and suffers from Alzheimer's disease and schizophrenia, has a history of extensive traumatic brain injuries, has suffered multiple severe traumatic events, and has significant memory impairments, grossly deteriorated cognitive function, paranoia, and delusions. *Id.* ¶ 1.[4] All of these factors have contributed to Mr. Purkey's current cognitive and psychological incompetence, a state which leaves him, at least for the time being, incapable of being executed consistent with core constitutional principles.

On July 25, 2019, Defendants directed the scheduling of Mr. Purkey's execution for December 13, 2019. *Id.* On October 25, 2019, Mr. Purkey joined other federal prisoners in filing a complaint in this Court challenging the constitutionality of the method of execution protocol.

---

[3] In the event the Court deems any aspect of Mr. Purkey's Complaint insufficient, Mr. Purkey requests leave to amend the Complaint to remedy any insufficiencies. Any dismissal should be without prejudice and with leave to amend and refile in this Court at a later date.

[4] Detailed facts relating to Mr. Purkey's medical and mental health history and his current incompetency are set out in the Complaint and the Memorandum in Support of the Motion for a Preliminary Injunction. Compl. ¶¶ 14, 20–108, ECF No. 1; Pl.'s Mem. in Supp. of Mot. for a Prelim. Inj. 5–8, ECF No. 7-1.

*See In re Fed. Bureau of Prisons' Execution Protocol Cases*, Case No. 19-mc-145 (TSC), 2019 WL 6691814, at *8 (D.D.C. Nov. 20, 2019). On November 20, 2019, this Court preliminarily enjoined Mr. Purkey's execution, as well as the executions of the other federal prisoners. *See id.* The Court's order is currently on appeal before the United States Court of Appeals for the District of Columbia (D.C. Circuit). *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-5322 (D.C. Cir. Nov. 22, 2019).

On November 26, 2019, Mr. Purkey filed this action raising two constitutional claims: (1) his execution during his current state of incompetency will violate the Eighth Amendment's bar against cruel and unusual punishment; and (2) Defendants' attempt to execute Mr. Purkey without allowing him the due process required under *Ford v. Wainwright*, 477 U.S. 399 (1986), and its progeny, violates his due process rights under the Fifth and Eighth Amendments. Compl. Part VI, ECF No. 1. The Complaint neither challenges Mr. Purkey's conviction nor does it seek to alter his sentence. *Id.* ¶ 5.

Mr. Purkey's execution was not carried out on the original warrant date because of this Court's aforementioned order in the related execution protocol case.[5] The government vigorously opposed the imposition of a stay in that case and actively pursued a reversal of this Court's order, appealing the decision all the way to the U.S. Supreme Court. *Barr v. Roane*, 140 S. Ct. 353 (2019) (Mem. Op.).

While Defendants have been pressing to clear the legal path to execute Mr. Purkey, Mr. Purkey has sought tirelessly to obtain information in Defendants' sole possession relevant to his competency so that any future action to be taken by or at the direction of Defendants to carry out

---

[5] Mr. Purkey named the method of execution case as a related case in this litigation in his "Notice of Designation." Notice of Designation of Related Civil Cases Pending in This or Any Other U.S. Court, ECF No. 3.

his sentence of death can, at the very least, be done in a manner consistent with the Constitution. Mr. Purkey's efforts include seeking his prison medical, mental health, and administrative records, as well as surveillance video from his cell, critical brain imaging, and other medical assessments, all of which would provide evidence relating to his current mental state and functioning. Compl. ¶¶ 14, 17, 19, 25 n.1; Pl.'s Mem. in Supp. of Mot. for a Prelim. Inj. 8–11, 22–23, ECF No. 7-1. Defendants have not provided the relevant information or granted access to conduct the recommended brain imaging and continue to stonewall Mr. Purkey regarding the information he needs in order to demonstrate his current incompetency. Moreover, notwithstanding their intentions and previous attempt to execute Mr. Purkey, Defendants have never had in the past, nor do they have today, *any* process or procedure in place to ensure federal death row prisoners have access to sufficient due process to pursue *Ford* claims and ensure that incompetent prisoners are not executed in violation of their constitutional rights.

On December 4, 2019, Mr. Purkey protectively filed a motion in this case to preliminarily enjoin his execution despite the stay issued in the protocol litigation. Prelim. Inj. Mot., ECF No. 7. The motion was filed out of an abundance of caution given Mr. Purkey's looming execution date and the potential that the appeals process in the protocol litigation could quickly result in the stay being lifted before the original death warrant expired. *See id.* at 2. Once the initial execution date passed and the warrant expired, Mr. Purkey voluntarily withdrew the preliminary injunction motion. Pl.'s Mot. to Withdraw, ECF No. 11. The Court then ordered further briefing related to this Court's jurisdiction over Mr. Purkey's *Ford* claims. Minute Order (Dec. 31, 2019). The jurisdictional question was fully briefed by both parties. Prelim. Inj. Mot., ECF No. 7; Defs.' Opp. to Prelim. Inj. Mot. 1–2, 9–12, ECF No. 10; Pl.'s Resp. to Order of the Court, ECF No. 14; Defs.' Resp. to Order of the Court, ECF No. 15; Pl.'s Reply to Resp. to Order of the Court, ECF

No. 17. The Defendants' current Motion to Dismiss, or in the Alternative, to Transfer raises many of the same issues that have been briefed previously. For all the reasons asserted by Mr. Purkey in prior briefing, and set forth herein, this Court has jurisdiction to hear Mr. Purkey's claims and there is no sound basis upon which to dismiss the Complaint or transfer this action to another venue.

## LEGAL STANDARDS

Defendants file their motion under FRCP 12(b)(1) and 12(b)(6). When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must accept all factual allegations as true and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged." *Moghaddam v. Pompeo*, Civil Action No. 19-668 (CKK), 2020 WL 364839, at *3 (D.D.C. Jan. 22, 2020). "In determining whether there is jurisdiction, the Court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (internal quotation marks omitted).

Under Rules 8(a) and 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]t the Rule 12(b)(6) stage, a court can review documents attached as exhibits or incorporated by reference in the complaint or documents upon which the plaintiff's complaint necessarily relies." *Guo Wengui v. Clark Hill, PLC*, Civil Action No. 19-3195 (JEB), 2020 WL 837166, at *3 (D.D.C. Feb. 20, 2020) (internal quotation marks omitted).

## ARGUMENT

**I.       Mr. Purkey's *Ford* claims are ripe for review and this court has jurisdiction.**

Defendants argue that this Court lacks subject matter jurisdiction over Mr. Purkey's *Ford* claims because the previous execution warrant expired. Defs.' Mot. to Dismiss 10–12, ECF No. 18. Yet, Defendants do not disclaim their continuing intent or ongoing efforts to execute Mr. Purkey and there is every reason to believe that Defendants will issue a new warrant and endeavor to execute Mr. Purkey at the earliest opportunity. Moreover, in seeking dismissal of this case, Defendants ignore both Mr. Purkey's constitutional claims for procedural due process under *Ford* and the practical imminence of Mr. Purkey's pending execution. Mr. Purkey's claim for procedural due process, based on an utter lack of any federal *Ford* process, is a live dispute with real impact on Mr. Purkey and Mr. Purkey's execution is imminent despite the expired warrant.

**A.       Mr. Purkey's *Ford* due process claim is ripe for review.**

"To invoke federal jurisdiction, a plaintiff must show a 'personal stake' in the outcome of the action. This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (citation omitted). Mr. Purkey's *Ford* claim for due process required to demonstrate his current incompetency is ripe because Mr. Purkey has a "personal stake" in his access to process, there is a concrete dispute, and the resolution of this dispute will have direct consequences on whether Mr. Purkey lives or dies.

Mr. Purkey's Complaint alleges not only that his execution while incompetent violates the Eighth Amendment, but also that Defendants' failure to provide him with adequate mechanisms—or more to the point any procedure whatsoever—to gather, assess, and present

information relevant to his current competency has deprived Mr. Purkey of his right to due

process under the Fifth and Eighth Amendments and as required by *Ford v. Wainwright*. Compl.

55–56 (Count II), ECF No. 1. Defendants have denied Mr. Purkey access to critical expert

testing and highly probative materials, including video footage of his behavior in his cell, and

even his own medical records. *See* Compl. ¶¶ 14, 17, 19, 25 n.1, ECF No. 1. Given Mr. Purkey's

inability to obtain highly probative information in Defendants' exclusive control that he would

use to establish his mental state, a competency hearing at this point in time would be incomplete

and inadequate. *See Ford*, 477 U.S. at 414 ("consistent with the heightened concern for fairness

and accuracy that has characterized our review of the process requisite to the taking of a human

life, we believe that any procedure that precludes the prisoner or his counsel from presenting

material relevant to his sanity or bars consideration of that material by the factfinder *is*

*necessarily inadequate*.") (emphasis added).

In this case, there is no federal process at all to allow adequate review of Mr. Purkey's

*Ford* competency claim. Notably, Defendants have not even attempted to argue otherwise. There

are no federal procedures or regulations to facilitate access to necessary information by federal

prisoners for investigating and litigating *Ford* claims. *Cf. Ex parte Jordan*, 758 S.W.2d 250,

252–53 (Tex. Crim. App. 1988) (en banc) (highest Texas criminal court noting that Texas had an

"alarming lack of any Texas statute specifying the procedures to be followed in raising and

determining a defendant's execution competency," in contrast to the vast majority of states, and

inviting the legislature to adopt standards); *Commonwealth v. Banks*, 943 A.2d 230, 234 n.7 (Pa.

2007) (there "is not currently in place a specific procedure for the timely handling of *Ford v.*

*Wainwright* claims"). The only relevant federal statute is 18 U.S.C. § 3596(c), which states in

full that "[a] sentence of death shall not be carried out upon a person who, as a result of mental

disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person." The statute "provides no guidance on how [the statute] should be implemented" and there are no implementing regulations. *United States. v. Nelson*, 419 F. Supp. 2d 891, 892 (E.D. La. 2006).

This complete lack of process is, for obvious reasons, of the utmost significance to Mr. Purkey because it has and will continue to interfere with his ability to gather information relevant to demonstrate to this Court that he is not competent to be executed. This process deficiency is evident from Mr. Purkey's unsuccessful requests prior to his initial execution date for material of critical relevance to his competency including brain imaging recommended by Dr. Bhushan Agharkar that may provide further explanation for Mr. Purkey's incompetence. Compl. Ex. 1 at 6, ECF No. 1-1.

Because there are no existing federal procedures for Mr. Purkey to obtain his own medical and mental health records in a timely fashion, were it not for a stay granted in related litigation, Mr. Purkey may have been executed before his counsel had the opportunity to receive, let alone review and present, information, materials, and other evidence highly probative of his claim that he cannot be constitutionally executed given his current incompetence. *Id.* at 7. During the pendency of the initial warrant, a period of approximately four and a half months, counsel repeatedly requested Mr. Purkey's medical and behavioral records from the U.S. Bureau of Prisons ("BOP") but was informed that the requested material would not be provided for six months—well after Mr. Purkey's scheduled execution. Compl. ¶¶ 14–19. Although Mr. Purkey's initial execution date has come and gone, he still has yet to receive any of the requested material. *Id.* ¶ 19.

Defendants' accusation that Mr. Purkey's *Ford* claims represent "a litigation tactic[]
designed to delay" plainly mischaracterizes the facts and the record. Mr. Purkey has been
diligently seeking material relevant to his competency to pursue his *Ford* claims since they first
became ripe—when the initial execution warrant was issued. He has not stopped pursuing this
information despite the expired warrant and, in turn, Defendants have not relented in refusing to
accord Mr. Purkey any process whatsoever. Should Mr. Purkey be issued another warrant, the
BOP protocol appears to afford him just 20 days' notice before his execution. BOP Execution
Protocol (Redacted) Chapter 1, Section II(C), *Roane v. Gonzalez*, Civ. Action No. 05-2337
(RWR/DAR) (D.D.C. July 22, 2008), ECF No. 179-3. This is "an unrealistic time-frame" to
allow counsel to obtain the information it needs to prepare a competency hearing, this court to
conduct it, and an appellate court to review it "under the best of circumstances, and even if an
established procedure had been in place." *Commonwealth v. Banks*, 29 A.3d 1129, 1134 (Pa.
2011).

Mr. Purkey's *Ford* claim for adequate due process to pursue his *Ford* competency claim
is unquestionably ripe because there is an actual dispute that has a direct impact on Mr. Purkey
and should not be dismissed.

> **B.    Mr. Purkey's execution is imminent and, accordingly, his *Ford* claim
> that he is currently incompetent to be executed is also ripe.**

Mr. Purkey's competency claim itself is also ripe, at least for purposes of preparing for a
*Ford* competency hearing following the adoption and implementation of a constitutionally-
compliant process, as well as opportunity to conduct appropriate and procedurally-standard
discovery. Defendants argue that a *Ford* claim is only ripe when there is an unexpired warrant in
place. But case law establishes that a *Ford* competency claim is ripe when the prisoner's
execution is close in time or impending, which includes scenarios with expired warrants. *See*

*e.g.*, *Billiot v. Epps*, No. CIV.A. S86-0549(L), 2005 WL 2877731, at *1 (S.D. Miss. Oct. 28, 2005) (denying the government's motion to dismiss a prisoner's *Ford* claim as unripe where the execution date had expired but a state statute required a new warrant be issued within 30 days after the court's stay of execution was lifted).

Here, Mr. Purkey's initial execution warrant has indeed expired. Mr. Purkey's pending execution is not, however, speculative and is readily distinguishable from the more clear-cut *Ford* ripeness cases where no execution date had ever been set. *Cf. Holmes v. Neal*, 816 F.3d 949, 954 (7th Cir. 2016) (*Ford* incompetency hearing is not ripe where "the state has yet to set an execution date, which must precede the hearing."); *Isom v. State*, 462 S.W.3d 638, 650 (Ark. 2015) (execution date had not been set); *Connor v. Sec'y, Fla. Dep't of Corr.*, 713 F.3d 609, 625 (11th Cir. 2013) (execution date had not been set). In this case, Mr. Purkey's execution is anything but speculative. To wit, Defendants have not only previously issued an execution warrant but have actively pursued expedited litigation to clear the legal path for Mr. Purkey's execution by appealing this Court's stay in the related protocol case all the way to the U.S. Supreme Court. The U.S. Supreme Court remanded the decision to the D.C. Circuit and that decision is expected imminently. Defendants have given every indication, both in their litigation decisions and their media statements, that if the D.C. Circuit opinion is favorable to Defendants we should expect to see a new warrant for Mr. Purkey's execution almost immediately. Nothing in their motion disclaims such intent or anticipated action. It follows, therefore, that if this Court dismisses Mr. Purkey's Complaint without prejudice because there is, at the moment, no unexpired warrant, then Mr. Purkey will be forced to immediately refile this Complaint in the event a new warrant is issued in the coming weeks or months. Given the live controversy,

particularly with respect to the complete lack of process, there is no reason to waste the Court's and the parties' time by refiling redundant complaints.

Mr. Purkey's execution is therefore close in time, impending, and imminent for practical purposes. Defendants are correct that a hearing on Mr. Purkey's current mental state would be premature before a new warrant is issued. But unless the Defendants can offer assurances that another warrant is not forthcoming (which they have had an opportunity to do but noticeably have not), Mr. Purkey's case presents a live case and controversy. This Court can and should make substantive rulings about the process due to Mr. Purkey, grant Mr. Purkey discovery, and based on that supplemented record, find that Mr. Purkey is entitled to a *Ford* hearing before his execution. The fact that an evidentiary *Ford* hearing will not be scheduled immediately to allow for constitutionally-mandated due process, does not make the suit moot or render it premature or unripe.

Notably, Defendants should be precluded from arguing on the one hand that Mr. Purkey is taking advantage of the system and delaying death penalty litigation unnecessarily while simultaneously arguing, on the other hand, that such issues are unripe and must only be brought at the last possible moment when a live death warrant is pending. That scenario—the exact scenario that would occur in this case should the Court grant Defendants' Motion to Dismiss— creates chaos, inefficiency, and the potential for error. This potential for error is particularly problematic in the death penalty context where there is a well-established need for heightened reliability. *See United States v. Cooper*, 91 F. Supp. 2d 90, 107 (D.D.C. 2000) (acknowledging "the heightened need for reliability in capital cases"); *Ford v. Wainwright*, 477 U.S. 399, 417 (1986) ("The stakes are high [in death penalty cases], and the 'evidence' will always be imprecise. It is all the more important that the adversary presentation of relevant information be

as unrestricted as possible."). Mr. Purkey's *Ford* claims are ripe because Mr. Purkey's execution is in fact imminent. Nevertheless, a *Ford* competency hearing should not be held until Mr. Purkey has been provided constitutionally adequate due process and procedurally appropriate expert and fact discovery.

> ### C.    At a minimum, Mr. Purkey's *Ford* claims fall under an exception to the mootness doctrine because it is capable of repetition yet evading review.

In the alternative, even if the Court were to conclude that Mr. Purkey's *Ford* claims are currently moot due to the absence of a live execution warrant, the claim falls within the well-established exception to the mootness doctrine for those cases "capable of repetition yet evading review." The exception only applies "where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (citations omitted). Given the unusual circumstances, and challenging timing considerations, that accompany the adjudication of *Ford* competency claims, the applicability of this exception has been noted by other courts. *See Kemp v. Cockrell*, No. 4:99-CV-490-Y, 2003 WL 21448584, at *11 n.21 (N.D. Tex. Mar. 25, 2003) (dismissing a *Ford* competency claim where the prisoner conceded that an expired warrant resulted in an unripe claim but opining that "the exception to the mootness doctrine for cases that are capable of repetition, yet evading review . . . could have applied . . . .") (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

The scenario discussed in *Kemp* is precisely the one before the Court here. The short window, potentially only 20 days, that will accompany a new death warrant is plainly insufficient to allow Mr. Purkey the necessary time to gather information and conduct associated discovery and present his *Ford* competency claim to this Court at a *Ford* hearing. Should Mr.

Purkey's case be dismissed now, the issuance of a new warrant will, undoubtedly, cause another race to the courthouse and a last-minute scramble, of Defendants' making, to obtain the necessary information and constitutionally-required due process to adjudicate this essential issue. By maintaining the case and allowing Mr. Purkey the proper time to extract the necessary information from Defendants via the discovery process—information the government has chosen to withhold from Mr. Purkey at their own discretion and pursuant to their own policies despite numerous requests for disclosure—that scenario, one with the gravest of consequences for Mr. Purkey, can be avoided.

## II.   Mr. Purkey's *Ford* claims are not "core habeas" and are properly before this Court.

As the Court is aware from the extensive briefing on the jurisdictional question, Defendants again argue that Mr. Purkey's *Ford* claims may only be brought in habeas. Mr. Purkey can bring his claims outside of habeas because: (1) the relief he seeks does not challenge his conviction or sentence or bar his execution, and (2) his constitutional claims are not preempted by the habeas statute. Mr. Purkey asks this Court to ensure that the manner in which he is executed is constitutional, meaning that he is only executed when competent to understand the reason for his execution and that he is given the appropriate process and information to demonstrate that he is currently incompetent.

### A.   The relief Mr. Purkey seeks is not limited to habeas because it does not challenge his conviction or sentence and would not "necessarily bar" his execution.

Defendants again argue that Mr. Purkey's *Ford* claims will "necessarily bar" his execution because he "asks this Court to stop the Defendants from executing him" and his claims therefore must be brought in habeas. Mot. to Dismiss 14–16, ECF No. 18. Where a prisoner seeks injunctive relief that "would not necessarily bar the inmate's execution," the challenge is

not limited to habeas because the challenge does not seek to establish "unlawfulness [that] would render a conviction or sentence invalid." *Hill v. McDonough*, 547 U.S. 573, 574 (2006) (citations omitted); *Nelson v. Campbell*, 541 U.S. 637, 643–44 (2004) (citations omitted) (allowing a challenge to the method of execution outside of habeas because it did "not directly call into question the 'fact' or 'validity' of the sentence itself."). This is true even if the challenge would "frustrate an execution as a practical matter." *Hill*, 547 U.S. at 574 (explicitly rejecting an *amici* argument that any "challenge that would frustrate an execution as a practical matter must proceed in habeas.").[6]

Defendants frame Mr. Purkey's Complaint as challenging "the Government's ability to execute him at all." Mot. to Dismiss 16, ECF No. 18. This is simply untrue. Mr. Purkey asks this Court to enjoin his execution during his current period of incompetency. Compl. Part VII, ECF No. 1. The relief sought would not *necessarily* or *inevitably* prevent the Government from carrying out Mr. Purkey's execution. *See Ford*, 477 U.S. at 425 (Powell, J., concurring in part and concurring in the judgment) (emphasis in original) ("[T]he only question raised is not *whether*, but *when*, his execution may take place."); *Necessary*, Black's Law Dictionary (11thed. 2019) (defining "necessary" as "[t]hat *must* exist or happen and *cannot be avoided*; inevitable.").

This is so because it is a well-settled principle that competency is not inherently static and may be restored—a concept that Defendants continue to ignore and refuse to disclaim despite the fact that the government is a vocal advocate of that principle in other litigation. *See Indiana v. Edwards*, 554 U.S. 164, 175 (2008) ("[Competency] varies in degree. [Competency]

---

[6] Defendants argue that Mr. Purkey has "applied the wrong test" in previous jurisdictional briefing ordered by this Court. Mot. to Dismiss 16–18, ECF No. 18. But, Defendants loses sight of the forest for the trees. While the idea of reducing the "duration" of one's sentence is inapplicable to capital punishment, both *Nelson* and *Hill* acknowledge that asking what would "necessarily bar [one's] execution" is essentially asking whether the relief goes to the fact or validity of a conviction or sentence. *See Hill*, 547 U.S. at 583; *Nelson*, 541 U.S. at 643.

can vary over time. [Competency] interferes with an individual's functioning at different times in different ways."); *Davis v. Kelley*, 854 F.3d 967, 971 (8th Cir. 2017) ("competency can be lost or regained over time" in the context of *Ford*); *United States v. Dahl*, 807 F.3d 900, 904 (8th Cir. 2015) ("[C]ompetency is not static and may change over even a short period of time[.]" (internal quotation marks omitted)); *United States v. Grape*, 549 F.3d 591, 597–98 (3d Cir. 2008) (stating that the government could restore competency by medicating currently incompetent defendant who became mentally ill in prison); *Singleton v. Norris*, 319 F.3d 1018, 1026 (8th Cir. 2003) (upholding the State's forced medication of a prisoner to restore him to competency); *Commonwealth v. Sam*, 952 A.2d 565, 582 (Pa. 2008) (allowing involuntary medical intervention to restore an inmate to competency); Pl.'s Reply to Defs.' Resp. to Mr. Purkey's Br. Filed Pursuant to this Court's Order of Dec. 31, 2019 at 3 n.1, ECF No. 17 ("Nearly all death penalty jurisdictions that have implemented procedures that govern *Ford* claims include provisions for restoring competency.").

Defendants' notable failure or refusal to disclaim the possibility that Mr. Purkey's competency may be restored serves to leave the door open for Defendants to restore him to competency if his *Ford* claim is successful and his execution is enjoined during his period of incompetency. Defendants' resistance to disclaim this possibility demonstrates the ultimate point that Defendants ignore—Mr. Purkey is currently incompetent; executing him during that incompetency is unconstitutional; his competency might be restorable; and if it is restored, both Mr. Purkey's conviction and sentence will remain unchallenged by claims asserted in this Complaint. Mr. Purkey's *Ford* claims therefore will not "necessarily bar" his execution because any bar, such as it is, will be limited solely to his period of incompetency.[7] In any event,

---

[7] Defendants argue that the "necessarily bar" test for core habeas death penalty challenges include a "temporal consideration." Mot. to Dismiss 17–18, ECF No. 18. They argue that *Hill* and *Nelson* imply

Defendants do not address how Mr. Purkey's due process claim under the Fifth and Eighth Amendments would "necessarily bar his execution." Compl. ¶¶ 116–21, ECF No. 1. Pursuant to that claim, Mr. Purkey merely seeks fair process including preventing Defendants from continuing to withhold information and medical tests indispensable to his *Ford* competency claim. *See id.* As with his *Ford* competency claim itself, Mr. Purkey's *Ford* due process claim seeks only to prevent Defendants from executing him in a manner that violates the Constitution, not to invalidate or alter his sentence or conviction.

      **B.**    **The habeas statute does not preempt a constitutional claim for equitable relief.**

Defendants argue that private rights of action may be preempted by statute and thus individual equitable *Ford* claims must necessarily be preempted by the habeas statute. Mot. to Dismiss 13–14, ECF No. 18 (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015), and *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996)). However, the habeas statute, by its terms, does not explicitly or implicitly preclude private constitutional causes of action. Likewise, neither the federal habeas statute nor the federal death penalty statute dictates any process for federal prisoners to bring *Ford* claims. *See* 18 U.S.C. § 3596(c); *Banks*, 29 A.3d at 1134 ("*Panetti* does not direct the specific vehicle for pursuing such relief and the question remains unanswered in Pennsylvania"). Defendants again fail to cite to any authority that precludes an equitable *Ford* claim outside of habeas. Moreover, the cases Defendants cite are inapposite. In *Armstrong* the Court rejected a private cause of action in equity where the

_____

that a prisoner's challenge must be brought in habeas if relief would foreclose the execution *today* versus *ever*. *Id.* (citing *Hill*, 547 U.S. at 583; *Nelson*, 541 U.S. at 644). The argument is misleading and inconsistent with the cases. In *Hill*, the Court emphasized the importance of whether the judgment would *permanently* enjoin the execution. *See Hill*, 547 U.S. at 579 ("a constitutional challenge seeking to *permanently* enjoin the use of lethal injection may amount to a challenge to the facts of the sentence itself.") (emphasis added) (quoting *Nelson*, 541 U.S. at 644)).

Medicaid statute specifically provided for agency enforcement. 575 U.S. at 328. Similarly, in *Seminole Tribe*, the Court rejected an action against state officers in equity for violating state gaming ordinances where the statute provided a detailed enforcement mechanism that limited the available remedies available to tribes in actions against the state. *Seminole Tribe*, 517 U.S. at 74.

*Bivens* actions are actually a closer fit to the case at hand. Under *Bivens*, a prisoner may recover damages for constitutional violations by federal agents without any federal statute conferring such right as long as a court finds that there are no "special factors counselling hesitation in the absence of affirmative action by Congress" and that "Congress has [not] provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Carlson v. Green*, 446 U.S. 14, 18–19 (1980) (seeking damages under the Eighth Amendment for inadequate prisoner medical attention under *Bivens*). *Bivens* at least provides guidance to analyze substantive and procedural *Ford* claims and related statutory preemption concerns although courts generally disfavor expanding *Bivens* to new contexts. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856–57 (2017); *cf. Meshal v. Higgenbotham*, 804 F.3d 417, 444 (D.C. Cir. 2015) (Pillard, J., dissenting) ("[T]he Supreme Court has never hesitated to recognize the viability of a damages suit against federal agents engaged in law enforcement activities or responsible for supervising prisoners.").

Defendants also argue that cases cited in Mr. Purkey's jurisdictional briefing to this Court do not provide specific examples of a federal *Ford* proceeding outside of habeas. Mot. to Dismiss 18–19, ECF No. 18. The dearth of examples is not surprising, since only three federal prisoners have been executed since *Ford* was decided and none have brought *Ford* claims. *See* Pl.'s Reply to Defs.' Resp. to Mr. Purkey's Br. Filed Pursuant to this Court's Order of Dec. 31, 2009 at 4–5, ECF No. 17. Nevertheless, Mr. Purkey has offered several cases to demonstrate that

analogous claims exist outside of habeas, including examples of *Ford* claims. *See Ward v. Hutchinson*, 558 S.W.3d 856 (Ark. 2018) (a state prisoner sought declaratory and injunctive relief in a civil rights action under 42 U.S.C. § 1983 challenging, in part, his competency to be executed); *Stanley v. Davis*, No. 07-cv-4727, 2015 WL 435077, at *4 n.4, *5 (N.D. Cal. Feb. 2, 2015)[8] ("[T]he upshot of challenges to the method of execution is to prevent (or at least delay) execution, [and therefore] it is difficult to discern a meaningful difference between a *Ford* challenge and a methods challenge. . . .[which] may be brought under section 1983."); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1227–28 (10th Cir. 2005) (involving a claim for injunctive relief upheld outside of habeas (or any other statute) and stating that federal courts have recognized Eighth Amendment claims by prisoners denied proper medical care, but "the vehicle is not so clear."); *Hubbard v. Campbell*, 379 F.3d 1245, 1247–48 (11th Cir. 2004) (Barkett, J., dissenting) (holding that civil rights action is an appropriate vehicle to raise a *Ford* claim because it does not challenge the fact or validity of the sentence, only the constitutionality of the execution at a specific temporal point of incompetency, an issue not reached by the majority); Pl.'s Reply to Defs. Resp. to Mr. Purkey's Br. Filed Pursuant to this Court's Order of Dec. 31, 2009 at 4, ECF No. 17. Due to the unique circumstances of this case and recent federal death penalty litigation, there is no perfect analogue, but the aforementioned cases should be instructive.

In all events, this Court should not be distracted by Defendants' attempts to minimize the number of ways in which federal courts have allowed prisoners to bring suits against federal officers seeking relief for federal constitutional violations, like this one, including the fact that

---

[8] *See also*, Mot. to Declare Pet'r Incompetent to Proceed or, in the Alternative to Determine Pet'r's Competency, *Stanley v. Martel*, No. 3:14-cv-04727-EMC (N.D. Cal. Feb. 15, 2012), ECF No. 51 (pending civil rights action alleging a *Ford* violation).

Defendants ignore that Mr. Purkey also seeks declaratory relief under 28 U.S.C. §§ 2201(1) and 2202.[9]

### III. Mr. Purkey's Complaint easily satisfies the pleading standard for showing that he is incompetent to be executed and is entitled to process and an evidentiary hearing.

Defendants' arguments that Mr. Purkey has insufficiently pled a claim of *Ford* incompetence are a combination of misplaced factual disputes with Mr. Purkey's allegations and a misunderstanding of the law. Defendants mistakenly apply a heightened standard at this stage of litigation arguing over issues of disputed facts instead of accepting the allegations in the Complaint as true for purposes of a Rule 12(b)(6) motion. Under any standard, however, Mr. Purkey's Complaint includes facts that are more than sufficient to entitle him to process under *Ford* and a *Ford* competency hearing once he receives that process and related fact and expert discovery.

### A. Defendants apply the wrong standard of review.

Despite having claimed that the Complaint is not ripe enough to move forward, Defendants also argue that the claim is so ripe that the Court can resolve the merits of Mr. Purkey's *Ford* claims on a motion to dismiss. In doing so, Defendants ignore the proper standard for resolving a Rule 12(b)(6) motion to dismiss. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679.

Defendants' motion ignores the Court's obligation to assume the veracity of the Complaint's well-pled factual allegations, of which there are many in this instance, and instead

---

[9] Defendants also argue that Mr. Purkey's Complaint cannot be converted to habeas because it does not name Mr. Purkey's current custodians as defendants. Mot. to Dismiss at 19–20, ECF No. 18. In the event the Court agrees that Mr. Purkey's *Ford* claims must be brought under habeas and transferred to Indiana, Mr. Purkey would seek leave to amend the Complaint to join any necessary defendants.

attempts to dispute certain alleged facts. Defendants, for example, *dispute* the Complaint's factual allegation regarding Mr. Purkey's statement that "he accepted that he was going to be executed for the murder of Jennifer Long" was an attempt to "fake good." Mot. to Dismiss 22, ECF No. 18 (quoting Compl. Ex. 1 at 11). The Complaint alleges that Mr. Purkey believes that the "real reason" he is going to be executed is "because he is filing lawsuits for other people's cases." *Id.* Defendants dispute Mr. Purkey's beliefs and assert that Dr. Agharkar "either misunderstood or misconstrued [Mr.] Purkey's statements . . . ." *Id.* These are factual disputes and not appropriate at this stage in the litigation. *Ashcroft*, 556 U.S. at 678. The Complaint's allegations of fact that Mr. Purkey does not understand the actual reason for his execution—and any statements made otherwise are simply parroting what he is supposed to say—must be assumed to be true for purposes of this motion. Defendants' Motion to Dismiss for failure to state a claim because Mr. Purkey has allegedly not "plausibly alleged he is incompetent," and its entire line of reasoning in support, should be dismissed as it attempts to convert a Rule 12(b)(6) motion to a summary judgment motion, before allowing Mr. Purkey to seek discovery, gain access to material information relevant to his current competency, and have a hearing on the ultimate issue of his competency before this Court.

**B.    Mr. Purkey has stated a sufficient claim of incompetency under any standard.**

Defendants mistakenly contend that Mr. Purkey's Complaint does not sufficiently allege that he is incompetent to be executed by arguing that Dr. Agharkar's expert report is facially deficient, a conclusion Defendants reach only by contesting the factual findings of Dr. Agharkar. Defendants further seek to undermine Mr. Purkey's well-pled allegations by suggesting, contrary to case law, that this Court should disregard Mr. Purkey's history of mental illness and the full context of his *Ford* claim.

i.     **Defendants' attack on the quality and variety of sources corroborating Mr. Purkey's allegations of incompetence is inconsistent with the case law and well beyond the scope of review on a motion to dismiss.**

Plaintiff's Complaint repeatedly alleges that Mr. Purkey lacks a rational understanding of the purpose of his execution, describing in extensive detail the evidence of Mr. Purkey's delusional statements about his execution, as well as the context of his history of mental illness and schizophrenia, brain injuries, paranoia and cognitive decline. *See e.g.*, Compl. ¶ 1, ECF No. 1 ("As a result of his brain injuries, severe mental illness and advancing disease, Mr. Purkey has significant memory impairments, grossly deteriorated cognitive function, paranoia, and delusions that render him unable to rationally understand the reason the United States seeks to execute him."); *id.* ¶ 29 (describing Mr. Purkey's delusional belief that the "real reason" for his execution is retaliation for filing lawsuits); *id.* ¶¶ 109–11 (as a result of his declining mental state, including paranoia and delusions, "Mr. Purkey currently does not rationally understand the basis for his executions"). These allegations are supported by the expert opinion of Dr. Agharkar, as well as available medical records, writings, and grievances filed by Mr. Purkey, and other medical expert evaluations. *See generally*, *id.* ¶¶ 20–104. Defendants nonetheless suggest that this Court can dismiss Mr. Purkey's claim without any additional process. Mot. to Dismiss at 2–3, ECF No. 18. They make this sweeping claim by arguing that Dr. Agharkar's report is "fundamentally flawed on its face" and that none of the evidence pled by Mr. Purkey rises to the level of showing he is entitled to a hearing or process on his claim of incompetency. *Id.* at 22. Defendants are wrong on both counts.

Defendants' first mistake is to attempt to parse separately the sources of evidence related to Mr. Purkey's incompetence and ask whether a single category of evidence individually demonstrates that Mr. Purkey is incompetent under the *Ford* standard. *See e.g.*, *id.* at 21–28

(arguing separately that Mr. Purkey's *Ford* claim fails by addressing in isolation first Dr.

Agharkar's expert report, then Mr. Purkey's history of mental illness, then Mr. Purkey's filing of

grievances and *pro se* litigation, then Mr. Purkey's dementia and Alzheimer's Disease, and

finally Mr. Purkey's difficulty communicating with counsel). Defendants' approach upends the

legal standard for a *Ford* claim, which asks whether holistically a prisoner has made "a

substantial threshold showing" of incompetency, which in turn, triggers due process protections.

*See Panetti v. Quarterman*, 551 U.S. 930, 950 (2007) (quoting *Ford*, 477 U.S. at 426 (Powell, J.,

concurring)); *see also*, *Amaya-Ruiz v. Steward*, 136 F. Supp. 2d 1014, 1018 (D. Ariz. 2001)

(describing state court competency determination triggered by a single doctor report alleging that

the prisoner has Schizophrenia, along with bizarre behaviors and limited cognitive ability); *Wood

v. Quarterman*, 572 F. Supp. 2d 814, 819 (W.D. Tex. 2008) (holding petitioner was entitled to a

*Ford* hearing based on his record of suicides, prior mental health problems, paranoia, and

delusional statements to counsel), *aff'd sub nom. Wood v. Stephens*, 619 F. App'x 304 (5th Cir.

2015).

In *Panetti,* the defense counsel sought a *Ford* hearing by filing a motion for declaration

of incompetency along with a declaration from a law professor and a single mental health expert,

who had also interviewed the petitioner. *Panetti*, 551 U.S. at 938. The psychologist concluded

that Mr. Panetti experienced delusions that caused him to misunderstand why he would be

executed. *Panetti v. Dretke,* 401 F. Supp. 2d 702, 704 (W.D. Tex. 2004). The U.S. Supreme

Court concluded, like the lower courts and parties, that Mr. Panetti had made a "substantial

threshold showing" when he filed his motion. *Panetti*, 551 U.S. at 950. *Panetti* is also a direct

refutation to Defendants' criticism that Mr. Purkey's well-pled Complaint is somehow

insufficient because only one medical expert directly opined about his lack of competency.

*Compare id.* (finding a substantial showing based on a single expert report, combined with allegations about the petitioner's history), *with* Mot. to Dismiss 2, ECF No. 18 ("The only allegations in Purkey's Complaint that directly relate to his current competency to be executed are those based upon the report of Dr. Bhushan Agharkar.").

Defendants' attacks on the wealth of corroborating evidence Mr. Purkey pleads is also contrary to the case law and the relevant legal standard at this stage of the case. Under Defendants' novel approach, the evidence of Mr. Purkey's Alzheimer's disease can be discarded because the neuropsychologists who evaluated him did not render opinions about Mr. Purkey's competence to be executed, Mot. to Dismiss 27–28, ECF No. 18, and, similarly, Mr. Purkey's history of mental illness, trauma, and paranoid delusional thinking is irrelevant because standing alone it "do[es] not establish that he is incapable of rationally understanding the reason for his execution." *Id.* at 25. But courts have repeatedly, and appropriately, weighed history of mental illness and cognitive decline as highly relevant evidence supportive of a *Ford* incompetency claim. *See e.g.*, *Panetti*, 551 U.S. at 950 (citing petitioner's "extensive evidence of mental dysfunction considered in earlier legal proceedings" as part of the basis for his claim of incompetence); *Billot v. Epps*, 671 F. Supp. 2d 840, 853–54 (S.D. Miss. 2009) (medical history and prior diagnoses "while not dispositive" of the *Ford* issue "provided a context in which to examine his claim of current incompetence" and were important evidence of whether the "current manifestation of mental disorder is genuine").

In *Thompson v. Bell*, 580 F.3d 423, 436 (6th Cir. 2009) the Sixth Circuit addressed this issue head on, rejecting a state court's conclusion that prior mental health evidence was not probative of current competency to be executed as an unreasonable application of *Ford*:

> Although the court was correct that only Thompson's present competency was at issue, his medical records are relevant to that

> question, particularly to the extent that they demonstrate a chronic
> mental condition, or a condition that has only worsened over time.
> Thompson's medical history demonstrates his 'long history of
> bipolar disorder and psychic symptoms,' and that he has been
> psychotic and delusional since at least 1989. While this history is
> not definitive proof of Thompson's current incompetency for
> execution, it is at least probative of the seriousness of his illness
> and whether it is chronic.

*Thompson*, 580 F. 3d at 436.

Defendants further miss the mark when they attempt to minimize the import of Mr.

Purkey's dementia and Alzheimer's disease. Mot. to Dismiss 27–28, ECF No. 18. They assert

that Mr. Purkey's condition "bears little resemblance to that of the defendant in *Madison v.*

*Alabama*, who 'suffered a series of strokes, including' two major ones, 'was diagnosed as having

vascular dementia, with attendant disorientation and confusion, cognitive impairment and

memory loss' and 'claim[ed] that he [could] no longer recollect committing the crime for which

he had been sentenced to die.'" *Id.* While it is true that Mr. Purkey has not (yet) lost entirely his

memory of the crime, there are more similarities between Mr. Purkey and Mr. Madison than

differences. Like Mr. Madison, Mr. Purkey has dementia with disorientation and confusion,

cognitive impairment and memory loss. *See* Compl. 23, 27–28, ECF No. 1. Dr. Agharkar

described new-onset asymmetry in Mr. Purkey's face from his 2019 visit, suggesting that Mr.

Purkey may have had a recent stroke. *Id.* at 25.[10]

Defendants are equally wrong when they conflate the prior finding that Mr. Purkey was

competent to stand trial with the current allegation that he is incompetent to be executed. *See*

Mot. to Dismiss 25, ECF No. 18 (arguing against the probative value of Mr. Purkey's mental

health history because it "did not prevent him from being found competent to be tried for his

---

[10] Because Defendants have not provided the requested medical records, it cannot yet be determined,
much less pled, whether Mr. Purkey has had one or more strokes while in Defendants' custody.

crime"). The fact that Mr. Purkey's competency was in question at the time of trial, like the rest of his mental health history, is probative evidence about "the seriousness of his illness." *Thompson*, 580 F.3d at 436. The vast majority of litigants who have met the *Ford* standard of showing incompetency to be executed had previously raised their incompetency to stand trial, like Mr. Purkey. John Blume et al., *Killing the Obvious: An Empirical Study of Competency to Be Executed Litigation*, 82 UMKC L. Rev. 335, 356 (2014) (while the majority of successful competency *Ford* litigants had raised competency to stand trial claims, the majority had lost those claims.). As detailed in Mr. Purkey's Complaint, Mr. Purkey was found competent to stand trial only after he was transferred to another facility for treatment and for mental health evaluation, diagnosed with psychosis, and prescribed with anti-psychotic, anti-anxiety and anti-seizure medications. Compl. ¶¶ 64–65, ECF No. 1. This history, like Mr. Purkey's long mental health history generally, is probative evidence in favor of a *Ford* showing. Blume, 82 UMKC L. Rev. at 355 (noting that "the legitimacy of raising a *Ford* claim cannot really be questioned" for those with a "well-documented history of mental illness"); *see also*, *State v. Perry*, 610 So.2d 746, 748 (La. 1992) (finding a *Ford* violation and weighing as probative the fact that the petitioner had previously raised competency to stand trial, been transferred to another facility for treatment and evaluation, and found competent to stand trial after he was provided antipsychotic medication).

ii.    **Unsupported attacks on expert conclusions are also not a basis for dismissal at this stage of the case.**

Defendants also attack Dr. Agharkar's expert conclusions based solely on their own, uninformed understanding of mental health. Mot. to Dismiss 21–25, ECF No. 18. Defendants argue that Mr. Purkey's lack of rational understanding for his execution is really just a lack of understanding of the reason for scheduling his execution. Mot. to Dismiss 22, 29, ECF No. 18.

Defendants' arguments seize on instances where Mr. Purkey discusses the scheduling of his execution but overlook Dr. Agharkar's express and repeated descriptions of Mr. Purkey's irrational beliefs about his execution:

> In my meeting with Mr. Purkey on November 8, 2019, Mr. Purkey voiced his belief that he is going to be executed in retaliation for his legal work. Mr. Purkey's psychotic thought process was evident in our conversation.
> . . .
> As the visit continued, however, Mr. Purkey began to talk about the 'real reason' he was going to be executed. He told me that he was actually being executed because he is filing lawsuits for other people's cases. . . . He reports that the guards have told him that they know his legal filings are the reason for his execution, something they tell him all the time.

Compl. Ex. 1 at 2, 11, ECF No. 1-1.

The closest Defendants come to grappling with these clearly legally sufficient opinions supporting a finding of incompetency is to suggest that "Dr. Agharkar either misunderstood or misconstrued Purkey's statements" because in a separate document, Mr. Purkey's *pro se* Bivins lawsuit, Mr. Purkey discusses his delusions about the scheduling of his execution. Mot. to Dismiss 23, ECF No. 18. The fact that Mr. Purkey has a delusional understanding of why an execution date was scheduled is consistent with, and does not foreclose or contradict, the conclusion that he has a delusional understanding of why he will be executed.

When Defendants do quote Dr. Agharkar's report they rely on misleading quotes. For example, Defendants assert that Mr. Purkey understands the purpose of his execution by quoting Dr. Agharkar's report that Mr. Purkey "accepted he was going to be executed for the murder of Jennifer Long" in his evaluation with Dr. Agharkar. *Id.* at 29. This statement is taken out of context from the rest of Dr. Agharkar's report. As Dr. Agharkar explains:

> Mr. Purkey lacked a rational understanding of the basis for his execution. While Mr. Purkey can recite the fact that his execution is for the murder of Jennifer Long, *he lacks rational understanding of*

> *that fact. This is an example of parroting, rather than having a rational understanding.* He lacks a true understanding or rationality that the murder is the basis for his execution. Instead, Mr. Purkey has a fixed belief that he is going to be executed in relation for his legal work, to prevent him from being a hassle for the government. This prevents him from having a rational understanding of the purpose of his execution.

Compl Ex. 1 at 12, ECF No. 1-1 (emphasis added).

Elsewhere Defendants acknowledge Dr. Agharkar's opinion that Mr. Purkey initially attempted to "fake good" in his evaluation by Dr. Agharkar, but erroneously suggest that Dr. Agharkar had "no basis or justification" for that conclusion. Mot. to Dismiss 22, ECF No. 18. In fact, Dr. Agharkar's report specifically details the corroborative evidence from the evaluation that Mr. Purkey was attempting to hide his illness, including the fact that Mr. Purkey denied any mental health problems to Dr. Agharkar, Compl. Ex. 1 at 11, ECF No. 1-1, and that he had previously tried to minimize his symptoms in prior evaluations:

> Mr. Purkey took pains to attempt to hide his symptoms and deny that his mental health is an issue. The fact that Mr. Purkey attempted to say that he understands the basis for his execution is consistent with his long history of attempting to "fake good" and minimize his psychiatric symptoms including in evaluations in 1976, in 1981, and in 1998.  Anosognosia, or lack of insight into the illness is a key feature of schizophrenia, as are paranoid delusions.

Compl. Ex. 1 at 12, ECF No. 1-1.

Contrary to Defendants' implication, a prisoner who can parrot or state his awareness of his execution may still lack a rational understanding. *Panetti* is controlling on this point. The expert in *Panetti* "explained [that] although [Petitioner] claims to understand that the state is saying that it wishes to execute him for his murders, he believes in earnest that the stated reason is a sham and the state in truth wants to execute him to stop him from preaching." Mot. to Dismiss 29; ECF No. 18 (quoting *Panetti*, 551 U.S. at 954–55). With these facts, the Supreme Court of the United States held definitively that "[a] prisoner's knowledge of the stated reasons

for his execution does not foreclose a claim of incompetency to be executed" because "[a] prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it*." Panetti*, 551 U.S. at 959. The only difference between Mr. Panetti's and Mr. Purkey's understanding of their executions is that Mr. Panetti believed his execution was motivated by his preaching whereas Mr. Purkey believes his execution is motivated by his jailhouse lawyering. Compl. Ex. 1 at 11, ECF No. 1-1.

Mr. Purkey's case is similar to other state court litigation where litigants were found to have set out valid *Ford* claims based on delusional understandings related to their executions, even though they could state that the government planned to execute them as punishment for their murder convictions. In North Carolina, death row prisoner Guy LeGrande was found incompetent to be executed because "[w]hile he has a factual knowledge that the State can set an execution date for the murder [he committed]," he lacked a rational understanding and awareness of the execution because of his delusional beliefs that he would be pardoned for the murder. Order on Defendants Motion to Stay Proceedings at 10, *State v. Guy Tobias LeGrande*, 95 CRS 567 (N.C. Super. Ct. June 27, 2008). The mental health expert testified, and the court credited, that although Mr. Grande had stated his awareness that he would be executed, later questioning showed that to be an insincere effort to minimize his appearance as mentally ill.

In another example from Ohio, the trial court found defendant Abdul Awkal incompetent to be executed even though all experts agreed that the defendant was aware that he was tried, convicted, and sentenced to death for two murders. *See* Exhibit 1 (Memorandum Opinion and Order) at 9, *In re Ohio Execution Protocol Litig.*, Case 2:11-cv-01016-EAS-MRM (S.D. Ohio Apr. 30, 2018), ECF No. 1574-1. The court credited testimony that Mr. Awkal had a delusional belief that his death sentence was being carried out only because the CIA wanted him executed

29

in retaliation for "knowing too much" or discussing plans with President Bush and concluded that this meant Mr. Awkal lacked a rational understanding of the purpose of his execution. *Id.* at 12–13. Like Mr. LeGrande and Mr. Awkal, Mr. Purkey's delusions interfere with his rational understanding of his execution and he is entitled to a hearing to establish his incompetency to be executed.

### iii.   Mr. Purkey's own alleged statements and actions in related litigation also provide no basis for dismissal.

Defendants' attempts to downplay the overwhelming evidence of paranoia and thought disturbance on display in Mr. Purkey's grievances and *pro se* complaints are equally unavailing. Defendants contend that Mr. Purkey's filings "reflect not delusions but instead calculated strategy and understanding of legal principles." Mot. to Dismiss 26, ECF No. 18. Defendants argue that Mr. Purkey's citation to caselaw demonstrates his knowledge that he must allege retaliation in order for "otherwise permissible actions taken against inmates" to be considered actionable. *Id.* But Defendants wholly ignore the bizarre nature of factual assertions that Mr. Purkey alleges in his filings. For instance, Mr. Purkey repeatedly accused prison staff of: (1) attempting to poison him by tampering with his food and spraying chemicals into his cell; (2) pouring "piss" on his laundry bags; (3) plotting with other prisoners to force him to live in a cell "caked in feces"; and (4) threatening to kill him. Compl. ¶¶ 27, 33, 35, 38, 39, ECF No. 18. Defendants' argument that Mr. Purkey's filings "show on their face that he alleges retaliation in an effort to make his complaints actionable" fails to explain how such bizarre allegations support any strategy, let alone a calculated one. Mot. to Dismiss 26–27, ECF No. 18.

Additionally, Mr. Purkey's insistence that staff review camera footage to verify his bizarre allegations (*id.* at 35) further demonstrates that Mr. Purkey genuinely believes the validity of the delusions he describes—not "that he is simply lying" (*id. at* 27). *See* Compl. 35–

36, ECF No. 1 (citing multiple instances in which Mr. Purkey insisted that cameras would verify the allegations in his grievances). But Defendants fail to address how such demands aid a calculated strategy, as camera footage would only confirm that the events narrated in Mr. Purkey's filings are *not* based in reality.

Similarly, Defendants also fail to address how the incoherent and often contradictory nature of Mr. Purkey's filings for the last decade could possibly be motivated by strategic choice rather than delusional thought. Compl. Ex. 1 at 10, ECF No. 1-1. As Dr. Agharkar concluded, "a review of these grievances from 2010 to today shows the breadth and depth of his fixed belief that a host of actions. . . . were carried out against Mr. Purkey in 'retaliation' for his legal work on behalf of himself and other prisoners." Compl. Ex. 1 at 9; ECF No. 1-1. Both Dr. Agharkar's opinion and the filings underlying it, support the inference that Mr. Purkey's longstanding paranoia and delusional thought has prevented him from rationally understanding the reasons for his execution.

Defendants' citation to *Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir 2000), in discussing Mr. Purkey's understanding of the legal principles governing actionable claims is grossly misleading. Mot. to Dismiss 26, ECF No. 18. Defendants do not cite a single grievance in which Mr. Purkey mentions this case. Instead, Defendants refer to three grievances in which they claim Mr. Purkey "attempts to cite to this caselaw." *Id*. More importantly, whether or not Mr. Purkey can on occasion accurately cite caselaw does not refute the plausible inference that he holds delusional and paranoid beliefs that prevent him from understanding the basis for his execution. *See, e.g., Banks*, 29 A.3d at 1146 (finding delusional defendant *Ford* incompetent even though he could communicate logically at times and appropriately respond to questions asked of him). Fundamentally, Defendants seem to confuse Mr. Purkey's claim of incompetence with a claim of

intellectual disability. For the same reason, Defendants' references to Mr. Purkey's attempts to learn Spanish, conversations with pen pals about his family, and efforts to wish his family happy birthday do not contradict the fact that he lacks a rational understanding of the reasons for his execution.

### iv.    Mr. Purkey's ability to work with counsel is not irrelevant.

Defendants urge this Court to find as a matter of law that competency to be executed does not encompass the ability to communicate with counsel. Mot. to Dismiss 28, ECF No. 18. Defendants rely on cases that hold that a defendant's competency to be executed under the Eighth Amendment does not turn independently on a prisoner's ability to work with counsel. *Id*. Defendants misread this case law when they suggest that the evidence of a prisoner's communication difficulties is irrelevant to the Eighth Amendment analysis. As Dr. Argharkar's affidavit explains, as a result of Mr. Purkey's paranoia and delusions regarding counsel, he is distrustful of counsel and thus counsel cannot correct misunderstandings Mr. Purkey has of the execution process and purpose. Mr. Purkey's communication difficulties with counsel directly relate to the question of his rational understanding of the purpose of his execution.

Furthermore, as described above, no court has interpreted the meaning of the governing federal statute regarding *Ford* claims. The American Bar Association recommends that jurisdictions include ability to communicate or assist counsel as part of the competency to be executed standard. ABA Task Force on Mental Disability & the Death Penalty, *Recommendation and Report on the Death Penalty and Persons with Mental Disabilities*, 30 Mental & Physical Disability L. Rep. 668, 673 (2006). As Mr. Purkey alleged in his Complaint, Compl. ¶ 104 n.5, ECF No. 1, the majority of state statutes and decisions considering the question have found that ability to consult with counsel rationally is relevant to the question of a prisoner's competency to be executed. Seven states incorporate ability to consult with counsel as a matter of statute. *See*

Alabama, Ala. Code § 15-16-23; Colorado, Colo. Rev. Stat. §§ 18-1.3 to -1.4; Mississippi, Miss. Code Ann. § 99-19-57(2); Missouri, Mo. Rev. Stat. § 552.060(1); Nebraska, Neb. Rev. Stat. Ann. § 29-2537; North Carolina, N.C. Gen. Stat. Ann. § 15A-1001(a); Ohio, Ohio Rev. Code. Ann. §§ 2949.28–29; Utah, Utah Code Ann. § 77-15-2. In multiple states, including states that no longer have the death penalty, high court decisions incorporated ability to consult and assist counsel as a component of the competency to be executed standard. *See* South Carolina, *State v. Downs*, 631 S.E.2d 79, 81 (S.C. 2006) (the standard for whether someone is competent to be executed includes whether the prisoner "possesses sufficient capacity or ability to rationally communicate with counsel"); Washington, *State v. Harris*, 789 P.2d 60, 63, 66 (Wash. 1990) (en banc) (holding under state constitution and common law prisoners must have the "ability to assist counsel" in order to be competent to be executed, because such a rule "preserves the due process rights of defendants and the fairness which the imposition of the death penalty, particularly, demands"); Oklahoma, *Bingham v. State*, 169 P.2d 311, 314–15 (Okla. Crim. App. 1946) (adopting the rule from New Mexico Supreme Court that whether a person is incompetent to be executed will include whether the prisoner has the "intelligence requisite to convey such information to his attorneys or the court"); New Mexico, *In Re Smith,* 176 P. 819 (N.M. 1918) (same); *see also*, *Ford v. Wainwright*, 477 U.S. at 422 n.3. (Powell, J., concurring) (noting jurisdictions may adopt definitions of competency to be executed that include the "requirement that the defendant be able to assist in his own defense"). Only six states explicitly reject capacity to assist counsel as a valid consideration. *See* Arkansas, Ark. Code Ann. § 16-90-506(d)(1)(b)(i); Florida, Fla. Stat. Ann. § 922.07; Indiana, *Overstreet v. State*, 993 N.E.2d 179 (Ind. 2013); Kentucky, Ky. Rev. Stat. Ann. § 431.213(2); Pennsylvania, *Commonwealth v. Jermyn*, 652 A.2d 821, 823 (Pa. 1995); Tennessee, *State v. Irick*, 320 S.W.3d 284, 294 (Tenn. 2010). This Court

should reject the Defendants' arguments that ability to work with counsel is irrelevant to the constitutional or statutory analysis of competency to be executed.

Mr. Purkey has, under any standard, pled sufficient facts to state a plausible claim of incompetency to support his claim for sufficient federal *Ford* procedures and a *Ford* competency hearing once those procedures have been effectuated.

### IV.        Venue is proper in the District of Columbia.

Finally, venue is proper in this District under 28 U.S.C. § 1391(e). In a civil action against a federal officer or employee defendant, venue is appropriate "in any judicial district in which (A) a defendant in the action resides [and] (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e).

In this case, Defendants reside or work in Washington, D.C. and the BOP is an agency of the United States headquartered in D.C. Defendants' motion does not claim otherwise. Additionally, a substantial part of the events or omissions giving rise to the claim have occurred in D.C. Namely, Defendants—as the heads of the United States Department of Justice and its component agency, the Federal Bureau of Prisons, respectively—directed the issuance of Mr. Purkey's death warrant from D.C. and will direct the issuance of any subsequent warrant from D.C. Defendants, acting in this District, have denied Mr. Purkey and others a constitutionally-compliant *Ford* process and access to necessary and sufficient information, records, and other evidence relating to their *Ford* claims. Defendants are also responsible for Mr. Purkey's actual execution and, contemporaneously, for ensuring that Mr. Purkey has access to the due process required by *Ford*. Officials residing in this District and responsible for federal executions, including Mr. Purkey's execution, have failed to provide Mr. Purkey with any procedures whatsoever or any due process to ensure that he is able to demonstrate his incompetency.

Specifically, these officials within this District have failed to develop any procedures for gathering evidence in the government's possession in advance of a *Ford* hearing. By declining to develop any such procedures, those federal government officials in D.C. have prevented Mr. Purkey from obtaining the required due process to demonstrate his incompetence during a *Ford* competency hearing. Because these procedural deficiencies lie at the heart of Mr. Purkey's due process claim, his Complaint does in fact seek resolution of issues related to this jurisdiction. Mot. to Dismiss 33, ECF No. 18 (citing *Young v. Dir., U.S. Bureau of Prisons*, 367 F.2d 331, 332 (D.C. Cir. 1966)). Moreover, several key witnesses relevant to Mr. Purkey's competency determination reside in close proximity to the District including Dr. Jonathan DeRight and mitigation specialists John Fox and Dr. Elizabeth Vartkessian. Compl. ¶ 12, ECF No. 1. Key witness proximity to the jurisdiction is yet another reason this case was filed in the proper forum.

In sum, venue is proper in this District because Defendants reside and work in this District and a substantial part of the events and omissions, including witnesses, are in this District, not Indiana. Transfer would only be proper if the Court finds that Mr. Purkey is limited to seeking redress under *Ford* exclusively via habeas corpus procedures.

## CONCLUSION

For the foregoing reasons, Mr. Purkey respectfully requests that this Court deny in its entirety Defendants' Motion to Dismiss, or in the Alternative, to Transfer. Should the Court determine that dismissal is required due to lack of ripeness or otherwise, Mr. Purkey respectfully submits that any such dismissal should be without prejudice and subject to Mr. Purkey's right to amend the Complaint to cure any pleading deficiencies the Court identifies.

Dated: March 16, 2020                    Respectfully Submitted,

                                         /s/Charles F.B. McAleer, Jr.
                                         Charles F.B. McAleer, Jr. (DC Bar #388681)
                                         Miller & Chevalier Chartered
                                         900 16th Street NW
                                         Washington, D.C. 20006
                                         Telephone: (202) 626-5963
                                         Email: cmcaleer@milchev.com

                                         /s/Brian Fleming
                                         Brian Fleming (DC Bar #974889)
                                         Miller & Chevalier Chartered
                                         900 16th Street NW
                                         Washington, D.C. 20006
                                         Telephone: (202) 626-5871
                                         Email: bfleming@milchev.com

                                         /s/Rebecca E. Woodman
                                         Rebecca E. Woodman (*pro hac vice*)
                                         Attorney at Law, L.C.
                                         1263 W. 72nd Ter.
                                         Kansas City, Missouri 64114
                                         Telephone: (785) 979-3672
                                         Email: rewlaw@outlook.com

                                         */s/*Michelle M. Law
                                         Michelle M. Law, MO Bar No. 45487
                                         (*pro hac vice* motion to be filed)
                                         Assistant Federal Public Defender
                                         Western District of Missouri
                                         901 Saint Louis Street, Suite 801
                                         Springfield, Missouri 65806
                                         Telephone: (417) 873-9022
                                         Facsimile:  (417) 873-9038
                                         Email: michelle_law@fd.org

                                         *Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, on the 16th day of March, 2020, I caused the Memorandum in

Support of Plaintiff Wesley Purkey's Opposition to Defendants' Motion to Dismiss, or in the

Alternative, to Transfer to be filed electronically with the Clerk of the Court via CM/ECF, with

all authorized parties being served electronically via CM/ECF.

<u>/s/Charles F.B. McAleer, Jr.</u>
Charles F. B. McAleer, Jr.
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5963
Email: cmcaleer@milchev.com
*Attorney for Plaintiff*