**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WESLEY I. PURKEY,                          )
                                           )
                  Plaintiff,               )
                                           )
        v.                                 )   Civil No. 19-03570 (TSC)
                                           )
WILLIAM P. BARR, et al.,                   )
                                           )
                  Defendants.              )


**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................................... iii

INTRODUCTION ..............................................................................................................................1

ARGUMENTS

I.      Purkey Fundamentally Misunderstands the Nature of a *Ford* Claim and Ignores the
        Available Federal Process for Adjudicating Such a Claim.................................................2

II.     This Court Lacks Jurisdiction Because the Case Is Either Unripe or Moot .......................6

        A.      Purkey's *Ford* Claim is Unripe or Moot................................................................7

        B.      Purkey Cannot Save His Unripe *Ford* Claim by Inventing a Pre-Claim Right
                to Discovery Under the Due Process Clause ...........................................................9

        C.      Purkey's Claims Do Not Satisfy the Requirement that the Harm be Capable
                of Repetition, Yet Avoiding Review ....................................................................11

III.    Purkey Fails to State a Claim Because Congress Requires *Ford* Challenges to be
        Brought under § 2241 .......................................................................................................12

IV.     Purkey's *Ford* Claim Fails to State a Claim for Relief Because He Has Not
        Plausibly Alleged He is Incompetent.................................................................................17

V.      If this Court Does Not Dismiss Purkey's Claims, It Should Transfer the Case to the
        Southern District of Indiana...............................................................................................19

CONCLUSION.................................................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011)..............................................................15

*Armstrong v. F.A.A.*, 515 F.3d 1294 (D.C. Cir. 2008)....................................................12

*Asante v. Azar*, __ F. Supp. 3d __, No. 19-cv-2512 (TSC), 2020 WL 248650 n.1
    (D.D.C. Jan. 16, 2020) ............................................................................................15

*Bedford v. Bobby*, 645 F.3d 372 (6th Cir. 2011)..............................................................4

*Billiot v. Epps*, No. Civ.A. S86-0549(L), 2005 WL 2877731 (S.D. Miss. Oct. 28, 2005) ....7, 8, 10

*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) ..........................15

*Bravata v. Sec. and Exch. Comm'n*, No. 14-1276 (TSC), 2015 WL 4077446
    (D.D.C. July 6, 2015).............................................................................................21

*Burton v. Stewart*, 549 U.S. 147 (2007)...........................................................................7

*Coe v. Bell*, 209 F.3d 815 (6th Cir. 2000)......................................................................19

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)..........................................15

*Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660 (D.C. Cir. 2013) ..............................15

*Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc.*, 217 F. Supp. 3d 79
    (D.D.C. 2016) .........................................................................................................21

*Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21 (D.D.C. 2014) ...............17

*Ford v. Wainwright*, 477 U.S. 399 (1986) .......................................................................2

*Hill v. McDonough*, 547 U.S. 573 (2006)..........................................................12, 13, 16

*Int'l Ass'n of Machinists & Aerospace Workers v. Nat'l Mediation Bd.*, 374 F. Supp. 2d 135
    (D.D.C. 2005) .........................................................................................................14

*Nelson v. Campbell*, 541 U.S. 637 (2004) ...............................................................12, 13

*Nichols v. Symmes*, 553 F.3d 647 (8th Cir. 2009)..........................................................15

*Panetti v. Quarterman*, 551 U.S. 930 (2007)...........................................................2, 3, 18

*Permanent Subcommittee on Investigations v. Ferrer*, 856 F.3d 1080 (D.C. Cir. 2017) ..............11

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)....................................................................................16

*Purkey v. United States*, No. 2:19-cv-00414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019) .......10

*Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79 (D.D.C. 2015) ................................................17

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) .....................................................................................16

*Schornhorst v. Anderson*, 77 F. Supp. 2d 944 (S.D. Ind. 1999) ......................................................5

*Spencer v. Kemna*, 523 U.S. 1 (1998)............................................................................................11

*\*Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974)....................................................................21

*Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998)........................................................................7

*United States v. Miller*, 594 F.3d 1240 (10th Cir. 2010) ..............................................................15

*Weinstein v. Bradford*, 423 U.S. 147 (1975).................................................................................12

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) .....................................................................................15

*Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017) .......................................................................................15

## **Statutes**

18 U.S.C. § 3596(c) ........................................................................................................................19

28 U.S.C. § 1391(e) ........................................................................................................................19

28 U.S.C. § 1404............................................................................................................1, 19, 20

28 U.S.C. § 2241......................................................................................................................1, 5, 6

28 U.S.C. § 2255(a) ...................................................................................................................14, 16

28 U.S.C. §§ 2201-2202 ...........................................................................................................15

28 U.S.C. § 1406(a) ........................................................................................................................20

42 U.S.C. § 1997e(a)........................................................................................................................16

## Rules

L.R. 40.5(b)(2) .................................................................................................................10

## Other Authorities

15 Arthur R. Miller, *Federal Practice & Procedure* § 3841 (4th ed. 2019) .................................20

**INTRODUCTION**

Purkey's *Ford* claim is unripe and cannot be filed in this Court as a direct equitable action, and Purkey fails to carry his burden to make a plausible, substantial threshold showing of incompetency. This Court should dismiss his Complaint.

Purkey acknowledges in his opposition to Defendants' motion to dismiss ("Opposition"), ECF No. 20, that a *Ford* hearing is "premature" but responds that this Court should hold his *Ford* claim open while he attempts to convince this Court to recognize a new, pre-*Ford*-claim right to discovery under the Due Process Clause. Purkey has it backwards. Defendants are entitled to presume that Purkey is competent until he makes a substantial, threshold showing to the contrary. The Due Process Clause does not entitle Purkey to pre-*Ford*-claim discovery.

Purkey is also wrong on the merits of his due process claim. Congress has provided Purkey with a robust and constitutionally adequate avenue to present his claim: 28 U.S.C. § 2241. Even Purkey acknowledges that "[t]he case law is clear that a *Ford* claim may be brought pursuant to a habeas petition," yet he once again refuses to acknowledge that he brought a § 2241 petition in the Southern District of Indiana at a time when his *Ford* claim would have been ripe and when, had he made a substantial threshold showing of incompetence, he could have sought discovery under the rules regarding habeas petitions and a stay pending litigation of his claim.

Purkey cannot rely on a novel due process theory to save his claim from mootness and implausibility. Even if he could, his claims must be brought in the Southern District of Indiana under § 2241 because success would necessarily foreclose his execution. Even if this Court disagrees, though he argues that venue is proper here, Purkey does not engage with Defendants' request to transfer this action to the Southern District of Indiana under 28 U.S.C. § 1404, and this Court should exercise its discretion to send this case where it should always have been.

1

<u>**ARGUMENT**</u>

**I.    Purkey Fundamentally Misunderstands the Nature of a *Ford* Claim and Ignores the Available Federal Process for Adjudicating Such a Claim**

Purkey's Opposition asserts that Defendants violated his due process rights by failing to provide him with expert testing and materials to support his claim of incompetence. Opp. 7-8. He also argues that there is no process available for federal prisoners to assert a *Ford* claim. Opp. 7-9. These arguments reflect a fundamental misunderstanding of the nature of a *Ford* claim, as explained by the Supreme Court. They also completely ignore the availability of a habeas petition as the procedure for bringing a *Ford* claim. As a threshold matter, therefore, the Government believes it is important to describe how a *Ford* claim actually works and explain why the habeas statute provides a constitutionally sufficient procedure through which federal prisoners may bring such a claim.

The Supreme Court has stated that the Government may presume a death-row prisoner is competent to be executed, and the Government is not constitutionally required to undertake any procedures to determine otherwise. "[I]n order to have been convicted and sentenced, [a prisoner] must have been judged competent to stand trial . . . . The [Government] therefore may properly presume that [a prisoner] remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process." *Ford v. Wainwright*, 477 U.S. 399, 425-26 (1986) (Powell, J., concurring); *see also Panetti v. Quarterman*, 551 U.S. 930, 949 (2007) (noting that Justice Powell's concurrence in *Ford* is controlling on the question of procedure).

The prisoner bears the burden to rebut the presumption of competence by making a substantial threshold showing of incompetence. Only after a prisoner makes this initial showing is he entitled to any sort of process to adjudicate his competence: "Once a prisoner seeking a stay

of execution has made a substantial threshold showing of insanity, the protection afforded by

procedural due process includes a fair hearing in accord with fundamental fairness." *Panetti*, 551

U.S. at 949 (quotations omitted).

The Supreme Court provided guidance, first in Justice Powell's concurrence in *Ford* and

later in the majority opinion in *Panetti*, about the sorts of procedures that are constitutionally

required after a prisoner makes a sufficient threshold showing. "[A] constitutionally acceptable

procedure may be far less formal than a trial." *Id.* (quotation omitted). However, a prisoner

"must be accorded an opportunity to be heard," which includes "an opportunity to submit

evidence and argument from [his] counsel, including expert psychiatric evidence that may differ

from the State's own psychiatric examination." *Id.* at 949-50 (quotations omitted). The Court

also indicated that a constitutionally acceptable procedure requires a court to transcribe its

proceedings and to keep the prisoner's counsel informed. *Id.* at 950.

Aside from those basic requirements, the Supreme Court declined to "set forth the precise

limits that due process imposes in this area" and "observed that a State should have substantial

leeway to determine what process best balances the various interests at stake once it has met the

basic requirements required by due process." *Id.* at 950 (quotations omitted). In particular, the

Court declined to "address whether other procedures, such as the opportunity for discovery or for

the cross-examination of witness, would in some cases be required under the Due Process

Clause." *Id.* at 952.

However, what is clear from *Panetti* is that no process—including information sharing or

discovery—is required unless and until a prisoner first succeeds in making a substantial

threshold showing of incompetence. *See id.* at 950 ("Petitioner was entitled to these protections

once he had made a substantial threshold showing of insanity." (quotation omitted)); *see also*

*Bedford v. Bobby*, 645 F.3d 372, 380 (6th Cir. 2011) ("*Ford* establishes that once a prisoner has made the requisite showing of incompetence, he is entitled to due process protections including a fair hearing."). The Constitution does not entitle a death-row prisoner to any sort of information or discovery from the Government to support his initial threshold showing of incompetence. Purkey provides no authority suggesting the contrary.

Purkey therefore puts the cart before the horse when he asks this Court to "make substantive rulings about the process due to Mr. Purkey, grant Mr. Purkey discovery, and based on that supplemented record, find that Mr. Purkey is entitled to a *Ford* hearing before his execution." Opp. 12. Purkey is not entitled to discovery to demonstrate he is entitled to a hearing. Instead, he must first make a substantial threshold showing of incompetence demonstrating that he is entitled to a hearing. Only after he has made such a showing will he be entitled to any particular process, including potentially—although not necessarily—discovery.[1] As one court

---

[1]Purkey's misleadingly claims that he "has been diligently seeking material relevant to his competency to pursue his *Ford* claims since they first became ripe—when the initial execution warrant was issued." Opp. 10. Purkey's execution date was set on July 25, 2019. Purkey did not informally request surveillance video from his cell until September 17. Woodman Decl. ¶ 6, ECF No. 7-2. Purkey did not submit FOIA requests for surveillance video and medical and mental health records until October 9. *Id.* ¶ 7. Purkey did not notify the BOP of his purported need for brain imaging until September 26, *id.* ¶ 11, and he did not file his ex parte motion for brain imaging until October 25, *id.*

Purkey also incorrectly asserts that "he has not stopped pursuing this information despite the expired warrant and, in turn, Defendants have not relented in refusing to accord Mr. Purkey any process whatsoever." Opp. 10. Defendants told Purkey's counsel on December 16, 2019, that they were open to an agreed schedule for expedited deadlines regarding any motions for discovery and also proposed an expedited briefing schedule for a motion to dismiss. Purkey's counsel responded that due in part to the holidays, they needed more time to consider the proposed schedule and would respond after the New Year. While this Court's intervening order for additional briefing regarding its jurisdiction to hear this claim may have influenced their decision, Purkey's counsel never followed through on responding to Defendant's proposed briefing schedule for the motion to dismiss or any motions for expedited discovery. In addition, the undersigned have been advised that BOP has not received any additional requests for information since Purkey's October 2019 FOIA request.

4

has noted, requiring a state to produce discovery prior to a threshold showing of incompetency would "turn[] *Ford* on its head" and undermine the state's goal of "go[ing] forward with punishments with deliberate speed, without undertaking (after many years of direct and collateral review of conviction and sentence) a new and prolonged court proceeding without a substantial showing of good reasons to do so." *Schornhorst v. Anderson*, 77 F. Supp. 2d 944, 955-56 (S.D. Ind. 1999).

Purkey is also mistaken when he asserts that "there is no federal process at all to allow adequate review of Mr. Purkey's *Ford* competency claim," and he compounds this mistake by misrepresenting that "Defendants have not even attempted to argue otherwise." Opp. 8. In reality, Defendants have consistently maintained since their initial filing in this case that the appropriate and available vehicle for adjudicating Purkey's *Ford* claim is a habeas petition under 28 U.S.C. § 2241. *See* Opp. to Pl.'s Mot. for a Prelim. Inj. at 9-10, ECF No. 10; *see also* Defendants' Brf. 4-5, ECF. No. 16; Mot. to Dismiss 13-16, ECF No. 18.

A *Ford* claim brought via a § 2241 petition would afford Purkey all the procedural due process *Panetti* mandates, and more. Section 2241 petitions are typically governed by the Rules Governing Section 2254 Cases in the United States District Courts. *See* Rule 1(b). Under those rules, Purkey could file a petition in an attempt to make an initial threshold showing of incompetence. Rule 2. If he were to succeed in making this initial showing, Purkey would be able to conduct discovery upon a showing of good cause. Rule 6. A district judge would then be authorized to conduct an evidentiary hearing on the merits of Purkey's claim, at which Purkey would be entitled to present his own evidence and argument. Rule 8.

The procedures governing § 2241 petitions are a robust, constitutionally acceptable method of resolving *Ford* claims by federal prisoners. These procedures are also much more

efficient than the procedures that would apply in a standard civil action, such as the one Purkey is attempting to pursue in this Court. There is no legitimate reason to deploy the full panoply of time-consuming processes under the Federal Rules of Civil Procedure to resolve the narrow question of a prisoner's competence to be executed. The procedures for resolving a § 2241 petition are a more streamlined, targeted method of resolving the issue. They are also more than constitutionally sufficient.

Purkey has previously stated in this case that "[t]he case law is clear that a *Ford* claim may be brought pursuant to a habeas petition." Purkey Brf. 7, ECF No. 14. Given this admission in a prior filing with this Court, it is quite audacious for Purkey now to contend that there is no process for him to pursue his *Ford* claim. Purkey has never explained why he chose not to bring his *Ford* claim through a habeas petition. Nor has he ever attempted to show why a habeas petition would be a constitutionally inadequate process. Instead, he deliberately ignores the existence of habeas relief and speciously contends there is no process available to him.

In short, the available, constitutional process for resolving a federal prisoner's *Ford* claim is a habeas petition filed under § 2241. Purkey inexplicably chose not to avail himself of this process. His refusal to use the available process—and his persistent refusal to say why—does not negate the fact that the process exists. Purkey's claim that there is no process for a federal prisoner to bring a *Ford* claim is meritless.

## II.     This Court Lacks Jurisdiction Because the Case Is Either Unripe or Moot

Purkey's claims are either unripe or moot because his execution cannot occur absent a change in circumstances beyond the parties' control and beyond the scope of this litigation: namely, the lifting of an injunction in the protocol litigation. Purkey's request that this Court find a new, pre-claim right to discovery under the Due Process Clause runs headlong into both *Ford*

6

and *Panetti* and cannot form the basis for this Court's jurisdiction where an unripe *Ford* claim could not.

### A.    Purkey's *Ford* Claim is Unripe or Moot

Purkey's defense of the ripeness of his *Ford* claim makes two mistakes. First, he incorrectly asserts that a *Ford* claim "is ripe when the prisoner's execution is close in time or impending," Opp. 10, ignoring that the Supreme Court has held "that the claim of a capital prisoner that he was insane and therefore could not be put to death was necessarily unripe until the State issued a warrant for his execution." *Burton v. Stewart*, 549 U.S. 147, 154-55 (2007) (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998)). The question is not whether his execution is "speculative," but whether a warrant has been issued and a date set such that evaluating his competence to be executed will not be futile or advisory.

Purkey responds that "case law establishes that a *Ford* competency claim is ripe when a prisoner's execution is close in time or impending, which includes scenarios with expired warrants." Opp. 10-11. But the case Purkey cites, *Billiot v. Epps*, No. Civ. A. S86-0549(L), 2005 WL 2877731 (S.D. Miss. Oct. 28, 2005) (unpublished memorandum opinion), predates the Supreme Court's decision in *Burton*, actually supports the Defendants' assertion of the law, and differs from this case in critical ways.

*Billiot* recognizes that a *Ford* claim is not ripe "unless an execution *date* is impending" and "any decision as to a petitioner's competency to be executed has meaning and efficacy only if made reasonably contemporaneously with the scheduled date for execution." *Id.* at *1 (emphasis supplied). By its own terms, Purkey's case supports the legal proposition that a *Ford* claim is unripe until an execution date is set. Because the Defendants have not and cannot set a date for Purkey's execution, his *Ford* claim is unripe (or moot) and this Court lacks jurisdiction.

7

Reliance on *Billiot* leads Purkey to his second error: he fails to recognize that this Court's injunction against his execution in the protocol litigation mooted his claim. In *Billiot*, the execution date passed because the court stayed the execution in order to litigate the *Ford* claim. *Id.* at *2. Under Mississippi law, however, once the federal court lifted its stay, the Mississippi Supreme Court was required to reset the execution date within 30 days. *Id.* It was "by virtue of this provision," that "petitioner's execution date is no less imminent than it would be were this court to dismiss the *Ford* claim, only to have such claim be refiled and a new execution date set and then stayed, as it necessarily will be in order that the *Ford* claim may be given due consideration." *Id.*

Here, by contrast, the order staying Purkey's execution comes from outside of and beyond this litigation, a critical difference between this case and *Billiot*. The condition precedent to Purkey's execution is not the litigation of his *Ford* claim, but the litigation surrounding the protocol, which Purkey joined through this Court's consolidation of his own civil action also challenging the protocol. *Purkey v. Barr*, No. 1:19-cv-3214 (D.D.C. Oct. 25, 2019). Unlike in *Billiot*, resolution of Purkey's competence to be executed will not lead to the lifting of the stay. There is simply a categorical difference between a stay imposed to resolve Purkey's competence to be executed—a request which he abandoned—and a stay issued because of some unrelated litigation that must be resolved prior to even schedule another date for his execution.

Purkey's failure to understand the difference between a stay to litigate a *Ford* claim and a stay issued in other litigation leads him to overemphasize the Defendants' intent to carry out his sentence. Opp. 11. While Defendants do intend to carry out Purkey's execution consistent with his death sentence, they will not do so while the execution is stayed by this Court or another court.

Purkey began this litigation by asserting that his condition cannot improve: "[t]he underlying brain damage and mental illness he has are long-standing, irreversible, and will continue to deteriorate as his dementia progresses." Compl. Ex. 1 at 13. More recently, in response to Defendants' position that his claims sound only in habeas, Purkey has emphasized what he believes to be the changeable nature of competency. Opp. 15-17; Purkey Brf. 8-9, ECF No. 14; Purkey Brf. 3, ECF No. 17.

This Court should take note of this late change in position, as it foretells what will happen if this Court permits this case to go forward while Purkey's execution is stayed in the protocol case: any decision this Court reaches on his competence will necessarily have to be revisited once that stay is lifted, which, in Purkey's words, would "waste the Court's and the parties' time." Opp. 12.

**B.      Purkey Cannot Save His Unripe *Ford* Claim by Inventing a Pre-Claim Right to Discovery Under the Due Process Clause**

Recognizing that a hearing on his *Ford* claim would be premature, Opp. 8, 12, Purkey nonetheless asks this Court to wait to hold a hearing and continue to exercise jurisdiction over what he calls a "due process claim," but what is in practice a new, previously unrecognized right to pre-*Ford*-claim discovery. As discussed at length above, Purkey has no due process entitlement to any pre-*Ford*-claim discovery, and his assertion runs headlong into the Supreme Court's articulation of what due process does and does not require. Purkey cannot rely on a non-existent right to save his unripe *Ford* claim.

Though meritless for the reasons discussed above, Purkey's discussion of the ripeness of his discovery claim still warrants brief discussion here to highlight some of his more serious errors. First, as discussed above, Purkey's argument that "there is no federal process at all to allow adequate review of Mr. Purkey's *Ford* competency claim" and that "Defendants have not

9

even attempted to argue otherwise," Opp. 8, is incorrect. Not only does § 2241 provide a constitutionally adequate remedy, but Defendants have repeatedly argued that Purkey's *Ford* claim must be brought under § 2241, Resp. to PI Mot. 9-10, ECF No. 10, Defendants' Brf. 4-5, ECF. No. 16, Mot. to Dismiss 13-16, and even Purkey admits that he could have brought his claim as a habeas petition: "The case law is clear that a *Ford* claim may be brought pursuant to a habeas petition." Purkey Brf. 7, ECF No. 14.

Second, Purkey asserts that "were it not for a stay granted in related litigation, Mr. Purkey may have been executed before his counsel had the opportunity to receive, let alone review and present, information, materials, and other evidence highly probative of his claim that he cannot be constitutionally executed given his current incompetence." Opp. 9.

In making this claim, Purkey once again refuses to acknowledge that on August 27, 2019—at a time when his *Ford* claim was ripe—he petitioned the District Court for the Southern District of Indiana for relief under § 2241. Petition for Writ of Habeas Corpus, ECF No. 1, *Purkey v. United States*, No. 2:19-cv-00414 (S.D. Ind. Aug. 27, 2019). The same day, he moved that court for a stay of execution. Mot. for Stay of Execution, ECF No. 4., *id.* He brought eight claims, but did not bring the *Ford* claim he brings now. Amended Pet., ECF No. 23, *id.* The district court ultimately dismissed those claims, concluding that he failed to comply with the procedural requirements of § 2255. *Purkey v. United States*, No. 2:19-cv-00414, 2019 WL 6170069, at *12 (S.D. Ind. Nov. 20, 2019). Had Purkey petitioned that court to review his *Ford* claim, he could have both sought his stay and discovery in that court. Instead, Purkey elected to split his claims, bringing his *Ford* claim here once this Court had stayed his execution in the protocol litigation and failing to inform this Court about his dismissed Indiana litigation. Notice of Related Cases, ECF No. 3; L.R. 40.5(b)(2); *cf.* Opp. 4 n.5.

10

Purkey's claim that he might have been executed while his *Ford* claim was pending also ignores the obvious: if and when Purkey files a petition that makes a plausible, substantial threshold showing of incompetence, and otherwise satisfies the requirements for a stay of execution, a court with jurisdiction over the claim can stay the execution for a sufficient period to resolve that claim. Purkey moved for that relief in this Court, and only withdrew that motion when he recognized that "[t]he execution warrant setting [his December 13, 2019, execution date] has now expired." Mot. to Withdraw PI Mot., ECF No. 11. As Purkey seemed to recognize at the time, this Court has the power to stay his execution but need not exercise it while the stay in the protocol litigation remains in place. What he refuses to recognize is that these same facts moot his claims in this case.

**C.      Purkey's Claims Do Not Satisfy the Requirement that the Harm be Capable of Repetition, Yet Avoiding Review**

Purkey fails to meet his burden to show that the exception to mootness for claims that are capable of repetition, yet avoiding review applies. The exception applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Sen. Permanent Subcommittee on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

This exception makes little sense in the *Ford* context. The wrong Purkey seeks to avoid is his execution while allegedly incompetent. His claim is moot or unripe not because the harm has already been completed and cannot be remedied, but because this Court has enjoined the Defendants from executing Purkey for reasons *unrelated to this litigation*. This is not a case where a wrong has been done, rendered the claim moot, and the plaintiff seeks a remedy to prevent a similar harm in the future, but rather a case where a harm has not been done in the first

11

place. It is for this reason, perhaps, that Purkey has not identified a single court that has resorted to this exception to save an otherwise moot *Ford* claim. This Court should not be the first.

Moreover, in context of a *Ford* claim, Purkey's claims do not "evade review" because, if he were to make a plausible and substantial threshold showing of incompetence, a court with jurisdiction could enjoin his execution while it resolved the merits of his claim. A claim "evade[s] review" only when "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." *Armstrong v. F.A.A.*, 515 F.3d 1294, 1296 (D.C. Cir. 2008) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Purkey's claim that he will have insufficient time to "gather information and conduct associated discovery and present his *Ford* competency claim to this Court at a *Ford* hearing," Opp. 13-14, ignores that he is not entitled to pre-*Ford*-claim discovery.

### III.    Purkey Fails to State a Claim Because Congress Requires *Ford* Challenges to be Brought under § 2241

Two Supreme Court cases should guide this Court's resolution of whether Purkey can bring his *Ford* claim outside of habeas: *Hill v. McDonough*, 547 U.S. 573 (2006), and *Nelson v. Campbell*, 541 U.S. 637 (2004). In their Motion to Dismiss, Defendants engage in a lengthy analysis of these cases to which Purkey largely fails to respond. Mot. to Dismiss 14-18. Several of his comments, however, do bear correction.

First, Purkey's sole attempt to engage with the substance of Defendants' analysis comes in a footnote. Defendants argued in their motion that "Purkey's argument misunderstands the relevant temporal considerations," noting that both *Hill* and *Nelson* focused on the immediate effect of a successful claim, rather than on whether the execution might still take place following statutory amendment. Mot. to Dismiss 17. The Defendants noted that both *Hill* and *Nelson* necessarily imply that if a successful claim would permit execution only after a statutory

amendment, that claim would effectively bar the execution and could proceed only in habeas. *See Hill*, 547 U.S. at 583; *Nelson*, 541 U.S. at 644.

Purkey responds that this "argument is misleading and inconsistent with the cases." Opp. 16 n.7. He offers this partial quotation from *Hill*: "a constitutional challenge seeking to *permanently* enjoin the use of lethal injection may amount to a challenge to the facts [sic] of the sentence itself." Opp. 16 n.7 (quoting *Hill*, 547 U.S. at 579 (quoting *Nelson*, 541 U.S. at 644) (emphasis supplied by Purkey)).

Purkey misses the Court's point. What *Nelson* was suggesting was that an injunction that barred all lethal injections in a state where the law mandated execution by lethal injunction would necessarily stop the state from executing anyone *until it changed its law*, as the full quotation makes clear:

> On the other hand, imposition of the death penalty presupposes a means of carrying it out. In a State such as Alabama, where the legislature has established lethal injection as the preferred method of execution, [citation omitted], a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact or a sentence itself. A finding of unconstitutionality would require a statutory amendment or variance, imposing significant costs on the State and the administration of its penal system. And while it makes little sense to talk of the "duration" of a death sentence, a State retains a significant interest in meting out a sentence of death in a timely fashion.

*Nelson*, 541 U.S. at 644. Because the state could still execute someone by amending its law, the hypothetical injunction would not act "permanently" in the way Purkey suggests. Nonetheless, the Court surmised, such an injunction could amount to a challenge to the fact of the sentence itself. *Id.* The Supreme Court made the same point in *Hill*, concluding that the challenge, if successful, would not necessarily bar the defendant's execution because "granting Hill's injunction would not leave the State without any other practicable, legal method of executing Hill by lethal injection." 547 U.S. at 580. Here, a successful claim would enjoin the Defendants

13

from executing Purkey until the occurrence of some condition beyond their control—namely, his return to competence.

The more reasonable interpretation of the Court's use of "permanent" is in contrast to "preliminary," meaning that a court issues the injunction only after a trial on the merits. *Int'l Ass'n of Machinists & Aerospace Workers v. Nat'l Mediation Bd.*, 374 F. Supp. 2d 135, 137 n.1 (D.D.C. 2005). Having withdrawn his motion for a preliminary injunction, Purkey here seeks a "permanent" injunction against his execution in the sense that he seeks a determination on the merits that he is incompetent to be executed *now*. *See* Compl. 57, ECF No. 1.

Second, Purkey once again retreats to a lengthy list of cases that he argues show how competency can be restored, ignoring that his own expert opined that the opposite is true of Purkey: "[t]he underlying brain damage and mental illness he has are long-standing, irreversible, and will continue to deteriorate as his dementia progresses." Compl. Ex. 1 at 13. In any event, Purkey's distinction does not help him avoid dismissal, because § 2241 is the proper vehicle for a *Ford* claim where competency could be restored. To the extent that Purkey's competence could not be restored, as his Complaint seems to allege, he challenges not the execution of his sentence, but the sentence itself. In that case, he should have filed a motion under § 2255 in the Western District of Missouri. *See* 28 U.S.C. § 2255(a).

Purkey repeatedly argues that his *Ford* claim does not challenge the validity of his sentence, and therefore need not be brought in habeas. *See, e.g.*, Opp. 14-17. Alleged impermanence, however, does not bring his claim outside of habeas. At most, it brings his claim outside of § 2255, which is the proper statute for challenges to the validity of a conviction or sentence, but places him squarely within § 2241, which is the statute under which federal prisoners may challenge the implementation or—as more typically stated—the execution of their

14

sentences. *See*, *e.g.*, *United States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010) (recognizing that § 2241 applies to prisoners who demonstrate that the "execution of his sentence violates federal law or the Constitution"); *Nichols v. Symmes*, 553 F.3d 647, 649 (8th Cir. 2009) (recognizing that § 2241 allows a prisoner in federal custody to pursue habeas relief by attacking or challenging the execution of a sentence; whereas a claim challenging the validity or legality of an underlying conviction is proper only under § 2255).

Third, Purkey asks this Court to analogize his claim to one brought under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), but his resort to *Bivens* falls short for the same reason his direct action under the Constitution does: because Congress has enacted a remedial scheme in § 2241. As the Supreme Court has recognized, the availability of habeas counsels against extending *Bivens*. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1865 (2017). Moreover, *Bivens* provides a damages remedy against officers in their personal capacities, *see Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 667 (D.C. Cir. 2013) (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)), and Purkey seeks injunctive relief against officers in their official capacities. *Bivens* adds nothing to the analysis.

Lastly, Purkey's resort to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, falls short. The Declaratory Judgment Act does not create a freestanding cause of action. *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *Asante v. Azar*, __ F. Supp. 3d __, No. 19-cv-2512 (TSC), 2020 WL 248650, at *2 n.1 (D.D.C. Jan. 16, 2020).

Moreover, the Declaratory Judgment Act cannot be used to evade congressionally mandated avenues for review. *Cf. Davis*, 716 F.3d at 666 (concluding that plaintiff could proceed under the Declaratory Judgment Act and *Bivens* because success on his claim would not "necessarily imply the invalidity of his confinement or shorten its duration" (quoting *Wilkinson*

15

*v. Dotson*, 544 U.S. 74, 82 (2005))). Nothing about *Hill* or *Nelson* suggests that the "criterion" for when a case must proceed in habeas—"whether a grant of relief to the inmate would necessarily bar the execution," *Hill*, 547 U.S. at 583—can be so easily circumvented by titling one's complaint an action for a declaratory judgment. As the Supreme Court recognized in a similar context, "[i]t would wholly frustrate explicit congressional intent to hold that respondents in the present case could evade [the requirement to exhaust state remedies] by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 490-91 (1973).

Similarly, to permit Purkey to proceed here solely because he seeks a declaratory judgment would eviscerate the complex restrictions that Congress has placed on inmate litigation. *See generally, e.g.*, 28 U.S.C. §§ 2255(a), (f), (e), (h) (placing conditions on how federal prisoners can challenge their conviction or sentence); 2253(c)(1) (prohibiting appeal of denial of § 2255 motion without permission); 1915(g) (prohibiting prisoner from proceeding in forma pauperis after "three strikes"); 42 U.S.C. § 1997e(a) (requiring exhaustion for prisoner suits about conditions); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (holding § 2241 petition can be filed only in district of confinement). To permit Purkey to bring his *Ford* claim here under the Declaratory Judgment Act would open the doors of this courthouse to every federal inmate who recasts his claim as an action for declaratory judgment against the Director of the Bureau of Prisons. That cannot be correct.

For the reasons discussed at length in the Defendants' Motion and prior briefing on this topic, Congress has made it clear that where a successful claim would necessarily bar an execution, that claim must be brought in habeas. Here, Purkey seeks relief that will necessarily bar his execution. This Court should dismiss his complaint.

16

**IV.    Purkey's *Ford* Claim Fails to State a Claim for Relief Because He Has Not Plausibly Alleged He is Incompetent**

Purkey's Opposition dedicates 13 pages to arguing that he has sufficiently pled that he is incompetent to be executed. Opp. 20-34. But his arguments fall short. As Defendants explained in their Motion to Dismiss, the documents attached to Purkey's Complaint—which this Court is entitled to consider on a motion to dismiss—demonstrate the implausibility of Purkey's claim that he is unable to understand why he was sentenced to death.

Purkey accuses Defendants of "apply[ing] the wrong standard of review" and contends that "Defendants' motion ignores the Court's obligation to assume the veracity of the Complaint's well-pled factual allegations." Opp. 20. Not so. "'[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.'" *See Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 89 (D.D.C. 2015) (Chutkan, J.) (quoting *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 26 n.4 (D.D.C. 2014)). Purkey fails to acknowledge this principle. He similarly fails to rebut Defendants' arguments showing that the documents attached to his Complaint, some of which were written by Purkey himself, show he understands the reason for his execution.

Defendants did not, as Purkey asserts, "attempt to parse separately the sources of evidence related to Mr. Purkey's incompetence and ask whether a single category of evidence individually demonstrates that Mr. Purkey is incompetent under the *Ford* standard." Opp. 22. Instead, Defendants demonstrated that "whether considered separately or together, none of [Purkey's allegations] states a plausible claim of incompetence." Mot. to Dismiss 21. Defendants addressed each of the four categories of allegations in Purkey's Complaint and explained why they all fail to support his claim of incompetence. Mot. to Dismiss 21-28. Defendants also explained how Purkey's own writings and statements show he understands the reason for his

17

execution. Mot. to Dismiss 29-31. Purkey cannot propel his incompetence claim into the realm of plausibility merely by arguing that his allegations should be considered together.

Purkey continues to rely on *Panetti* to support his claim, but he fails to address Defendants' explanation of why this reliance is misplaced. Opp. 23-24, 28-29. As Defendants explained, the key difference between the prisoner in *Panetti* and Purkey is that the prisoner in *Panetti* stated he believed the state's reason for executing him was a sham. Mot. to Dismiss 29 (quoting *Panetti*, 551 U.S. at 954-55). By contrast, Purkey never said he thinks the Government's reason for executing him is a sham. Instead, Purkey told Dr. Agharkar that he "accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11. Accepting the reason for his execution is the opposite of believing it is a sham. It is true that Purkey also claims to believe "he was given a date for execution unfairly and for reverse discrimination." Compl. Ex. 1 at 11. But this belief does not prevent him from understanding why he was sentenced to death.

Purkey's attempt to compare himself to Guy LeGrande and Abdul Awkal, who were found incompetent to be executed, is unavailing. Purkey does not profess to believe that he will be pardoned, as did LeGrande.[2] Nor do his allegations resemble the condition of Awkal, who suffered from schizoaffective disorder, depressive type, and "stated on several occasions his belief either that his sentence had been commuted by President Bush or that his appeals would have been successful, but that the CIA want[ed] him to die because he knows too much or because he went over the head of the Agency in discussing his plans with either President Bush or the Kerry/Edwards campaign." *See* Ex. 1 (Mem. of Op. and Order) at 9, *In re Ohio Execution*

---

[2]The opinion Purkey cites from LeGrande's proceedings does not appear to be readily accessible on an electronic database.

18

*Protocol Litig*., No. 2:11-cv-01016-EAS-MRM (S.D. Ohio Apr. 30, 2018), ECF No. 1574-1. In contrast, Purkey plausibly alleges, at most, that he has a mistaken understanding about why the Government scheduled his execution date.

Finally, the federal death penalty statute does not, as Purkey seems to suggest, require a prisoner to be able to communicate with counsel to be competent to be executed. Purkey acknowledges that courts have held the Eighth Amendment does not require a prisoner to be able to assist his counsel to be competent to be executed, Opp. 32, and he cites no authority to the contrary. He seems to suggest, though, that because "no court has interpreted the meaning of the governing federal statute regarding *Ford* claims," and the ABA and some states require the prisoner to be able to assist his counsel, that the federal death penalty statute might include such a requirement. Opp. 32.

The problem with Purkey's argument is that on its face the federal death penalty statute includes no such requirement. The statute prohibits executing "a person who is mentally retarded" or "a person who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person." 18 U.S.C. § 3596(c). The statute says nothing about communicating with counsel. Furthermore, as the Sixth Circuit pointed out, it is not clear "how a prisoner could assist his counsel, a mental health professional, or the trial judge in deciding on his competency when the prisoner's very competency is the matter at issue." *Coe v. Bell*, 209 F.3d 815, 826 (6th Cir. 2000).

## V.  If this Court Does Not Dismiss Purkey's Claims, It Should Transfer the Case to the Southern District of Indiana

Purkey fails to address Defendant's explanation of why this case should be transferred to the Southern District of Indiana under 28 U.S.C. § 1404(a). Instead, he blithely contends that "venue is proper in this District under 28 U.S.C. § 1391(e)." Opp. 34. To support this argument,

Purkey summarily asserts that three "key witnesses relevant to Mr. Purkey's competency determination reside in close proximity to the District." Opp. 35. As Defendants pointed out, two of these witnesses have already traveled to Indiana to visit Purkey over two dozen times each, and the third witness has traveled once. Mot. to Dismiss 37. Purkey does not attempt to explain how any of these witnesses would be inconvenienced by testifying in Indiana.

In any event, Purkey's argument that venue is proper in this district is irrelevant. Defendants have never claimed that, as currently pled, venue is improper here. Rather, Defendants contend that the case should be transferred even though venue is proper here. *Compare* 28 U.S.C. § 1404(a) (authorizing transfer "[f]or the convenience of parties and witnesses, in the interest of justice," even when a case is filed in the correct venue) *with* § 1406(a) (authorizing transfer "in the interest of justice" when a case is filed in the wrong venue); *see also* 15 Arthur R. Miller, *Federal Practice & Procedure* § 3841 (4th ed. 2019) ("Under Section 1404(a), both the transferor and the transferee must be proper venues under the applicable federal venue statutes. This is distinguished from transfer under 28 U.S.C.A. § 1406(a), which applies when the transferor court is an improper venue, and permits that court to avoid dismissal by transferring the action to a proper venue in the federal judicial system.")

Defendants have cited controlling Circuit law identifying the factors a court should consider when deciding whether to transfer a prisoner's lawsuit and explained why, in this case, each of these factors supports transfer to the Southern District of Indiana. Mot. to Dismiss. 34-39. Purkey does not acknowledge either the controlling law or the relevant factors (aside from his brief mention of witness locations, addressed above) or offer any explanation as to why this case should not be transferred pursuant to the factors this Court must consider. In particular, Purkey fails to address the fact that transporting Purkey from Terre Haute to D.C. for a hearing will cost

20

approximately $49,000, which does not include the expense of transporting him back to Terre Haute. Mot. to Dismiss 35-36. Purkey ignores the D.C. Circuit's direction that "[t]he burdens and dangers involved in transporting a prisoner across long distances are . . . a significant inconvenience to the Bureau of Prisons and will normally justify transfer." *Starnes v. McGuire*, 512 F.2d 918, 931 (D.C. Cir. 1974).

Because he fails entirely to address Defendants' transfer argument, this Court should treat the argument as conceded. *See Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc.*, 217 F. Supp. 3d 79, 82 (D.D.C. 2016) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded." (quotation omitted)); *Bravata v. Sec. and Exch. Comm'n*, No. 14-1276 (TSC), 2015 WL 4077446, at *4 (D.D.C. July 6, 2015) (Chutkan, J.) (treating as conceded an argument a pro se plaintiff did not address in opposition to a motion to dismiss). Treating an unaddressed argument as conceded is particularly appropriate in this case, where Purkey is represented by numerous sophisticated lawyers. Even if the issue is not conceded, this Court should note that Purkey evidently has no basis for opposing transfer under § 1404(a).

Purkey asserts without citing anything that "[t]ransfer would only be proper if the Court finds that Mr. Purkey is limited to seeking redress under Ford exclusively via habeas corpus procedures." Opp. 35. This is an incorrect statement of the law. Whether a complaint sounds in habeas is only one of the factors to consider when deciding whether to transfer a prisoner's lawsuit under § 1404(a). *See Starnes*, 512 F.2d at 931-32. Even if this Court determines that Purkey's *Ford* claim does not sound in habeas, it should still transfer the case because all the other relevant factors support doing so.

21

## CONCLUSION

For the foregoing reasons and as further explained in Defendants' Motion to Dismiss, this Court should dismiss Purkey's claims in their entirety. In the alternative, any surviving claims should be transferred to the Southern District of Indiana.

Dated: March 30, 2020                                Respectfully submitted,

                                                     TIMOTHY J. SHEA
                                                     United States Attorney

                                     By      /s/ *J. Benton Hurst*

                                                     BRIAN P. CASEY
                                                     KATHLEEN D. MAHONEY
                                                     J. BENTON HURST (D.D.C. Bar #MO009)
                                                     DAVID WAGNER
                                                     Special Assistant United States Attorneys

                                                     Charles Evans Whittaker Courthouse
                                                     400 East 9th Street, Room 5510
                                                     Kansas City, Missouri 64106
                                                     Telephone: (816) 426-3122
                                                     Fax: (816) 426-5186
                                                     E-mail: Brian.Casey@usdoj.gov
                                                             Kate.Mahoney@usdoj.gov
                                                             John.Hurst@usdoj.gov
                                                             David.Wagner@usdoj.gov

                                                      *Attorneys for Defendants*

22