**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WESLEY I. PURKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 19-03570 (TSC) |
| | ) |
| WILLIAM P. BARR, et al, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
<u>RENEWED MOTION FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................1

BACKGROUND .......................................................................................................................2

LEGAL STANDARD...............................................................................................................6

ARGUMENT.............................................................................................................................7

I.      Purkey is unlikely to succeed on the merits of his claims. ..................................................7

        A.      Purkey's *Ford* claims are core habeas claims that may not be brought in
                this Court and must be brought in the Southern District of Indiana. ......................7

        B.      Congress's enactment of § 2241 precludes any implied equitable remedy
                here.........................................................................................................................8

        C.      Purkey ignores *Nelson* and *Hill*'s application of the preclusion rule in
                death penalty challenges. .......................................................................................10

        D.      Purkey applies the wrong temporal framework. ......................................................11

        E.      Purkey's proposed coexistence of habeas and implied equitable relief
                would undermine congressional limits on post-conviction review........................14

        F.      Purkey's complaint cannot be construed as a habeas petition. ..............................16

        G.      Purkey's *Ford* claim fails establish a substantial threshold showing of
                incompetency. ........................................................................................................18

        H.      Purkey is not entitled to information, discovery, or a hearing until he
                establishes a substantial threshold showing of incompetency, and a habeas
                petition affords him an available and adequate procedure for resolving his
                *Ford* claim.............................................................................................................24

II.     Because Purkey is unlikely to succeed on the merits of his claims, this Court need
        not consider the remaining factors in denying his motion for a preliminary
        injunction. ...........................................................................................................................27

III.    Purkey is not entitled to discovery at this time................................................................29

CONCLUSION.......................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014)......................................................7, 16, 28

*Armstrong Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ........................................8

*Atkins v. Virginia*, 536 U.S. 304 (2002)...................................................................3, 17

*Bedford v. Bobby*, 645 F.3d 372 (6th Cir. 2011)............................................................25

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ...........................................................28, 29

*Calderon v. Thompson*, 523 U.S. 538 (1998) ...........................................................28, 29

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288 (D.C. Cir. 2009) .......................6

*Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660 (D.C. Cir. 2013)..............................10

*Day v. Trump*, 860 F.3d 686 (D.C. Cir. 2017)..........................................................16, 17

*EC Term of Years Trust v. United States*, 550 U.S. 429 (2007) .......................................8

*\*Ford v. Wainwright*, 477 U.S. 399 (1986) ........................................................1, 24, 26

*Greater New Orleans Fair Hous. Action Ctr. v. United States Dep't of Hous. & Urban Dev.*,
639 F.3d 1078 (D.C. Cir. 2011)......................................................................27

*\*Hill v. McDonough*, 547 U.S. 573 (2006)............................................7, 9, 11, 12, 28

*Hinck v. United States*, 550 U.S. 501 (2007) ................................................................8

*In re: Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020)............5

*\*Madison v. Alabama*, 586 U.S. __, 139 S. Ct. 718 (2019) .............................18, 20, 21

*Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (TSC),
2019 WL 6691814 (D.D.C. Nov. 20, 2019) ........................................................4

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)................................................................6

*McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809 (10th Cir. 1997)...............................16

*Muhammad v. Close*, 540 U.S. 749 (2004)...................................................................8

*Munaf v. Geren*, 553 U.S. 674 (2008)..................................................................................6, 7

*\*Nelson v. Campbell*, 541 U.S. 637 (2004) .....................................7, 8, 9, 10, 11, 12, 16

*Nichols v. Symmes*, 553 F.3d 647 (8th Cir. 2009).........................................................14

*Nken v. Holder*, 556 U.S. 418 (2009) ..............................................................................28

*\*Panetti v. Quarterman*, 551 U.S. 930 (2007)................................................18, 20, 21, 24, 25, 26

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)....................................................................8

*Privacy Info. Ctr. V. U.S. Dep't of Commerce*, 928 F.3d 95 (D.C. Cir. 2019)..........................7, 28

*Purkey v. United States*, 729 F.3d 860 (8th Cir. 2013)..................................................2

*Purkey v. United States*, No. 19-cv-414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019) ..........4, 17

*\*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ...............................................................16, 17

*Schornhorst v. Anderson*, 77 F. Supp. 2d 944 (S.D. Ind. 1999) ....................................26

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) ...................................................................8

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ............................................8

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011).......................................................6

*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005)..............................16

*Stanley v. Davis*, 2015 WL 435077 (N.D. Cal. Feb. 2, 2015) ......................................15

*Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235 (D.C. Cir. 2004) ............................16, 17

*United States v. Miller*, 594 F.3d 1240 (10th Cir. 2010) ..............................................13

*United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005)..................................................2

*Wales v. Whitney*, 114 U.S. 564 (1885)..........................................................................17

*Ward v. Hutchinson*, 558 S.W.3d 856 (Ark. 2018)........................................................15

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) ................................................10, 17

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)..............................................6

## **Statutes**

18 U.S.C. § 3596.................................................................................................................2

28 U.S.C. § 1404.................................................................................................................5

28 U.S.C. § 2241............................................................................2, 3, 16, 22, 24, 26

28 U.S.C. § 2242...............................................................................................................18

28 U.S.C. § 2254...............................................................................................................15

28 U.S.C. § 2255............................................................................................................2, 4

42 U.S.C. § 1983.................................................................................................................8

**INTRODUCTION**

Purkey was sentenced to death in 2003, and his appellate and post-conviction remedies were long ago exhausted. On June 15, 2020, his execution was scheduled for July 15. One week later, Purkey filed a renewed motion for a preliminary injunction ("P.I. Mot.") seeking to enjoin his execution. Purkey's renewed preliminary injunction motion is the third motion he has filed seeking to prevent his July 15 execution, and the second such motion in this Court. This Court should deny it. Purkey cannot pursue his claims in this Court, and even if he could, they are unlikely to succeed.

As an initial matter, this Court lacks authority to adjudicate Purkey's claims because Purkey's challenge to his competency to be executed is a core habeas claim that must be filed in the Southern District of Indiana. Purkey is seeking to stop his execution, and the Supreme Court has held that such relief can only be obtained through a habeas petition, which may only be filed in a prisoner's district of confinement. The parties have agreed that this is a significant threshold issue in the case, and this Court should resolve it now. It would be inappropriate for this Court to grant relief, even preliminary relief, before determining that it has the power to hear this case.

Even if this Court had authority to hear Purkey's claims, they are unlikely to succeed. First, Purkey is unlikely to succeed in showing that he is incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986). At most, he will be able to show that he does not understand the reason for scheduling his execution date. He is currently challenging the basis for scheduling his execution in a civil rights lawsuit he initiated pro se in the Southern District of Indiana. While Purkey may contest why his execution was scheduled, he will not be able to show that he is unable to rationally understand the reason for his execution. Indeed, documents attached to his Complaint demonstrate that he understands the reason for his execution.

-1-

Second, Purkey is unlikely to succeed on his due process claim. He claims that he is entitled to discovery and other process to support his *Ford* claim, but the Supreme Court has held that no process is required unless and until a prisoner makes a substantial threshold showing of incompetency, which Purkey has failed to do. His complaint that there is no available procedure for him to assert a *Ford* claim is simply wrong, because as Defendants have explained from the outset of this litigation, the appropriate and available process is a habeas petition under 28 U.S.C. § 2241. The fact that Purkey refuses to avail himself of that procedure does not mean it is unavailable.

Purkey brought his claims in the wrong court, and he is unlikely to succeed in any event. This Court should deny his renewed preliminary injunction motion.

## BACKGROUND

Purkey is currently confined in the United States Penitentiary in Terre Haute, Indiana, awaiting execution. Compl. ¶ 1, ECF No. 1.

In 2003, a jury in the Western District of Missouri convicted Purkey for his 1998 interstate kidnapping, rape, and murder of 16-year-old Jennifer Long. Special Verdict Form, *United States v. Purkey*, No. 01-CR-00308-FJG (W.D. Mo. Nov. 19, 2003), ECF No. 487; *see also United States v. Purkey*, 428 F.3d 738, 744 (8th Cir. 2005). The Eighth Circuit affirmed Purkey's conviction and sentence on direct appeal. *Purkey*, 428 F.3d at 764. He exhausted his post-conviction remedies in 2014, after the Eighth Circuit affirmed the denial of his motion under 28 U.S.C. § 2255, and the Supreme Court denied his petition for certiorari. *Purkey v. United States*, 729 F.3d 860 (8th Cir. 2013), *cert. denied*, 135 S. Ct. 355 (2014).

On July 25, 2019, the United States Department of Justice scheduled Purkey's execution for December 13, 2019. Compl. ¶ 1, ECF No. 1; *see also* 18 U.S.C. § 3596(a).

-2-

On August 27, 2019, Purkey filed a petition in the Southern District of Indiana under 28 U.S.C. § 2241 raising eight grounds for relief, including contentions that his trial counsel ineffectively failed to investigate mitigation evidence related to his mental health and that his death sentence violated *Atkins v. Virginia*, 536 U.S. 304 (2002). Pet. for Writ of Habeas Corpus, *Purkey v. United States*, No. 19-CV-00414 (S.D. Ind. Aug. 27, 2019), ECF No. 1. Though he included an *Atkins* claim challenging the imposition of his death sentence based on his alleged incompetency when he committed the offense, *see id*. at 192-200, Purkey did not include a *Ford* claim challenging his present competency to be executed.

During the course of that § 2241 litigation, however, Purkey's counsel informed the Southern District of Indiana that they were "diligently preparing a petition that Mr. Purkey is incompetent to be executed, a claim that did not become ripe until his execution date was set and has required additional investigation and updated mental health evaluations and testing." *See* Ex. 28 to Woodman Decl. at 5, ECF No. 7-30. In the § 2241 litigation, Purkey's counsel sought ex parte an order directing that Purkey undergo certain brain imaging tests that "will also bear on the question of whether Mr. Purkey is competent to be executed, an issue that is ripe in his case." Ex. 20 to Woodman Decl. at 1, ECF No. 7-22; Compl. ¶ 6. According to Purkey's counsel, that ex parte motion was denied by the Southern District of Indiana because Purkey did not bring his *Ford* claim along with his then-pending § 2241 petition. Woodman Decl. ¶ 18, ECF No. 23-6.

Also during the pendency of that § 2241 litigation, Purkey filed an action in this Court challenging the Government's lethal injection protocol. Complaint, *Purkey v. Barr*, No. 19-cv-03214 (D.D.C. Oct. 25, 2019), ECF No. 1. That suit was consolidated with other similar challenges. *See In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C.).

On November 20, 2019, the Southern District of Indiana found that none of Purkey's claims satisfied the saving clause of 28 U.S.C. § 2255(e) and accordingly denied Purkey's § 2241 petition with prejudice. *Purkey v. United States*, No. 19-cv-414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019). The court also denied Purkey's motion for a stay of his execution. *Id.* Purkey appealed the denial of three of those claims to the Seventh Circuit. *See Purkey v. United States*, No. 19-3318 (7th Cir.).

Also on November 20, 2019, this Court stayed the executions of Purkey and other federal prisoners pending further litigation concerning the Government's execution protocol. *In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (TSC), 2019 WL 6691814, at *8 (D.D.C. Nov. 20, 2019).

Six days after the Southern District of Indiana denied his § 2241 petition, on November 26, 2019, Purkey filed his civil complaint in this Court raising the *Ford* claim that he omitted from his § 2241 petition in the Southern District of Indiana. Compl., ECF No. 1. Purkey's complaint pleads two claims. First, Purkey alleges that carrying out his execution would violate the Eighth Amendment because he is incompetent. Compl. ¶¶ 109-14. Second, Purkey alleges that executing him without first providing a hearing to determine his competency would violate the Due Process Clause of the Fifth Amendment and the Eighth Amendment. Compl. ¶¶ 116-21.

On December 4, 2019, Purkey moved this Court to preliminarily enjoin his execution, despite the fact that this Court had already stayed his execution in the protocol litigation. Plaintiff's Mot. for a Prelim. Inj., ECF No. 7. In addition to an injunction, Purkey's motion sought expedited discovery. Memo. in Support of Mot. for a Prelim. Inj. at 22-23, ECF No. 7-1. Defendants responded that Purkey could not raise his *Ford* claim in the District of Columbia

because jurisdiction for that claim lies only in the Southern District of Indiana. Defendants' Opp., ECF No. 10.

This Court granted Purkey's subsequent motion to withdraw his preliminary injunction motion, but ordered him to answer Defendants' challenge to this Court's jurisdiction over his *Ford* claim. Minute Order (Dec. 31, 2019). Purkey's counsel filed a response on January 14, 2020. ECF No. 14. Both Defendants and Purkey filed additional briefing on the topic. ECF Nos. 16, 17.

On February 24, 2020, Defendants filed a motion to dismiss, or in the alternative, to transfer. Mot. to Dismiss, ECF No. 18. Defendants renewed their argument that Purkey's claims are core habeas claims that must be brought through a habeas petition in his district of confinement. *Id.* at 12-21. Defendants also argued that Purkey's *Ford* and due process claims fail to state claims for relief, because Purkey has not plausibly alleged he is incompetent and a competency hearing is not required unless and until a prisoner makes a substantial threshold showing of incompetency. *Id.* at 21-32. Finally, Defendants argued that if this Court does not dismiss Purkey's claims, it should transfer the case to the Southern District of Indiana under 28 U.S.C. § 1404(a). *Id.* at 33-39. Defendants' motion to dismiss remains pending.

On April 7, 2020, the D.C. Circuit vacated this Court's preliminary injunction in the protocol litigation. *See In re: Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020) (per curiam). The D.C. Circuit's mandate lifting the preliminary injunction issued on June 12, 2020. The Supreme Court has denied an application for a stay of the mandate and denied a petition for certiorari. *Bourgeois v. Barr*, No. 19-1348 (19A1050) (U.S. June 29, 2020).

On June 15, 2020, the Director of the Federal Bureau of Prisons, at the Attorney General's direction, scheduled Purkey's execution for July 15, 2020. Defendants' Notice, ECF No. 22.

The Seventh Circuit heard oral argument in Purkey's appeal from the denial of his § 2241 petition on June 16, 2020. On June 17, Purkey moved in the Seventh Circuit for a stay of execution. Mot. to Stay Execution, *Purkey v. Warden*, No. 19-3318 (7th Cir. June 17, 2020), ECF No. 33. That motion remains pending.

On June 19, 2020, four of the plaintiffs in the protocol litigation, including Purkey, moved this Court for a preliminary injunction staying their executions. Plaintiffs' Mot. for a Prelim. Inj., *In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-00145 (D.D.C. June 19, 2020), ECF No. 102. That motion remains pending.

On June 23, 2020, Purkey filed the present renewed motion for a preliminary injunction in this case. ECF No. 23.

### LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted). It is "never awarded as of right," *id.* at 690, and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *accord Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). A movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).

The "most important factor" is whether a movant has "established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Where, as here, there are serious questions as to this Court's power to hear the case, it is "more *unlikely*" that the plaintiff can establish a "likelihood of success on the merits." *Munaf*, 553 U.S. at 690. As discussed below, Purkey fails to make the requisite showing.

## ARGUMENT

I.      **Purkey is unlikely to succeed on the merits of his claims.**

      A.      **Purkey's *Ford* claims are core habeas claims that may not be brought in this Court and must be brought in the Southern District of Indiana.**

Purkey cannot show a likelihood of success on the merits because this Court lacks authority to grant him the relief he seeks. Though Purkey previously agreed that the issues and arguments surrounding this Court's jurisdiction are "significant threshold issues for this case," Joint Mot. at 1, ECF No. 15, he devotes only one paragraph of text and one footnote to these issues in his motion for a preliminary injunction, P.I. Mot. at 7 n.2, 27-28, ECF No. 23-1, and fails to even cite, much less discuss, either of the controlling Supreme Court decisions on this question, *Hill v. McDonough*, 547 U.S. 573, 583 (2006), or *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).

In their motion to dismiss, Defendants argued that Purkey failed to state a claim because he must bring his claim in habeas and he must bring any habeas claim in the Southern District of Indiana. Mot. to Dismiss at 12-21, ECF No. 18. Because these arguments concern statutory limits on this Court's power to grant any relief at all, it should resolve them now, in the Defendants' favor, deny Purkey's motion for preliminary injunction, and dismiss his complaint. *Cf. Elec. Privacy Info. Ctr. V. U.S. Dep't of Commerce*, 928 F.3d 95, 104 (D.C. Cir. 2019)

(noting that party seeking preliminary injunction must also make showing of substantial likelihood of success on question of jurisdiction).

###### B.    Congress's enactment of § 2241 precludes any implied equitable remedy here.

Congress may limit a court's power to provide equitable relief, even for violations of constitutional rights. "The power of federal courts in equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). The principle is "well-established" that, "in most contexts, 'a precisely drawn, detailed statute pre-empts more general remedies.'" *Hinck v. United States*, 550 U.S. 501, 506 (2007) (quoting *EC Term of Years Trust v. United States*, 550 U.S. 429, 433 (2007)). "Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).

Relying on similar principles, the Supreme Court has held that the federal habeas statute precludes resort to more general causes of action. For example, an action under 42 U.S.C. § 1983 "must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence." *Nelson*, 541 U.S. at 643 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)); *accord Muhammad v. Close*, 540 U.S. 749, 750-51 (2004). "It would wholly frustrate congressional intent," the Court has held, to permit prisoners to evade the habeas statute's procedural requirements "by the simple expedient of putting a different label on their pleadings." *Preiser*, 411 U.S. at 489. "By contrast, constitutional claims that merely challenge the conditions of a [state] prisoner's confinement, whether the inmate seeks monetary or

-8-

injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance." *Nelson*, 541 U.S. at 643.

*Nelson* recognizes that the distinction between challenges to the "fact of [a] conviction or the duration of [a] sentence" and challenges to "the conditions of a prisoner's confinement" does not translate perfectly to the death penalty. *Id.* at 644. Instead, in death penalty litigation, the "criterion" is "whether a grant of relief to the inmate would necessarily bar the execution." *Hill*, 547 U.S. at 583. If so, that claim must be brought in habeas. *See id.* at 580-83; *Nelson*, 541 U.S. at 643-44.

For example, *Nelson* concludes that "[a] suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity' of the sentence itself—by simply altering its method of execution, the State can go forward with the sentence." 541 U.S. at 644. Likewise, *Hill* explains *Nelson*'s holding by concluding that the claim in *Nelson* "did not challenge an execution procedure required by law, so granting relief would not imply the unlawfulness of the lethal injection sentence." 547 U.S. at 580. *Hill* ultimately reaches the same conclusion: the plaintiff could sue under § 1983 because his "action if successful would not necessarily prevent the State from executing him by lethal injection." *Id.* at 580-81 (noting that the prisoner alleged that the State could avoid unnecessary pain "while still being able to enforce the sentence ordering a lethal injection").

Unlike the prisoners in *Nelson* and *Hill*, Purkey asks this Court to stop the Defendants from executing him, and therefore he must bring his claim in habeas. Purkey's *Ford* claim would, if successful, "necessarily bar [his] execution." *Hill*, 547 U.S. at 583. This Court need look no further than Purkey's prayer for relief, which asks this Court to "[e]nter an injunction preventing his execution during any period of incompetency, and lasting until such time as his

competency is restored." Compl. at 57, ECF No. 1. He asks this Court to declare that "executing him in his present condition violates his rights as guaranteed by the Eighth Amendment to the United States Constitution," Compl. at 57, ECF No. 1, but fails to acknowledge that "a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence." *Webster v. Daniels*, 784 F.3d 1123, 1139 (7th Cir. 2015) (en banc). Unlike the prisoners in *Nelson* and *Hill*, Purkey does not challenge the means of his execution, but the Government's ability to execute him at all. Because Congress has provided habeas as the exclusive cause of action for Purkey's claim, he has failed to show a likelihood of success on his claim in this Court.

### C. Purkey ignores *Nelson* and *Hill*'s application of the preclusion rule in death penalty challenges.

In his prior briefing on this point, Purkey failed to recognize that *Nelson* and *Hill* have changed the preclusion analysis in death penalty cases. Brief at 7-9, ECF No. 14; Reply Brief at 2, ECF No. 17. Purkey described the test as one of whether the claim will "*necessarily* imply the invalidity of confinement or shorten its duration" Brief at 7, ECF No. 14, which is the test courts have applied outside of the death penalty realm. *See, e.g.*, *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 665 (D.C. Cir. 2013). Having stated that test, Purkey asserted that he is not "seeking to invalidate or rescind his sentence" or to "reduce the duration of his confinement," and therefore his claim is not precluded by habeas. Brief at 7, ECF No. 14; *see also* Opp. at 15-16, ECF No. 20.

But Purkey misstated the proper test for whether a death penalty challenge must be brought in habeas. *Nelson* states that, when considering the preclusive effect of habeas on challenges to a death sentence, "[n]either the 'conditions' nor the 'fact or duration' label is particularly apt" and that it "makes little sense to talk of the 'duration' of a death sentence." 541

-10-

U.S. at 644. Instead, the Supreme Court instructs that in death penalty challenges the proper

"criterion" is "whether a grant of relief to the inmate would necessarily bar the execution."

*Hill*, 547 U.S. at 583. When *Nelson* and *Hill* discuss a challenge to the "fact of a conviction" or

the "duration of a sentence" that must be brought in habeas, they consider not whether the

prisoner is seeking to "invalidate or rescind his sentence," but whether success in his suit will bar

the execution. *Hill*, 547 U.S. at 583; *see Nelson*, 541 U.S. at 645-47. As discussed above, if

successful, Purkey's suit will necessarily bar his execution and therefore must be brought under

§ 2241.

> **D.      Purkey applies the wrong temporal framework.**

Purkey has also suggested that his claim lies outside of habeas because, though he

certainly cannot be executed *now*, he may be competent to be executed *someday*. *See* Brief at 7-

9, ECF No. 14; Reply Brief at 2-3, ECF No. 17; Opp. at 15-17, ECF No. 20; *see* P.I. Mot. at 27.

Purkey's argument misunderstands the relevant temporal considerations. The Supreme Court

reviews the exclusivity of habeas based on what a successful claim would require *today*. For

example, in *Hill* the Court held that the claim could proceed under § 1983 because, "*at this stage*

*of the litigation*, the injunction Hill seeks would not necessarily foreclose the State from

implementing the lethal injection sentence *under present law*." 547 U.S. at 583 (emphasis

supplied). Likewise, in *Nelson* the Court asked whether enjoining the use of the lethal injection

would "require statutory amendment or variance," such that the state could not "met[e] out a

sentence of death in a timely fashion." 541 U.S. at 644. The necessary implication is that where a

successful claim would permit execution only after the time and expense of statutory

amendment, it would effectively bar the execution and could proceed only in habeas. In the same

way, where a successful claim would bar the execution until the occurrence of a future condition

that might never occur at all—that is, until such time as Purkey might be restored to competency—the claim would effectively bar the execution and can proceed only in habeas.

In a footnote in his opposition to the motion to dismiss, Purkey responded that the Defendants' "argument is misleading and inconsistent with the cases." Opp. 16 n.7, ECF No. 20. He offers this partial quotation from *Hill*: "a constitutional challenge seeking to *permanently* enjoin the use of lethal injection may amount to a challenge to the facts [sic] of the sentence itself." Opp. 16 n.7, ECF No. 20 (quoting *Hill*, 547 U.S. at 579 (quoting *Nelson*, 541 U.S. at 644) (emphasis supplied by Purkey)).

Purkey misses the Court's point, as the full quotation makes clear. *Nelson* concludes that an injunction that barred all lethal injections in a state where the law mandated execution by lethal injunction would necessarily stop the state from executing anyone *until it changed its law*:

> On the other hand, imposition of the death penalty presupposes a means of carrying it out. In a State such as Alabama, where the legislature has established lethal injection as the preferred method of execution, [citation omitted], a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact or a sentence itself. A finding of unconstitutionality would require a statutory amendment or variance, imposing significant costs on the State and the administration of its penal system. And while it makes little sense to talk of the "duration" of a death sentence, a State retains a significant interest in meting out a sentence of death in a timely fashion.

*Nelson*, 541 U.S. at 644. Because the state could still execute someone by amending its law, the hypothetical injunction would not act "permanently" in the way Purkey suggests. Nonetheless, the Court surmised, such an injunction could amount to a challenge to the fact of the sentence itself. *Id.* The Supreme Court made the same point in *Hill*, concluding that the challenge, if successful, would not necessarily bar the defendant's execution because "granting Hill's injunction would not leave the State without any other practicable, legal method of executing Hill by lethal injection." 547 U.S. at 580. The question is not whether success on the claim

-12-

would necessarily bar execution forever; the question is whether it would necessarily bar execution now.

Moreover, Purkey continues to ignore that his own expert opined that Purkey's condition is irreversible: "[t]he underlying brain damage and mental illness he has are long-standing, irreversible, and will continue to deteriorate as his dementia progresses." Compl. Ex. 1 at 13, ECF No. 1-1. Another of Purkey's experts asserts that Purkey's "intellectual deficits, paranoia, and delusional beliefs, and the course of his progressive deterioration are consistent with the diagnosis of dementia," and that he needs medical records to determine "the longitudinal course of illness with dementia, which, by definition, involves the progressive deterioration in memory and cognitive functions often with real life correlates in compromised level of function." Hyde Decl. ¶¶ 11, 14, ECF No. 23-4; *see also id.* ¶ 14 ("Dr. Agharkar concluded that underlying brain damage and mental illness are long-standing problems and will continue to deteriorate as Mr. Purkey's dementia progresses."). Despite his assertions in prior briefing, Purkey cites no facts concerning his own diagnosis that would permit this Court to conclude that he may be restored to competency.

Furthermore, even if this Court accepts Purkey's assertion, his distinction does not show likelihood of success on the merits because § 2241 is the proper vehicle for a *Ford* claim where competency could be restored. At most, Purkey's claimed impermanence of his condition brings his claim outside of § 2255, which is the proper statute for challenges to the validity of a conviction or sentence, and places him squarely within § 2241, which is the statute under which federal prisoners may challenge the implementation or—as more typically stated—the execution of their sentences. *See, e.g.*, *United States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010) (recognizing that § 2241 applies to prisoners who demonstrate that the "execution of his sentence

-13-

violates federal law or the Constitution"); *Nichols v. Symmes*, 553 F.3d 647, 649 (8th Cir. 2009) (recognizing that § 2241 allows a prisoner in federal custody to pursue habeas relief by attacking or challenging the execution of a sentence; whereas a claim challenging the validity or legality of an underlying conviction is proper only under § 2255).

Purkey's renewed motion for a preliminary injunction asserts that "Mr. Purkey's *Ford* claim does not challenge his underlying conviction or sentence and is therefore not 'core' habeas and need not be brought exclusively through habeas" and that Defendants' "relevant briefings continue to provide no authority for a contrary holding and in fact continues [sic] to ignore the core habeas analysis." P.I. Mot. at 27. He further asserts that the Defendants have "never addressed the fact that Mr. Purkey's *Ford* claim is definitively *not* a challenge to his sentence or conviction and, thus, not core habeas." P.I. Mot. at 7 n.2.

To the contrary, Defendants have shown that Purkey's claims lie within the core of habeas in every substantive filing since this case began. Response at 9-13, ECF No. 10; Brief at 2-5, ECF No. 14; Mot. at 12-21, ECF No. 18; Reply at 12-16, ECF No. 21. Moreover, Purkey's rhetoric rings particularly hollow in a motion where he fails to cite any case on this issue, much less *Hill* and *Nelson*, and especially where he previously agreed with Defendants that the issues and arguments surrounding the proper court for this litigation are "significant threshold issues for this case." Joint Mot. at 1, ECF No. 15.

> **E.    Purkey's proposed coexistence of habeas and implied equitable relief would undermine congressional limits on post-conviction review.**

Purkey conceded that he could have brought his claim in habeas. Brief at 7, ECF No. 14. In his view, Congress created a cause of action under habeas but did not prohibit this Court from implying a cause of action that provides the same exact relief without the procedural hurdles of a

-14-

habeas petition: "In fact," he argued, "*Ford* claims have been brought under the civil rights laws by state prisoners facing execution." Reply Brief at 4, ECF No. 17.

Purkey's argument defies logic. If Purkey were correct, not only would every federal prisoner facing execution have the opportunity to bring his *Ford* claim in this Court without complying with the jurisdictional and venue requirements of § 2241, but every state prisoner facing execution would have the option to file his or her *Ford* claim in the first instance in federal court, notwithstanding the requirement under the federal habeas statute that they exhaust state remedies before filing in federal court. *See* 28 U.S.C. § 2254(b)(1)(A). As Purkey notes, Compl. ¶ 103 n.5, ECF No. 1, many states have implemented death penalty procedures that account for claims under *Ford*. If habeas were not an exclusive remedy for *Ford* claims, state prisoners nationwide facing execution could avoid those procedures by filing a claim under § 1983 in any federal court with jurisdiction. Congress did not intend that.

Furthermore, the cases Purkey cited do not support his position. The first case, *Ward v. Hutchinson*, 558 S.W.3d 856 (Ark. 2018), involved a state prisoner proceeding in state court and gives no indication whether the federal habeas statute would preclude a federal prisoner from proceeding in federal court under an implied right of action. Though the second case, *Stanley v. Davis*, hypothesizes that "at least under some circumstances" a *Ford* claim could proceed under § 1983, it also notes that "[t]he parties do not cite to, nor is the Court aware of, any caselaw authorizing consideration of a *Ford* claim pursuant to section 1983" and expressly refuses to decide the question: "The issue has not been definitively decided by the Supreme Court or the Ninth Circuit. This Court need not decide the issue now." No. 07-cv-4727, 2015 WL 435077, at *4-5 & n.4 (N.D. Cal. Feb. 2, 2015). Moreover, the prisoner in that case ultimately brought his

*Ford* claim under habeas. *See* Finalized Petition for Writ of Habeas Corpus at 324-31, *Stanley v. Davis*, No. 07-cv-4727 (N.D. Cal. Dec. 12, 2016), ECF No. 252.

The final case, *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005), involved not a *Ford* claim but a challenge to the conditions of confinement—a claim that, in the Tenth Circuit, could not have been brought under habeas at all. *See Aamer v. Obama*, 742 F.3d 1023, 1037-38 (D.C. Cir. 2014) (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)) (noting that some circuits prohibit use of habeas to challenge conditions of confinement); *cf. Nelson*, 541 U.S. at 643. That a prisoner can challenge the conditions of his confinement using an equitable suit in the Tenth Circuit does not permit Purkey to seek equitable relief to bar his execution in this Court. None of Purkey's cases stands for the proposition that a federal prisoner can avoid the restrictions of habeas and pursue a *Ford* claim using an implied cause of action under the Constitution.

### F.  Purkey's complaint cannot be construed as a habeas petition.

This Court cannot construe Purkey's complaint as a habeas petition, because this Court lacks jurisdiction over an absent and necessary party: Purkey's custodian, the warden of the prison where he is confined.

"Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *accord Day v. Trump*, 860 F.3d 686, 689 (D.C. Cir. 2017); *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238-39 (D.C. Cir. 2004). As the Seventh Circuit has held, the Southern District of Indiana is the "one and only proper venue" for the § 2241 claim of a federal prisoner held at the United States Penitentiary at Terre Haute alleging that he is "categorically and constitutionally ineligible for

the death penalty" under *Atkins v. Virginia*, 536 U.S. 304 (2002). *Webster*, 784 F.3d at 1125, 1144. Purkey has sued the wrong parties in the wrong court.

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld*, 542 U.S. at 434 (quoting 28 U.S.C. § 2242). "[T]hese provisions contemplate a proceeding against some person who has *immediate custody* of the person detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Id.* at 435 (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)). "In accord with the statutory language and *Wales*' immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.*; *accord Day*, 860 F.3d at 689; *Stokes*, 374 F.3d at 1238 ("As an initial matter, it is clear that the only proper respondent to Stokes's habeas petition was his 'immediate custodian,'—that is, the warden of the Ohio facility in which he was incarcerated at the time he filed the petition."). "This rule, derived from the terms of the habeas statute, serves the important purpose of preventing forum shopping by habeas petitioners." *Rumsfeld*, 542 U.S. at 447.

Purkey is confined at the United States Penitentiary in Terre Haute, Indiana. Compl. ¶ 6, ECF No. 1. T.J. Watson is the warden of Purkey's prison and the only proper defendant to claims sounding in § 2241. Though Purkey named Attorney General Barr and the Bureau of Prisons Director in this action, he failed to name Warden Watson. His omission is notable in light of his ongoing habeas litigation against Watson, currently on appeal before Seventh Circuit. *See Purkey v. United States*, No. 19-cv-00414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019), *appeal*

-17-

*submitted*, No. 19-3318 (7th Cir. June 16, 2020). Because Purkey in fact cannot sue Warden Watson in a habeas petition here in the District of Columbia, this Court cannot construe his Complaint as a habeas petition, and he has failed to show a likelihood of success on his claims.[1]

### G.      Purkey's *Ford* claim fails establish a substantial threshold showing of incompetency.

Defendants' motion to dismiss Purkey's complaint explained why, even accepting his allegations as true, Purkey has failed to plausibly allege that he is incompetent. Mot. to Dismiss 21-31, ECF No. 18. In support of his renewed preliminary injunction motion, Purkey for the most part simply rehashes the same allegations he raised in his complaint. For the same reasons those allegations fail to state a claim, they fail to show it is likely that Purkey can succeed in proving he is unable to "'reach a rational understanding of the reason for his execution.'" *Madison v. Alabama*, 586 U.S. __, 139 S. Ct. 718, 723 (2019) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 958 (2007)). Moreover, Purkey's own statements and writings show that he rationally understands why he will be executed.

*First*, the only direct support for Purkey's *Ford* claim comes from the report of Dr. Bhushan Agharkar, which is attached as Exhibit 1 to Purkey's complaint. P.I. Mot. at 11-12, 29. Although Dr. Agharkar opines that Purkey is incompetent to be executed, his report is fundamentally flawed on its face because it conflates Purkey's understanding of the reason for his *execution*, which would be constitutionally disqualifying under *Ford*, with Purkey's understanding of the reason for *scheduling his execution date*, which is not. Dr. Agharkar's

---

[1]A habeas petition must also be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. Purkey's complaint is not verified by either him or his counsel.

-18-

report does not support Purkey's position that he is unable to understand the reason for his execution.

According to Dr. Agharkar, Purkey told him "that he knew what an execution was and said that he accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11, ECF No. 1-1. However, Dr. Agharkar proceeds to opine—with no basis or justification—that Purkey's statement was an "attempt[] to 'fake good' at the outset of our interview." Compl. Ex. 1 at 11, ECF No. 1-1. "As the visit continued, . . . Mr. Purkey began to talk about the 'real reason' he was going to be executed. He told me that he was actually being executed because he is filing lawsuits for other people's cases." Compl. Ex. 1 at 11, ECF No. 1-1. Dr. Agharkar writes that "[w]hen I inquired further, Mr. Purkey also told me that he was given a date for execution unfairly and for reverse discrimination. He told me that we didn't need to talk about this because I could just read his filings." Compl. Ex. 1 at 11, ECF No. 1-1. From that discussion, Dr. Agharkar opines that "to a reasonable degree of medical certainty, at the time of the evaluation, Mr. Purkey lacked a rational understanding of the basis for his execution." Compl. Ex. 1 at 12, ECF No. 1-1.

It is not clear if Dr. Agharkar ever read Purkey's pro se filings, as Purkey suggested he should do. Purkey was referring to the pro se civil rights action that he brought in the Southern District of Indiana in October 2019, which is included in Exhibit 15 to Purkey's complaint in this case. Purkey's pro se complaint alleges that his constitutional rights were violated by "the defendants['] deliberate arbitrary selection of his execution date, which was substantially motivated by his protracted jailhouse lawyering." Compl. Ex. 15 at 994, ECF No. 1-18. Purkey alleges that he was arbitrarily selected for an execution date before other death row prisoners who exhausted their appellate rights before he did. Compl. Ex. 15 at 1001-02, ECF No. 1-18. He

-19-

claims that the reason for his selection was his "jailhouse lawyering activities" and the fact he is white. Compl. Ex. 15 at 1002-04, ECF No. 1-18. Purkey's pro se complaint, although legally deficient, is coherent and refutes his claim that he is incompetent.

Although Purkey alleges his execution date was set out of retaliation, that allegation is consistent with his having a rational understanding of the reason for his execution. Purkey's alleged confusion about the reason for scheduling his execution is constitutionally irrelevant. The Eighth Amendment does not prohibit executing a prisoner who lacks a rational understanding of the reason for scheduling his execution date. As the Supreme Court has emphasized, "the sole inquiry for the court remains whether the prisoner can rationally understand the reasons for his *death sentence*." *Madison*, 139 S. Ct. at 728 (emphasis added). Even if Purkey misunderstands why the Government initially scheduled his execution to take place on December 13, 2019, he is still able to appreciate (and indeed has reportedly said he accepts) that he will be executed for kidnapping, raping, and murdering Jennifer Long.

Purkey attempts to align himself with the defendant in *Panetti*, P.I. Mot. at 30, but that case does not help him. Scott Panetti "suffered from a fragmented personality, delusions and hallucinations" and "had been hospitalized numerous times for these disorders." *Panetti*, 551 U.S. at 936. He represented himself at trial, engaging in bizarre behaviors, and his condition worsened after trial. *Id.* at 936-37. Panetti believed that his execution was "part of spiritual warfare between the demons and the forces of the darkness and God and the angels and the forces of light." *Id.* at 954 (cleaned up and quotation omitted). An expert witness "explained [that] although [Panetti] claims to understand that the state is saying that it wishes to execute him for his murders, he believes in earnest that the stated reason is a sham and the state in truth wants to execute him to stop him from preaching." *Panetti*, 551 U.S. at 954-55 (cleaned up and

-20-

quotations omitted). It was uncontested that Panetti had "made a substantial showing of incompetency." *Id.* at 948.

By contrast, Dr. Agharkar never indicates Purkey attributed the reason for his execution to the Government. Instead, Purkey "accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11, ECF No. 1-1. Unlike Panetti, Purkey did not tell Dr. Agharkar that he believed the reason for his execution was a sham. Instead, Purkey said that "he was actually being executed because he is filing lawsuits for other people's cases" and "he was given a date for execution unfairly and for reverse discrimination." Compl. Ex. 1 at 11, ECF No. 1-1. In other words, unlike Scott Panetti, Purkey does not believe that the reason he was sentenced to death was a sham. Rather, based on his own allegations, Purkey accepts the reason for his execution, but he claims he was unfairly selected for an execution date.

*Second*, Purkey claims that his diagnosis of Alzheimer's disease supports his claim to incompetency. P.I. Mot. at 11, 29. However, the alleged fact that Purkey has Alzheimer's disease does not establish incompetency, because although dementia "can cause such disorientation and cognitive decline as to prevent a person from sustaining a rational understanding of why the State wants to execute him," "dementia also has milder forms, which allow a person to preserve that understanding." *Madison*, 139 S. Ct. at 729. Dr. Jonathan DeRight, the neuropsychologist who diagnosed Purkey with Alzheimer's disease, does not assert that Purkey's condition has advanced to such a stage that he is unable to rationally understand the reason for his execution. Compl. Ex. 3 at 20-28, ECF No. 1-1.

*Third*, Purkey relies on a new report from a neurologist named Dr. Thomas Hyde, who reviewed a wide range of Purkey's medical and other records. Hyde Decl. ¶ 10, ECF No. 23-4. Dr. Hyde states that based on his review of the available records, he is unable to "reach a

definitive conclusion as to [Purkey's] neurological status of diagnosis, nor as to his level of competency." Hyde Decl. ¶ 12, ECF No. 23-4. Dr. Hyde states that based on the records he reviewed, Purkey likely suffers from dementia. Hyde Decl. ¶ 14, p. 10, ECF No. 23-4. However the only opinion he offers is that "Mr. Purkey needs to undergo a complete neurological evaluation in order to ascertain his current cognitive status and diagnosis." Hyde Decl. ¶ 14, p. 10, ECF No. 23-4. Dr. Hyde's opinion that Purkey needs further testing to determine his competency lends no support to Purkey's claim to incompetency. To the contrary, it underscores the fact that Purkey has failed to make a substantial threshold showing of incompetency.

*Fourth*, Purkey relies on a declaration from his mitigation specialist, Dr. Elizabeth Vartkessian, P.I. Mot. at 12, 30. Although Dr. Vartkessian describes Purkey's purported physical decline, forgetfulness, and impatience, she does not opine that he is unable to rationally understand the reason for his execution. Vartkessian Decl., ECF No. 23-5.

In contrast to the reports on which Purkey relies, Purkey's own statements and writings attached to his complaint show that he rationally understands the reason for his execution. As discussed above, Purkey told Dr. Agharkar "that he knew what an execution was and said that he accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11, ECF No. 1-1. Purkey's pro se civil rights complaint also demonstrates his competency.

Furthermore, on May 13, 2019, Purkey filed a handwritten pro se "Petition to Expedite Execution of Petitioner's Death Sentence Pursuant to 28 U.S.C. § 2241" in the Southern District of Indiana. Compl. Ex. 15 at 1029, ECF No. 1-18. Purkey wrote in this petition that "[o]n January 23, 2004 U.S. District Judge Gaitan sentenced Purkey to death after a jury found him guilty of kidnapping resulting in death and recommended a sentence of death (WDMO Case No. 01-CR-00308-FJG-DCD 506)." Compl. Ex. 15 at 1029-30, ECF No. 1-18. Purkey's own

handwritten petition demonstrates he understands he was sentenced to death for his crime and possesses a rational understanding of the reason for his execution.

Dr. Frederic Sautter, a psychologist who evaluated Purkey in November 2016 and diagnosed him with complex PTSD, noted that Purkey "became distraught with emotion *as he communicated his shame for killing Ms. Long* and the fact that his behavior deprived his daughter and grandchildren of having a supportive parent or grandparent." Compl. Ex. 10 at 91, ECF No. 1 (emphasis added). Purkey's expression of "shame" for murdering Jennifer Long, and his ability to connect his crime to his punishment, demonstrate that he is capable of understanding the reason for his execution.

In October 2015, Purkey filed a pro se complaint challenging his exclusion from the BOP's Trust Fund Limited Inmate Computer System (TRULINCS), which enables federal prisoners to communicate through email. Compl. Ex. 15 at 1321, ECF No. 1-18. Purkey's pro se complaint explains that a jury had convicted him of interstate kidnapping resulting in death and recommended a death sentence, and that Judge Gaitan had sentenced him to death. Compl. Ex. 15 at 1326, ECF No. 1-18. This complaint further reflects Purkey's understanding that he was sentenced to death for his crime.

In sum, Purkey's allegations in this case, even assuming they are true, indicate at most that he lacks a rational understanding of the reason for setting his execution date. None of his allegations supports his claim that he is unable to rationally understand the reason for his execution. It is not substantially likely that Purkey can succeed on his *Ford* claim.

-23-

**H.      Purkey is not entitled to information, discovery, or a hearing until he establishes a substantial threshold showing of incompetency, and a habeas petition affords him an available and adequate procedure for resolving his *Ford* claim.**

Purkey has not shown a substantial likelihood of success on his due process claim because he is not entitled to any particular process unless and until he makes a substantial threshold showing of incompetency. As explained above, Purkey has failed to make such a showing. Furthermore, there exists under 28 U.S.C. § 2241 an available and adequate procedure for bringing a *Ford* claim, notwithstanding Purkey's unexplained refusal to pursue it.

Purkey bears the burden to make a substantial threshold showing of incompetency. *Ford*, 477 U.S at 425-26 (Powell, J., concurring) ("[I]n order to have been convicted and sentenced, [a prisoner] must have been judged competent to stand trial . . . . The [Government] therefore may properly presume that [a prisoner] remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process."); *see also Panetti v. Quarterman*, 551 U.S. 930, 949 (2007) (noting that Justice Powell's concurrence in *Ford* is controlling on the question of procedure). Only after he has made such a substantial threshold showing will he be entitled to any sort of process to adjudicate his competency: "Once a prisoner seeking a stay of execution has made a substantial threshold showing of insanity, the protection afforded by procedural due process includes a fair hearing in accord with fundamental fairness." *Panetti*, 551 U.S. at 949 (quotations omitted).

The Supreme Court provided guidance, first in Justice Powell's concurrence in *Ford* and later in the majority opinion in *Panetti*, about the sorts of procedures that are constitutionally required after a prisoner makes a sufficient threshold showing. "[A] constitutionally acceptable procedure may be far less formal than a trial." *Id.* (quotation omitted). However, a prisoner "must be accorded an opportunity to be heard," which includes "an opportunity to submit

evidence and argument from [his] counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination." *Id.* at 949-50 (quotations omitted). The Court also indicated that a constitutionally acceptable procedure requires a court to transcribe its proceedings and to keep the prisoner's counsel informed. *Id.* at 950.

Aside from those basic requirements, the Supreme Court declined to "set forth the precise limits that due process imposes in this area" and "observed that a State should have substantial leeway to determine what process best balances the various interests at stake once it has met the basic requirements required by due process." *Id.* at 950 (quotations omitted). In particular, the Court declined to "address whether other procedures, such as the opportunity for discovery or for the cross-examination of witness, would in some cases be required under the Due Process Clause." *Id.* at 952.

However, what is clear from *Ford* and *Panetti* is that no process—including information sharing or discovery—is required unless and until a prisoner first succeeds in making a substantial threshold showing of incompetency. *See id.* at 950 ("Petitioner was entitled to these protections once he had made a substantial threshold showing of insanity." (quotation omitted)); *see also Bedford v. Bobby*, 645 F.3d 372, 380 (6th Cir. 2011) ("*Ford* establishes that once a prisoner has made the requisite showing of incompetence, he is entitled to due process protections including a fair hearing."). The Constitution does not entitle a death-row prisoner to obtain discovery from the Government to support an initial threshold showing of incompetency. As one court has noted, requiring a state to produce discovery prior to a threshold showing of incompetency would "turn[] *Ford* on its head" and undermine the state's goal of "go[ing] forward with punishments with deliberate speed, without undertaking (after many years of direct and collateral review of conviction and sentence) a new and prolonged court proceeding without

-25-

a substantial showing of good reasons to do so." *Schornhorst v. Anderson*, 77 F. Supp. 2d 944, 955-56 (S.D. Ind. 1999).

Purkey cites no case suggesting that he is entitled to discovery prior to making the substantial threshold showing required by *Panetti*. Instead, he suggests that he is "entitled to pre-hearing discovery, irrespective of this threshold showing," because *Panetti* "distinguish[es] between procedures required under *Ford* (namely, an impartial decision maker and an opportunity to offer evidence to counter government evidence of competency) and others that may be required under the Due Process Clause, such as 'the opportunity for discovery or for the cross-examination of witnesses.'" P.I. Mot. at 3 (quoting *Panetti*, 551 U.S. at 952). This purported distinction is a misconstruction of *Panetti*, which makes clear that entitlement to a hearing, as well as any other procedural protections, are all equally mandated by the Due Process Clause. The Supreme Court explained that "once a prisoner seeking a stay has made a 'substantial threshold showing of insanity,' the protection *afforded by procedural due process* includes a 'fair hearing' in accord with fundamental fairness." *Panetti*, 551 U.S. at 949 (quoting *Ford*, 477 U.S. at 424, 426 (Powell, J., concurring)) (emphasis added). Purkey's argument that he has a due process right to discovery before he has made a substantial threshold showing of incompetency is directly contrary to *Panetti* and should be rejected.

Purkey also incorrectly asserts that "Defendants have failed to establish *any* federal process at all to allow for the adequate review of Mr. Purkey's *Ford* competency claim." P.I. Mot. at 25. As Defendants explained at length in the reply in support of their motion to dismiss, the appropriate and available process for adjudicating Purkey's *Ford* claim is a habeas petition under 28 U.S.C. § 2241. *See* Reply in Support of Defendant's Mot. to Dismiss at 5-6, ECF No. 21. If Purkey had filed his *Ford* claim via a § 2241 petition, he would have available all the due

process mandated by *Panetti* and more, including the right to conduct good-cause discovery, an evidentiary hearing before a district judge, and the opportunity to present evidence and argument. *See* Rules 1(b), 2, 6, and 8 of the Rules Governing Section 2254 Cases in the United States District Courts.[2]

Purkey cannot establish a violation of his due process rights by willfully refusing to avail himself of the available procedure for bringing a *Ford* claim. He has never explained why he chose not to bring his *Ford* claim through a habeas petition. Nor has he attempted to show why a habeas petition would be a constitutionally inadequate process. Instead, he deliberately ignores the existence of habeas relief and speciously contends there is no process available to him. His due process claim is unlikely to succeed.

## II. Because Purkey is unlikely to succeed on the merits of his claims, this Court need not consider the remaining factors in denying his motion for a preliminary injunction.

Because Purkey fails to establish a likelihood of success on the merits, this Court need not proceed further to consider the remaining preliminary injunction factors. "In ruling on a preliminary injunction a key issue—often the dispositive one—is whether the movant has shown a substantial likelihood of success on the merits." *Greater New Orleans Fair Hous. Action Ctr. v. United States Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1083 (D.C. Cir. 2011); *see also*

---

[2]Indeed, in the § 2241 litigation he brought in the Southern District of Indiana, Purkey's counsel sought ex parte an order directing that Purkey undergo certain brain imaging tests that, they argued, "will also bear on the question of whether Mr. Purkey is competent to be executed, an issue that is ripe in his case." Ex. 18 to Woodman Decl. at 1, ECF No. 23-6; Compl. ¶ 17, ECF No. 1. The Southern District of Indiana denied Purkey's motion because Purkey did not bring his *Ford* claim along with his then-pending § 2241 petition. Woodman Decl. ¶ 18, ECF No. 23-6. Purkey could have amended his § 2241 petition to add a *Ford* claim that the court found lacking and that Purkey believed was ripe at the time, and he has never explained why he failed to do so.

*Aamer*, 742 F.3d at 1038 ("[T]he first and most important factor [is] whether petitioners have established a likelihood of success on the merits."); *see also Nken v. Holder,* 556 U.S. 418, 438 (2009) (Kennedy, J., concurring) ("When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other.").

Should this Court proceed further, though, the equities tip against the issuance of an injunction. In balancing the factors required by *Winter*, this Court should not grant a preliminary injunction until it has resolved the substantial threshold question of whether Purkey may seek relief in this Court at all. *Cf. Elec. Privacy Info. Ctr. V. U.S. Dep't of Commerce*, 928 F.3d 95, 104 (D.C. Cir. 2019) (noting that party seeking preliminary injunction must also make showing of substantial likelihood of success on question of jurisdiction).

Moreover, Purkey cannot dispute the Government's overwhelming interest in the enforcement of the criminal sentences imposed by unanimous federal juries after fair trials and upheld through extensive appellate and post-conviction proceedings in federal courts. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1113 (2019). The American people have chosen to make capital punishment available in the federal system; if that decision is to be given meaningful effect, sentences must be enforced in cases like these. The Supreme Court has emphasized that "'[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence.'" *Id.* at 1133 (quoting *Hill*, 547 U.S. at 584); *see also Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (explaining that once post-conviction proceedings "have run their course . . . finality acquires an added moral dimension"). "Only with an assurance of real finality can the [government] execute its moral judgment in a case," and "[o]nly with real finality can the victims of crime move forward knowing the moral judgment

will be carried out." *Calderon*, 523 U.S. at 556. Unduly delaying executions can frustrate the death penalty by undermining its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134; *id.* at 1144 (Breyer, J., dissenting).

**III.    Purkey is not entitled to discovery at this time.**

This Court should deny Purkey's motion for expedited discovery for all the reasons Defendants give in their response to that motion. To summarize, Purkey has the initial burden to make a substantial threshold showing of incompetency, and until he does, he has no entitlement to discovery. As explained above, Purkey has failed to make the substantial threshold showing necessary because he has not demonstrated that he lacks a rational understanding of the reason for his execution. For this reason, both of Purkey's claims fail as a matter of law and no discovery can change that. Furthermore, Purkey has failed to demonstrate that this Court has the power to grant him relief, and it should deny his motion and dismiss his claim rather than imposing burdensome discovery when it lacks power to enter final judgment on his behalf.

## CONCLUSION

For the foregoing reasons, this Court should deny Purkey's renewed motion for a preliminary injunction.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

By    /s/ *J. Benton Hurst*

BRIAN P. CASEY
KATHLEEN D. MAHONEY
J. BENTON HURST (D.D.C. Bar #MO009)
DAVID WAGNER
Special Assistant United States Attorneys

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri    64106
Telephone: (816) 426-3122
Fax: (816) 426-5186
E-mail:   Brian.Casey@usdoj.gov
               Kate.Mahoney@usdoj.gov
               John.Hurst@usdoj.gov
               David.Wagner@usdoj.gov

*Attorneys for Defendants*

-30-