IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WESLEY I. PURKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 19-03570 (TSC) |
| | ) |
| WILLIAM P. BARR, et al, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY**

The Defendants respectfully oppose Plaintiff Purkey's motion for expedited discovery ("Discovery Mot.") for three reasons. First, Purkey has no entitlement to any discovery until he has made a substantial threshold showing of incompetency, and he has not. Second, Defendants respectfully suggest that this Court should resolve what both parties agree are "significant threshold issues" surrounding this Court's jurisdiction, Joint Mot. at 1, ECF No. 15, before imposing discovery obligations. Third, Purkey fails to satisfy the requirements for expedited discovery.

**BACKGROUND**

Purkey asserts that he "has actively requested this evidence through every possible channel for almost a year." Discovery Mot. at 2. As an initial matter, Defendants note at least three alternative channels that Purkey could have pursued many months ago, but did not.

First, with respect to the requests for medical records and video surveillance, Purkey claims to have been requesting this information for months, but what he refers to are not discovery requests through litigation but requests for information under the Freedom of Information Act. *See* Woodman Decl. ¶¶ 12-13, 26, ECF No. 23-6. The remedy for alleged

failure to produce documents in response to a FOIA request is not expedited discovery, however, but a lawsuit under the FOIA statute. *See generally* 5 U.S.C. § 552(a)(4)(B). Purkey has not sought production of the records he requested under FOIA through a FOIA lawsuit—though this Court would unquestionably have the power to hear such a lawsuit, unlike this one. *See id.*

Second, with respect to the requests for medical testing, BOP informed Purkey's counsel that such requests would require a court order. Woodman Decl. ¶ 15, ECF No. 23-6. BOP does not order or pay for testing its medical professionals believe is not clinically indicated, and Purkey's treating medical professionals at BOP have determined that the tests sought are not clinically indicated. Watson Decl. ¶¶ 5-6. Purkey sought an *ex parte* court order in his pending § 2241 litigation in the Southern District of Indiana, and on November 20, 2019, the district court denied it because Purkey did not bring his *Ford* claim along with his then-pending § 2241 petition. Woodman Decl. ¶ 18, ECF No. 23-6.

Purkey could have brought his *Ford* claim in that § 2241 petition, as he admits that it was ripe at the time, Woodman Decl. Exh. 18, ECF No. 23-6. If he had, the district court in Indiana might have granted his request for the testing he believes to be necessary. As the Defendants have repeatedly argued, the Southern District of Indiana would have had jurisdiction over a *Ford* claim, and the Rules Governing Section 2254 Cases and Section 2255 Proceedings in the United States District Courts permit discovery for good cause.

Third, once Purkey instead filed his *Ford* claim in this Court on November 20, 2019, he could have then sought an order from this Court for the medical testing he believes necessary. He was aware that this channel was open to him, because he sought expedited discovery of his medical records, video surveillance, and brain imaging as part of his first motion for preliminary injunction on December 4, 2019. Memo. in Support of Mot. for P.I. at 22-23, ECF No. 7-1. But

less than two weeks later, Purkey sought leave to withdraw this motion, which this Court granted. Mot. at 1, ECF No. 11. In the six months before his most recent motion for preliminary injunction, Purkey did not seek an order from this Court for the testing he now seeks. The Defendants acknowledge their position that Purkey's *Ford* claim was unripe during this time, but Purkey did not adopt this position, and this Court has not yet decided the issue. *See* Mot. to Dismiss at 10-12, ECF No. 18; Opp. to Mot. to Dismiss at 7-12, ECF No. 20.

Purkey may have had even other options to pursue the information he now seeks, and he would have been prudent to make attempts to do so if he felt the information necessary to make the threshold showing required to obtain a *Ford* hearing. There certainly were channels through which Purkey could have sought, and if a court agreed he made the required preliminary showing of merit, could have obtained the discovery he now seeks. That he did not attempt to do so despite being aware not only that additional channels existed but also that the Attorney General could schedule his execution with as little as 20 days' notice, undermines the premise of his motion for expedited discovery—his claim that he needed the requested information but had no means to obtain it.

Purkey's present circumstance—moving to open discovery in a legal action filed six months ago because his execution date is three weeks off—is as much the result of the litigation decisions made by Purkey and his legal team as it is the Defendants' decision to schedule his execution within a lawful timeframe. This Court should not reward Purkey for those decisions by opening discovery now, or more particularly, by granting Purkey a preliminary injunction for the purpose of opening discovery now.

Purkey's motion for expedited discovery is intertwined with his renewed motion for a preliminary injunction. To resolve that motion, this Court must resolve the threshold issue of its

statutory power to grant relief in this case. The Defendants have maintained from their first filing in this case that Purkey cannot bring his *Ford* claims directly under the Eighth Amendment in this Court. Even if he could, Purkey has failed to allege plausible facts entitling him to relief. Because Purkey's suit should be dismissed, this Court need not order expedited discovery. Rather, it should dismiss the case.

## ARGUMENT

**I.     Purkey has failed to make the threshold showing required for discovery.**

With respect to Purkey's due process claim, he lacks any entitlement to process—including discovery—because he has not made the threshold showing required. As explained more fully in Defendants' opposition to Purkey's renewed preliminary injunction motion, a *Ford* claimant is not entitled to a hearing or other procedural protections, including discovery, until he has made a substantial threshold showing of incompetency. *See Panetti v. Quarterman*, 551 U.S. 930, 949 (2007) ("Once a prisoner seeking a stay of execution has made a substantial threshold showing of insanity, the protection afforded by procedural due process includes a fair hearing in accord with fundamental fairness.").

Even accepting Purkey's well-pled facts, he has not made such a substantial threshold showing. As explained further in Defendants' opposition to Purkey's renewed preliminary injunction motion, at most Purkey has plausibly alleged that he does not understand the reason for scheduling his execution date. He is in fact pursuing a civil rights lawsuit in the Southern District of Indiana, which he initiated pro se, claiming that he was arbitrarily selected for an execution date because of his "jailhouse lawyering" and the fact that he is white. Compl. Ex. 15 at 1002-04, ECF No. 1-18. Just over a year ago, Purkey filed a handwritten pro se "Petition to Expedite Execution of Petitioner's Death Sentence Pursuant to 28 U.S.C. § 2241" in the

Southern District of Indiana. Compl. Ex. 15 at 1029, ECF No. 1-18. Purkey wrote in this petition that "[o]n January 23, 2004 U.S. District Judge Gaitan sentenced Purkey to death after a jury found him guilty of kidnapping resulting in death and recommended a sentence of death (WDMO Case No. 01-CR-00308-FJG-DCD 506)." Compl. Ex. 15 at 1029-30, ECF No. 1-18. Purkey's own handwritten petition demonstrates he understands he was sentenced to death for his crime and possesses a rational understanding of the reason for his execution.

Because Purkey is not entitled to discovery prior to satisfying his obligation to make the relevant threshold showing, this Court should deny expedited discovery.

## II.  This Court lacks authority to grant Purkey relief.

Purkey has also failed to show that this Court has authority to grant him the relief he seeks, including discovery, because if successful his claim will necessarily bar his execution and therefore must be brought in habeas in the Southern District of Indiana. Defendants provide arguments and authorities on this issue in their response to Purkey's renewed preliminary injunction, filed simultaneously with this response.

In summary, because "a grant of relief to the inmate will necessarily bar the execution," Purkey must bring his claim under 28 U.S.C. § 2241 and cannot bring it as an implied equitable action. *See Hill v. McDonough*, 547 U.S. 573, 580-83 (2006); *see also Nelson v. Campbell*, 541 U.S. 637, 643-44 (2004). *See generally Armstrong Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The power of federal courts in equity to enjoin unlawful executive action is subject to express and implied statutory limitations."). Because Purkey must bring his claim as a § 2241 habeas petition, he cannot bring it in this Court. *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *Day v. Trump*, 860 F.3d 686, 689 (D.C. Cir. 2017); *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238-39 (D.C. Cir. 2004). Purkey has sued the wrong parties in the wrong court.

Defendants respectfully suggest that because all parties agree these arguments and authorities present "significant threshold issues" about this Court's jurisdiction, Joint Mot. at 1, ECF No. 15, it should resolve them before ordering the Defendants to provide expedited discovery to Purkey to support a claim that ultimately is not properly before the Court.

### III.     Purkey has failed to demonstrate entitlement to expedited discovery.

As Purkey correctly observes, courts have applied two different tests to determine whether to grant expedited discovery: "the *Notaro* [*v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)] test and the reasonableness, or good-cause, standard." *Attkisson v. Holder*, 113 F.Supp.3d 156, 162 (D.D.C. 2015). More recently, judges in this District "have rejected entirely the *Notaro* test in favor of the good-cause standard, which is 'more suited to the application of the Court's broad discretion in handling discovery.'" *Id.* (quoting *Guttenberg v. Emery*, 26 F.Supp.3d 88, 97-98 (D.D.C. 2014)). Under either test, this Court should deny Purkey's request.

"Courts typically consider five factors when evaluating a motion for expedited discovery under the good-cause standard: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Id.* (quoting *Guttenberg*, 26 F.Supp.3d at 98).

The first factor appears to weigh in Purkey's favor, as he has filed a motion for a preliminary injunction. As discussed above, however, Purkey also filed a motion for a preliminary injunction and expedited discovery in December 2019 and moved to withdraw that motion only two weeks later. ECF Nos. 7, 11. Though Defendants acknowledge their position that this Court's injunction in another case mooted his *Ford* claim, Purkey did not agree with that

position and nothing required him to withdraw his motion for expedited discovery six months ago. For this reason, the Court should not give great weight to the first factor.

The second factor weighs in the Defendants' favor because Purkey's "proposed discovery requests are not narrowly tailored," but "instead seek significant discovery on the merits." *Attkisson*, 113 F.Supp.3d at 162. This Court has rejected a request for expedited discovery in part because the "discovery requests are not narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole." *Guttenberg*, 26 F.Supp.3d at 98.

The relevant questions for the preliminary injunction are first, and most importantly, whether Purkey may bring his *Ford* claim in this Court. If and only if this Court determines that he may, the next questions become whether Purkey has shown a likelihood of success on the merits of his due process and *Ford* claims. The first two issues, which present the legal questions of whether this case can proceed in this Court and whether any right to pre-*Ford*-claim discovery exists, require no discovery to resolve. And because Purkey fails on his due process claim, he cannot succeed on his request for discovery to make a substantial threshold showing on the *Ford* claim itself.

Even if the Court disagrees, the second factor counsels that it should not grant the full scope of discovery Purkey requests because his requests are not narrowly tailored to his *Ford* claim. While Purkey's request for medical and psychological records may bear on that question, much of his requested discovery is substantially overbroad and some of it is not relevant at all. Purkey's requests for multitudinous diagnostic imaging, scans, and a lumbar puncture, for example, are not narrowly drawn to answer the question of whether Purkey understands that the Government intends to execute him for his kidnapping, rape, murder, and dismemberment of a 16-year-old girl and will serve only to require lengthy delays for off-site procedures. Similarly, a

year's worth of video footage of Purkey's cell, even if it were available and discoverable, would take months to review, would reveal nothing about Purkey's understanding of why he will be executed, and would reveal sensitive law enforcement information.

With regard to Purkey's request for "[i]nformation about the BOP's ability to protect experts and legal visitors from COVID-19," Discovery Mot. at 3, that information is not discoverable in this case. Fed. R. Civ. P. 26 ("Parties may obtain discovery regarding any nonprivileged matter that *is relevant to any party's claim or defense . . .*"). The information Purkey seeks on that topic does not even go the merits of his *Ford* claim; rather, it is information about the BOP's procedures for visits during the current pandemic. That information is even less narrowly tailored to the resolution of Purkey's motion for a preliminary injunction under *Attkisson*.[1]

The third factor weighs in Defendants' favor. The third factor weighs in favor of expedited discovery where "the plaintiff will be irreparably harmed without expedited discovery" and "the plaintiff seeks to 'gain evidence to get the court to preserve the status quo.'" *Attkisson*, 113 F.Supp.3d at 164. Defendants concede that any harm Purkey would suffer if this Court denies his motion would be irreparable, but do not agree that denial of his motion would cause any harm where this Court can dismiss his complaint for failure to state a claim without any of the information he has requested.

---

[1]After Purkey received the latest notice of an execution date, his counsel reached out to the BOP regarding scheduling in-person visits. Siereveld Decl. Exh. B. The BOP invited Purkey's counsel to schedule whatever visits it thought appropriate. *Id.* Purkey's counsel instead requested an increasing amount of information as a pre-condition for scheduling those visits. Siereveld Decl. Exhs. A, B. The BOP attorney explained that much of the requested information is public and provided an explanation as to what BOP's safety protocols would be. Siereveld Decl. Exhs. A, B, C.

The fourth factor, the burden on Defendants to comply with the requests, weighs in Defendants' favor. Purkey seeks substantial diagnostic testing and almost one year's worth of video footage, both of which will impose substantial burdens on the BOP. In recent correspondence, his counsel have even suggested that the Defendants must bear the cost for medical procedures that BOP medical staff believe are not medically necessary. Siereveld Decl. Exh. A; Watson Decl. ¶¶ 5-6. In addition, revealing the video footage will reveal law enforcement sensitive information related to the security of the Terre Haute facility.

The fifth factor weighs in the Defendants' favor. Purkey presents his motion prior to a ruling on the motion to dismiss, a practice that "is often disfavored." *Attkisson*, 113 F.Supp.3d at 165. "Even filing a motion for expedited discovery after briefing of motions to dismiss has concluded is 'well in advance of typical discovery.'" *Id.* (quoting *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010)). This Court has previously discussed the pendency of a motion to dismiss as the factor "most important for the Court's reasonableness analysis," writing that "requiring defendants (who have raised several arguments as to why plaintiffs' complaint should be dismissed) to expend significant resources in responding to plaintiffs' discovery requests would be unjust—even more so because plaintiffs' discovery requests go to the merits of the dispute." *Guttenberg*, 26 F.Supp.3d at 99.

Purkey also fails the more stringent *Notaro* test. In *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), the court articulated a "stringent standard," *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142 (D.D.C. 2005), where the plaintiff must show

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*In re Fannie Mae*, 227 F.R.D. at 142 (quoting *Notaro*, 95 F.R.D. at 405).

Here, Purkey fails to demonstrate both the second and third prongs of the *Notaro* test. As discussed at length in Defendants' response to Purkey's renewed motion for preliminary injunction, Purkey has failed to make the substantial threshold showing required to obtain any process or discovery and has further failed to allege plausible facts demonstrating his entitlement to relief. Furthermore, as discussed above, Purkey has failed to demonstrate a connection between the expedited discovery he requests and the avoidance of the irreparable injury.

## CONCLUSION

For the foregoing reasons, this Court should deny Purkey's motion for expedited discovery. If the Court determines to grant the motion in whole or in part, it should not order wholesale production of the materials Purkey seeks. As Defendants discuss above, much of the discovery Purkey requests would be irrelevant, burdensome to produce, and would reveal sensitive law enforcement information. Defendants expressly preserve all objections that they might have to this discovery if propounded in the ordinary course. If this Court orders any discovery in this case, it should require the parties to meet and confer about the scope of discovery, logistical issues, and issues related to the security and safety of the Terre Haute facility. Furthermore, if this Court grants this motion in whole or in part, it should permit Defendants to seek from Purkey corresponding discovery relevant to his renewed preliminary injunction motion.

-11-

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

By    /s/ *J. Benton Hurst*

BRIAN P. CASEY
KATHLEEN D. MAHONEY
J. BENTON HURST (D.D.C. Bar #MO009)
DAVID WAGNER
Special Assistant United States Attorneys

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri   64106
Telephone: (816) 426-3122
Fax: (816) 426-5186
E-mail:   Brian.Casey@usdoj.gov
          Kate.Mahoney@usdoj.gov
          John.Hurst@usdoj.gov
          David.Wagner@usdoj.gov

*Attorneys for Defendants*