## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WESLEY IRA PURKEY,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM P. BARR, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 1:19-cv-03570-TSC

## REPLY IN SUPPORT OF PLAINTIFF'S
## MOTION FOR EXPEDITED DISCOVERY

Plaintiff Wesley Ira Purkey ("Plaintiff" or "Mr. Purkey") has demonstrated both that he is entitled to procedural due process protections to adjudicate his competency to be executed, including a fair hearing and access to highly relevant evidence, and that he is entitled to discovery in this matter on an expedited basis. *Panetti v. Quarterman*, 551 U.S. 930, 949 (2007); *Ford v. Wainwright*, 477 U.S. 399, 426 (1986); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015). Defendants have known for over ten months the specific and relevant information Mr. Purkey seeks, including current medical records, but, rather than producing that information, Defendants have engaged in a protracted game of "Simon Says," demanding Mr. Purkey jump through a variety of procedural hoops but never intending to actually produce the information. Defendants' arguments in response to Plaintiff's Motion for Expedited Discovery, filed on June 23, 2020 (ECF No. 24) (the "Motion for Expedited Discovery"), are just another example of their continuing obstruction of Mr. Purkey's attempts to obtain relevant information in further support of his claims in this case.

In their Opposition to Plaintiffs' Motion for Expedited Discovery, filed on June 29, 2020 (ECF No. 27) (the "Opposition"), Defendants mischaracterize Plaintiff's numerous prior attempts to obtain relevant records, ignore the substantial showing Mr. Purkey has already made regarding his incompetency, and make baseless claims regarding burden and cost of production, even while purporting to rely on the very material relevant to Mr. Purkey's *Ford* claim that he has been repeatedly requesting and has been denied to him. None of Defendants' arguments overcome or refute Mr. Purkey's entitlement to the expedited discovery requested.

## ARGUMENT

### I.    DEFENDANTS MISCHARACTERIZE MR. PURKEY'S NUMEROUS PRIOR ATTEMPTS TO OBTAIN RELEVANT DISCOVERY

Defendants attack Mr. Purkey's Motion for Expedited Discovery by criticizing his prior attempts to obtain the requested information. Their argument is essentially that, although Mr. Purkey has admittedly sought this information before, he did not ask for it the right way, with ever shifting goalposts. Even if there was any merit to such an argument, the reality paints a very different picture. Mr. Purkey repeatedly and diligently requested the information through multiple avenues and was met with roadblocks, misinformation, and misdirection every step of the way.

*First*, Defendants' recitation of the history of Mr. Purkey's attempts to obtain the information he now seeks through expedited discovery is disingenuous at best. Mr. Purkey submitted requests for his medical and psychological records, as well as other relevant records, directly to the Federal Bureau of Prisons' ("BOP") counsel and, pursuant to BOP counsel's suggestion, through the Freedom of Information Act ("FOIA"). *See generally* R. Woodman Decl. in Supp. of Pl.'s Renewed Mot. for a Prelim. Inj. Barring Execution of Wesley Purkey Pending Final Disposition on the Merits, filed on June 22, 2020 ("R. Woodman Decl."), ECF No. 23-6.

2

Methods by which Mr. Purkey conveyed his requests were undertaken per the guidance of BOP counsel, and Mr. Purkey's counsel diligently pursued outstanding requests. *Id.* ¶¶ 8–13, 25–32. Submitted with this memorandum is a summary table containing a non-exhaustive list of Mr. Purkey's attempts to obtain relevant materials, the responses received, and the results of these attempts—or lack thereof—with cites to the materials submitted in support of the Motion for Expedited Discovery and Plaintiff's Renewed Motion for Preliminary Injunction Barring Execution of Wesley Purkey Pending Final Disposition on the Merits, filed on June 22, 2020 (ECF No. 23) (the "Renewed Motion for Preliminary Injunction"). Appendix A (Chronology of Pl.'s Reqs. to BOP and Defense Counsel For Information, Records, Testing, and Imaging Relating to Claims and Issues In the Case (Aug. 29, 2019 to Present)). To date, *none* of the records requested in the Motion for Expedited Discovery have been produced to Mr. Purkey's counsel.

*Second*, Defendants' criticism of the steps Mr. Purkey took under FOIA is nonsensical. Mr. Purkey pursued production through FOIA upon discussion with BOP counsel and after first submitting certain requests directly to the BOP. R. Woodman Decl. ¶¶ 10–12, Exs. 1–9, ECF No. 23-6. BOP counsel has long been aware of and in possession of Mr. Purkey's FOIA requests. *Id.* ¶¶ 12–13, 26–27, 32, Exs. 10–13, 28–35, 39, ECF No. 23-6. When Mr. Purkey's execution was just two months away, counsel for Mr. Purkey was told the FOIA requests would be processed on an "expedited" basis that would take up to six months. *Id.* ¶ 13, Ex. 10. When Mr. Purkey's counsel sought BOP counsel's assistance due to the unacceptable time frame for "expedited" processing, BOP counsel claimed it could not "circumvent" the FOIA process. *Id.* ¶ 13, Ex. 12. At no point did the BOP assert any objections to the pending requests or issue any formal, substantive response regarding the requests. *Id.* ¶¶ 12–13, 26. After the BOP failed to meet its

3

legal obligation to provide Mr. Purkey with his own records, the BOP now argues that Mr. Purkey could have obtained access to the requested material by filing a FOIA lawsuit. The Government may not unlawfully ignore records requests for months, only for Defendants to argue against expedited discovery in this action because, if Mr. Purkey truly wanted the documents, he would have filed another, separate lawsuit to compel production. This argument further illustrates Defendants' dilatory tactics and violation of Mr. Purkey's due process rights.

*Third*, the concept that Mr. Purkey should have but failed to seek litigation discovery at an earlier date is belied by the facts and Defendants' own arguments. As Defendants are aware, Mr. Purkey sought a court order for relevant medical testing prior to initiating this action, but that order was denied because he did not then have a pending *Ford* claim. Order Denying Pet. for a Writ of Habeas Corpus, *Purkey v. United States*, No. 2:19-cv-00414-JPH-DLP (S.D. Ind. Nov. 20, 2019), ECF No. 76 (Ex Parte); *see* R Woodman Decl. ¶ 18, ECF No. 23-6. He also sought expedited discovery in connection with his prior preliminary injunction motion in this matter, which was withdrawn only because Mr. Purkey's then scheduled execution was enjoined through a separate action and there was no pending execution warrant. In the months afterward, the parties submitted jurisdictional and dismissal briefing in this matter. Defendants took the positions that a *Ford* claim was not ripe because Mr. Purkey no longer had a scheduled execution date and sought to dismiss the case on that basis. Opp'n 2–3, ECF No. 27. They further asserted that Mr. Purkey was not entitled to discovery on his claim. Reply in Supp. of Defs.' Mot. to Dismiss Or, in the Alternative, to Transfer 9, filed on Mar. 30, 2020, ECF No. 21. When a new execution warrant was issued, Mr. Purkey promptly filed his Motion for Expedited Discovery. Even now that Mr. Purkey has a scheduled execution date that is mere days away, Defendants complain that it is too early to engage in discovery because they have a pending motion to

dismiss. Opp'n 9, ECF No. 27. It is illogical to argue that Mr. Purkey is not entitled to expedited discovery now because he should have sought discovery even earlier, when Defendants would have opposed any such request and have continuously blocked reasonable attempts to obtain relevant records. Moreover, throughout this time, there were multiple outstanding FOIA requests to the BOP allegedly being processed on an expedited basis. R. Woodman Decl. ¶¶ 13, 26, ECF No. 23-6. Mr. Purkey was not required to assume that the BOP's statement that the requests were being processed expeditiously was untrue. The current motion is timely.

*Fourth*, the unspecified "other channels" that Defendants claim Mr. Purkey should have pursued to obtain the requested information, Opposition 3 (ECF No. 27), merely underscore that Defendants' strategy is to continue to move the goalpost so as to avoid production until Mr. Purkey quite literally runs out of time. On September 19, 2019, BOP counsel suggested that Mr. Purkey file a FOIA request, subpoena, or discovery request to obtain certain records, including video footage. R. Woodman Decl. ¶ 11, Ex. 4, ECF No. 23-6. But, as discussed above, any discovery motion submitted prior to Mr. Purkey's rescheduled execution date would have been opposed on the basis that it was not ripe. While Mr. Purkey did seek the materials through FOIA, he never received them.

Then, on June 26, 2020, after Mr. Purkey's Preliminary Injunction Motion and Motion for Expedited Discovery were filed, BOP counsel emailed Mr. Purkey's counsel and claimed to have *no knowledge of pending document requests*, despite being repeatedly apprised of the pending FOIA requests. R. Woodman Suppl. Declaration in Supp. of Pl.'s Mot. for Expedited Discovery ("R. Woodman Suppl. Decl.") ¶¶ 3, 9, Exs. 1 and 4; Decl. R. Woodman Decl. ¶¶ 12–13, 26–27, 32, Exs. 10–13, 28–35, 39, ECF No. 23-6. Further, for the first time, BOP counsel informed Mr. Purkey's counsel that the "quickest way" to obtain the requested medical records

would be to ask Mr. Purkey to ask the prison staff to make a copy of his records to give to Mr. Purkey to then send to counsel. R. Woodman Suppl. Decl. ¶ 9, Ex. 4. Setting aside the logistical challenges of asking a prisoner suffering from dementia to request, obtain, and then find a way to deliver the records from prison to counsel during a pandemic, and setting aside the fact that there is no reason these records should not be provided directly from prison staff to counsel, this instruction was contrary to BOP counsel's prior correspondence and appeared designed to further frustrate Mr. Purkey's efforts.

*Fifth*, in support of their opposition to the medical testing and imaging requested by Mr. Purkey's medical experts, Defendants submit a declaration containing a hearsay professional medical opinion on behalf of an anonymous doctor who allegedly formed his or her opinion on the basis of a review of records that are being wrongly withheld from Mr. Purkey. T. Watson Decl. in Supp. of Defs.' Opp'n to Pl.'s Mot. for Expedited Discovery, filed on June 29, 2020, ECF No. 27-2. T.J. Watson, the Complex Warden at the Terre Haute facility, does not purport to possess any medical expertise. Yet his declaration states that an unnamed "treating physician" of Mr. Purkey "has reviewed Purkey's records and does not believe the tests [] are medically necessary or clinically indicated." *Id.* ¶ 5.[1] Ironically, this hearsay medical opinion relies on medical records Defendants refuse to produce. The submission of the declaration is accordingly a tacit admission that those withheld records are relevant to the issues pending before this Court, including in assessing the credibility, accuracy, basis, and weight of any proffered medical opinions. The hearsay medical opinion is also contradicted by the record. Mr. Purkey has offered declarations from three physicians explaining in detail why and how the records and medical

---

[1] Because this hearsay declaration has no evidentiary value and was improperly submitted by an individual with no ability to swear to the validity of the medical opinion purportedly provided therein, Mr. Purkey is separately moving to strike the declaration. *See* Plaintiff's Motion to Strike Declaration of T.J. Watson, ECF No. 27-2, filed July 2, 2020.

testing and imaging requested are relevant and necessary to the issues pending in this case. The conclusory hearsay statement in a layperson's declaration, based on unspecified records not before this Court, is irrelevant to determining whether expedited medical testing is appropriate, as is the fact that Mr. Purkey was previously denied an order for medical testing by the Southern District of Indiana when the request was not brought with a *Ford* claim, as it is here. Order Denying Pet. for a Writ of Habeas Corpus, *Purkey v. United States*, No. 2:19-cv-00414-JPH-DLP (S.D. Ind. Nov. 20, 2019), ECF No. 76 (Ex Parte); *see* R. Woodman Decl. ¶ 18, ECF No. 23-6.

Defendants' portrayal of the procedural and factual posture of this case is contradicted by the evidence and fails to refute Mr. Purkey's entitlement to the expedited discovery he seeks.

## II.    DEFENDANTS' ADDITIONAL ARGUMENTS AGAINST EXPEDITED DISCOVERY ARE MERITLESS

The additional arguments Defendants advance against Mr. Purkey's Motion for Expedited Discovery are equally unpersuasive, and Mr. Purkey's Motion for Expedited Discovery should be granted.

### A.    Mr. Purkey Has Already Met the *Ford* Threshold Showing of Incompetency, but Even if He Has Not, He Is Entitled to Expedited Discovery

Mr. Purkey has made a substantial threshold showing of incompetency entitling him to due process under *Ford* and *Panetti*, and even if he has not yet met that showing, this is not a basis for Defendants to obstruct expedited discovery of documents that have long been sought. Mr. Purkey has already submitted copious evidence demonstrating his entitlement to due process on his incompetency claim, including an evidentiary hearing to determine his competency to be executed. As described in more detail in the papers submitted in support of the Renewed Motion for Preliminary Injunction, ECF No. 23, Mr. Purkey has more than met the threshold showing of incompetency required under *Ford* through the submission of multiple declarations from

7

physicians and legal counsel and numerous documents, including medical records, detailing his history of progressive dementia, schizophrenia, complex-Post Traumatic Stress Disorder (PTSD), and severe mental illness.

Further, even if Mr. Purkey has not yet made a substantial threshold showing under *Ford*, that would not be a basis to deny this motion. Mr. Purkey has demonstrated, at minimum, some evidence of incompetency. Defendants are actively obstructing his ability to present further evidence prior to his execution. It would be inherently unjust for Defendants to be permitted to block Mr. Purkey's access to highly relevant evidence that is in their sole possession, custody, and control all while arguing that Mr. Purkey has not presented sufficient evidence to meet the *Ford* threshold showing. Defendants do not even deny the relevancy of Mr. Purkey's medical and psychological records to his incompetency claim. Opp'n 7, ECF No. 27 ("Purkey's request for medical and psychological records may bear on th[e] question" of his *Ford* claim). Indeed, in their Opposition papers, Defendants rely on the very medical records they refuse to provide to Mr. Purkey. T. Watson Decl. ¶ 5, ECF No. 27-2. In light of Defendants' actions, requiring Mr. Purkey to first make a threshold incompetency showing under *Ford* in order to obtain the requested expedited discovery—a requirement that would be over and above the showing necessary under the "good cause" test for granting expedited discovery—would place an improper burden on Plaintiff. *Attkisson*, 113 F. Supp. 3d at 162.

**B.      Mr. Purkey Is Entitled to Expedited Discovery under the "Good Cause" Test**

Mr. Purkey satisfies each factor of the "good cause" test frequently used in this District, and relied on by Defendants, for determining whether expedited discovery is appropriate. *Attkisson*, 113 F. Supp. 3d at 162 (under the "reasonableness" or "good cause" standard, courts consider "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants

to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.").

*First*, as Defendants acknowledge, Mr. Purkey has a pending preliminary injunction motion (ECF No. 23). The fact that a preliminary injunction motion and motion for expedited discovery were previously filed and withdrawn in this matter because Mr. Purkey's then-scheduled execution date was enjoined through another action is irrelevant to the issue now before the Court. Defendants acknowledge that, following the injunction of that execution date, they took the position "that this Court's injunction in another case mooted [Mr. Purkey's] *Ford* claim." Opp'n 6, ECF No. 27. In the interim, Mr. Purkey was promised, but never received, expedited processing of his FOIA requests. Upon the issuance of a new execution warrant on June 15, 2020, Mr. Purkey promptly filed his Motion for Expedited Discovery and Renewed Motion for Preliminary Injunction. Defendants articulate no reason why "the Court should not give great weight to the first factor" of the "good cause" test. Opp'n 7, ECF No. 27.

*Second*, Mr. Purkey's expedited discovery requests are narrowly tailored and appropriate in scope. The medical and psychological records Mr. Purkey seeks cover a discrete period of time (Jan. 1, 2017 through the present), not his entire medical history. And Defendants concede the records' relevancy to his *Ford* claim. *Id.*; *see also* T. Watson Decl. ¶ 5, ECF No. 27-2. The video footage sought by Mr. Purkey is also temporally and spatially limited (July 25, 2019 through the present). Although Defendants argue that such video footage would take months to review and imply that it may not even be available, Opposition 8 (ECF No. 27), they have had many months to collect and review it, and BOP counsel previously indicated that it would work to separate and preserve such video at least for certain periods from July 25, 2019 through

9

September 2019, the dates relevant to then outstanding requests for footage.[2] R Woodman Decl. ¶ 11, Exs. 4–5, ECF No. 23-6. Defendants' purported concern that production of the footage would result in disclosure of "law enforcement sensitive information" is similarly unsupported and unfounded, given Mr. Purkey is only requesting the footage of his cell. Opp'n 9, ECF No. 27.

The medical testing and imaging requested by Mr. Purkey's medical experts is similarly limited and is specifically identified in Plaintiff's requests. Defendants cite no authority for their argument that such testing is irrelevant to Mr. Purkey's competency to be executed.[3] Mr. Purkey's counsel have been diligently working to secure appointments for the testing and have confirmed that, once the BOP complies with basic requirements to maximize safety and protection from COVID-19, the tests could be performed in the near-term over the course of just a few days at a hospital not far from USP Terre Haute, contrary to Defendants' argument that such testing "will serve only to require lengthy delays for off-site procedures." R. Woodman Suppl. Decl. ¶¶ 10–11, Exs. 5–6; Opp'n 7, ECF No. 27. Defendants' "delay" argument is especially disingenuous given Mr. Purkey has been on death row for over 16 years, he has sought these tests for nearly a year, and any delay is the fault of Defendants, as it was not until after the filing of Mr. Purkey's recent motions that the BOP expressed an alleged willingness to assist in setting up such testing despite their purported rule that off-site testing requires a court order. R. Woodman Suppl. Decl. ¶ 6, Exs. 2–3.

---

[2] To the extent Defendants are now claiming that the requested video footage is unavailable, that is directly contrary to BOP counsel's prior statements regarding preservation, and, further, would be inconsistent with appropriate practices for preserving records clearly relevant to and sought in pending litigation.

[3] As discussed above, Warden Watson is in no way an authority on the issue of the necessity of medical testing, and his hearsay declaration is not evidence. T. Watson Decl. ¶ 5, ECF No. 27-2.

Mr. Purkey's requests for information relating to the COVID-19 pandemic, including information regarding the outbreak at USP Terre Haute—a facility specifically identified by the BOP as housing COVID-19 positive prisoners—and the facility's safety protocol and procedures, are also directly relevant to the claims and defenses in this action because they are a prerequisite to obtaining other discovery to which Purkey is entitled, such as access to medical testing. They are also directly relevant to the Renewed Motion for Preliminary Injunction itself. An inability to identify and produce written safety protocol and procedures in place during a pandemic or more specific information regarding testing for COVID-19 at USP Terre Haute is simply further proof that an injunction is needed so that Mr. Purkey's counsel and physicians can be assured of safe access to him to obtain additional evidence for his incompetency claim—and to provide counsel to him in advance of his scheduled execution.[4] *See* R. Woodman Suppl. Decl. ¶¶ 5–8, Exs. 2–4.

Defendants imply that the pursuit of expedited discovery relating to the merits of the claims, as opposed to discovery tailored to reveal information related to the Renewed Motion for Preliminary Injunction, is by nature not appropriately limited. Opp'n 7, ECF No. 27. But the expedited discovery that Mr. Purkey requests is both narrowly-tailored and relevant to the merits of his claims and his Renewed Motion for Preliminary Injunction. The evidence sought speaks to

[4] As of July 2, 2020, the BOP reported a total of eight positive cases and one COVID-19-related death among USP Terre Haute prisoners. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited June 29, 2020). But, fewer than 19 percent of the prisoner population at USP Terre Haute has been tested for the virus. *See id.* (reporting COVID-19 tests administered to 240 of the 1,300 prisoners detained at the facility). The BOP has not published or disclosed any established criteria for determining whether a given prisoner at USP Terre Haute should be administered a test. Nor has BOP disclosed any information about testing of USP Terre Haute staff, whether any quarantine measures are in place for prisoners and staff who exhibit COVID-19 symptoms, or whether any precautionary measures are in place for isolating those with known exposure to COVID-19-positive individuals. All of this information is critical to understanding the full impact of COVID-19's spread within the facility's walls.

his competency to be executed and to the requested injunction of his scheduled execution, which

is necessary to afford Mr. Purkey due process to prove his *Ford* claim and is itself based on Mr.

Purkey's likelihood of success on the merits.[5] In the cases cited by Defendants, the expedited

discovery requested was held to be overly broad because the requests sought information that

had no clear nexus to the urgent purpose and need articulated by the movants. *See Attkisson*, 113

F. Supp. 3d at 163–64 (where plaintiff sought expedited discovery to identify Doe defendants,

requests that were "not limited to the particular individuals plaintiffs intend[ed] to sue" and

instead sought identification of "a broad range of individuals" with knowledge of relevant

information were overbroad); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97–98 (D.D.C. 2014) (in

suit regarding alleged breaches of non-disparagement provision in a settlement agreement,

motion for expedited discovery was not narrowly tailored to its stated purpose of supporting

plaintiff's pending preliminary injunction motion, where plaintiff sought extensive discovery on

issues such as damages, which in turn contradicted plaintiff's "irreparable harm" argument in the

preliminary injunction motion). Here, Mr. Purkey's limited requests are directly related to

providing him a fair evidentiary hearing on his competency to be executed and to the pending

injunction motion, both of which must be urgently addressed due to the timeline of Mr. Purkey's

newly scheduled execution date and given that a *Ford* claim is not ripe until a time is set to

execute the sentence. *Panetti*, 551 U.S. at 947 (citing *Stewart v. Martinez-Villareal*, 523 U.S.

637, 644–45 (1998)).

*Third*, Mr. Purkey will be irreparably harmed if he is not granted the expedited discovery

requested. Death is the ultimate irreparable injury, and that is what will result if he is not

---

[5] Mr. Purkey has also requested that, in the alternative that the Court is not now inclined to grant an injunction through disposition of the merits of this case, he be granted expedited discovery while his Renewed Motion for Preliminary Injunction is pending so that he may supplement that motion.

afforded due process to obtain relevant evidence and prove his *Ford* claim. Defendants concede "that any harm Purkey would suffer if this Court denies his motion would be irreparable." Opp'n 8, ECF No. 27. Unbelievably, however, they argue that this third factor "weighs in" their favor, because Mr. Purkey's complaint should be dismissed in any event. *Id.* Given that the third factor of the "good cause" test is whether the plaintiff will be irreparably harmed without the expedited discovery and not whether the case may eventually be dismissed, the Court need not even entertain Defendants' argument. *Attkisson,* 113 F. Supp. 3d at 164.

*Fourth*, the burden on Defendants to comply with the expedited discovery requests is minimal. As addressed herein, the records requests are temporally limited and specific. Defendants previously represented that they would work to separate and preserve much of the relevant video footage, and they clearly have easy access to Mr. Purkey's updated medical and psychological records, since they submitted a hearsay declaration stating that a prison physician recently reviewed and relied on those same records. R. Woodman Decl. ¶ 11, Exs. 4–5, ECF No. 23-6; T. Watson Decl., ECF No. 27-2. The medical testing and imaging requested can be promptly scheduled and accomplished in a matter of days. R. Woodman Supp. Decl. ¶¶ 10–11, Exs. 5–6. And, contrary to Defendants' claims, Mr. Purkey is not insisting that Defendants pay for his medical testing and imaging at this time. The Federal Public Defender will pay the costs for the tests and imaging and will preserve for a later determination whether the BOP has the responsibility to reimburse those costs. Finally, any COVID-19 policies, procedures, and statistics should presumably be of relatively recent vintage, carefully tracked, limited in scope, and therefore simple to obtain and produce. Indeed, on June 16, 2020, BOP counsel represented that she would be able to send Mr. Purkey's counsel the COVID-19 policies "in writing . . . by tomorrow." R. Woodman Decl. ¶ 38, Ex. 52, ECF No. 23-6. Any time pressure placed on

Defendants to produce these materials is due to their own delay and does not render the requests overburdensome.

*Fifth*, the timing of Mr. Purkey's expedited discovery request is appropriate. Defendants have had months to produce the requested evidence through various channels. This, plus the immediacy of the need for this narrowly-tailored discovery in order to avoid irreparable harm (an immediacy for which Defendants are responsible), far outweighs any of Defendants' alleged concerns regarding the fact that there is not yet a ruling on their motion to dismiss.[6] While Defendants argue that this Court has held that the pendency of a motion to dismiss is the "most important" factor of the "good cause" test, citing *Guttenberg*, the court in *Guttenberg* merely held that, in that particular case, the plaintiff sought broad discovery that was not tied to the alleged purpose of the expedited discovery motion and had failed to timely file the motion, and, given the motion was finally filed only three weeks after defendant's motion to dismiss was filed, it appeared to simply be an attempt "to fend off a renewed motion to dismiss." *Guttenberg*, 26 F. Supp. 3d at 99. None of these circumstances apply here. To the extent the discovery requested now is "well in advance of typical discovery," that is largely of Defendants' own making, given they scheduled Mr. Purkey's execution with just thirty days' notice. Opp'n 9, ECF No. 27. Mr. Purkey's requests are timely because he has a scheduled execution date, rendering his *Ford* claim ripe.

---

[6] Even if the Court were to credit Defendants' arguments in the motion to dismiss, the proper result would be to transfer this matter to the Southern District of Indiana, not dismiss the action entirely. *See* Renewed Prelim. Inj. Mot. Reply 18–20. Thus, partaking in "early" discovery prior to a determination on the motion to dismiss would not be a useless endeavor, nor would it be "unjust" to Defendants. *Cf. Guttenberg*, 26 F. Supp. 3d at 99.

14

Mr. Purkey satisfies every factor of the "good cause" test for expedited discovery, and Defendants fail to demonstrate that even one of these factors weighs in their favor.[7]

### C.    This Court Has the Authority to Grant the Relief Requested

As stated in Mr. Purkey's Renewed Motion for Preliminary Injunction and papers filed in support of that motion, this Court has the authority to grant the relief requested and should so exercise that authority. *See* Reply Brief in Support of Renewed Motion for Preliminary Injunction 4–10, filed on July 2, 2020.

### CONCLUSION

For the foregoing reasons, Mr. Purkey respectfully requests that the Court grant his Motion for Expedited Discovery and provide him the requested discovery on the timeline included in the Proposed Order (ECF No. 24-2). Plaintiff further understands that Defendants have requested an opportunity to meet and confer and to obtain corresponding discovery should the Court grant Mr. Purkey's motion in whole or in part. Opp'n 10, ECF No. 27. Although Defendants have never engaged substantively with Mr. Purkey's counsel regarding his pending requests, either in the FOIA process or otherwise, Plaintiff has been and remains willing to engage in meet and confer discussions regarding any legitimate issues, in accordance with this Court's rules. However, the Court should not enable Defendants to misuse the meet and confer process to further frustrate or delay Plaintiff's efforts to obtain relevant evidence in this case. As

---

[7] For the reasons stated in Plaintiff's Memorandum in Support of the Motion for Expedited Discovery at 7–12, filed on June 23, 2020 (ECF No. 24-1), Mr. Purkey has also demonstrated that he is entitled to expedited discovery under the *Notaro* test. *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142–43 (D.D.C. 2005) (*Notaro* approach requires that the party seeking expedited discovery demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.") (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

for Defendants' alternative request for reciprocal discovery, Defendants have never asserted any requests for discovery and failed to specify any requests in their Opposition. Accordingly, the issue of whether Defendants may be entitled to expedited discovery at this time is not ripe and, in any event, would need to be the subject of a separate motion under the Court's practices and procedures, not embedded in an opposition.

DATED: July 2, 2020

Respectfully Submitted,

*/s/Charles F.B. McAleer, Jr.*
Charles F.B. McAleer, Jr. (DC Bar #388681)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5963
Email: CMcAleer@milchev.com

*/s/Brian Fleming*
Brian Fleming (DC Bar #974889)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5871
Email: bfleming@milchev.com

*/s/Rebecca E. Woodman*
Rebecca E. Woodman (*pro hac vice*)
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
Telephone: (785) 979-3672
Email: rewlaw@outlook.com

Michelle M. Law, MO Bar No. 45487
(appointment motion to be filed)
Assistant Federal Public Defender
Western District of Missouri
901 Saint Louis Street, Suite 801
Springfield, Missouri 65806
Telephone: (417) 873-9022

16

Facsimile: (417) 873-9038
Email: michelle_law@fd.org

***Counsel for Plaintiff***

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 2nd day of July, 2020, I caused Plaintiff's Reply in Support of Plaintiff's Motion for Expedited Discovery to be filed electronically with the Clerk of the Court via CM/ECF, with all authorized parties being served electronically via CM/ECF.

*/s/Charles F.B. McAleer, Jr.*
Charles F.B. McAleer, Jr. (DC Bar #388681)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5963
Email: CMcAleer@milchev.com