**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WESLEY I. PURKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 19-03570 (TSC) |
| | ) |
| WILLIAM P. BARR, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL**

Pursuant to Federal Rule of Civil 62(d) and consistent with Federal Rule of Appellate

Procedure 8(a)(1), Defendants respectfully move for a stay pending appeal of this Court's Order,

issued on July 15, 2020, ECF No. 36, enjoining Defendants from proceeding with the execution

of Plaintiff Purkey, scheduled for July 15, 2020, until further order of this Court. In support of

this motion, Defendants attach the declaration of Rick Winter, previously filed in this Court in *In*

*re Fed. Bureau of Prisons Protocol Litigation*, 19-mc-145, ECF No. 139-1, which describes the

harm to the Federal Bureau of Prisons and the stakeholders if the execution were to be

postponed. In view of the fact that the execution lies just 8 hours away, Defendants are

contemporaneously seeking relief in the Court of Appeals.

Defendants recognize that this Court has determined that Plaintiffs meet the standard for

issuance of a preliminary injunction; Federal Rule of Appellate Procedure 8(a)(1), however,

requires Defendants to first move in this Court for a stay of the injunction pending appeal before

seeking a stay in the Court of Appeals. Accordingly, for the reasons stated below and in

Defendants' opposition to Plaintiff's motion for preliminary injunction, ECF No. 26, Defendants

respectfully request that the Court stay the injunction pending appeal.

## ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 62(d) authorizes a district court to stay an injunction pending appeal. The Court considers the same four factors it considers in deciding a motion for preliminary injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

## I. DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE THIS COURT LACKS JURISDICTION, AND PURKEY HAS FAILED TO MAKE A THRESHOLD SHOWING OF INCOMPETENCY

This Court concluded that Purkey has both shown this Court's jurisdiction and his likelihood of success on his claims of incompetency and due process. With respect, Defendants submit that they are likely to succeed on one or both of these issues on appeal.

### A. Purkey Failed to Show that this Court Has Jurisdiction

If successful, Purkey's claim would necessarily bar his execution. For that reason, it must be brought under 28 U.S.C. § 2241, the federal habeas statute, in the Southern District of Indiana, his district of incarceration. This Court cannot exercise jurisdiction over the only proper defendant for Purkey's claim.

Congress may limit a court's power to provide equitable relief, even for violations of constitutional rights. "The power of federal courts in equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). In death penalty litigation, the "criterion" is "whether a grant of relief to the inmate would necessarily bar the execution." *Hill v. McDonough*, 547 U.S. 573, 583

2

(2006). If so, that claim must be brought in habeas. *See id.* at 580-83; *Nelson v. Campbell*, 541 U.S. 637, 643-44 (2004).

Unlike the prisoners in *Nelson* and *Hill*, Purkey asks this Court to stop the Defendants from executing him, and therefore he must bring his claim in habeas. Purkey's *Ford* claim would, if successful, "necessarily bar [his] execution." *Hill*, 547 U.S. at 583. This Court need look no further than Purkey's prayer for relief, which asks this Court to "[e]nter an injunction preventing his execution during any period of incompetency, and lasting until such time as his competency is restored." Compl. at 57, ECF No. 1. He asks this Court to declare that "executing him in his present condition violates his rights as guaranteed by the Eighth Amendment to the United States Constitution," Compl. at 57, ECF No. 1, but fails to acknowledge that "a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence." *Webster v. Daniels*, 784 F.3d 1123, 1139 (7th Cir. 2015) (en banc). Unlike the prisoners in *Nelson* and *Hill*, Purkey does not challenge the means of his execution, but the Government's ability to execute him at all. Because Congress has provided habeas as the exclusive cause of action for Purkey's claim, he has failed to show a likelihood of success on his claim in this Court.

This Court cannot construe Purkey's complaint as a habeas petition, because this Court lacks jurisdiction over an absent and necessary party: Purkey's custodian, the warden of the prison where he is confined. "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *accord Day v. Trump*, 860 F.3d 686, 689 (D.C. Cir. 2017); *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238-39 (D.C. Cir. 2004). "The federal habeas statute straightforwardly provides that the

proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'"
*Rumsfeld*, 542 U.S. at 434 (quoting 28 U.S.C. § 2242). "In accord with the statutory language and *Wales* [*v. Whitney*, 114 U.S. 564, 574 (1885)]' immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.*

Purkey is confined at the United States Penitentiary in Terre Haute, Indiana. Compl. ¶ 6, ECF No. 1. T.J. Watson is the warden of Purkey's prison and the only proper defendant to claims sounding in § 2241. Though Purkey named Attorney General Barr and the Bureau of Prisons Director in this action, he failed to name Warden Watson. Because Purkey in fact cannot sue Warden Watson in a habeas petition here in the District of Columbia, this Court cannot construe his Complaint as a habeas petition, and he has failed to show a likelihood of success on his claims.

### B.      Purkey's *Ford* Claim Fails to Make a Threshold Showing of Incompetency

Defendants are likely to defeat Purkey's claim that he is unable to "'reach a rational understanding of the reason for his execution.'" *Madison v. Alabama*, 586 U.S. __, 139 S. Ct. 718, 723 (2019) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 958 (2007)). The only direct support for Purkey's *Ford* claim comes from the report of Dr. Bhushan Agharkar, which is attached as Exhibit 1 to Purkey's complaint. Although Dr. Agharkar opines that Purkey is incompetent to be executed, his report is fundamentally flawed on its face because it conflates Purkey's understanding of the reason for his *execution*, which would be constitutionally disqualifying under *Ford*, with Purkey's understanding of the reason for *scheduling his execution date*, which is not.

Moreover, Purkey's own statements and writings show that he is competent to be executed. Purkey told Dr. Agharkar "that he knew what an execution was and said that he accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11, ECF No. 1-1. Purkey has filed a pro se civil rights lawsuit alleging that his constitutional rights were violated by "the defendants['] deliberate arbitrary selection of his execution date, which was substantially motivated by his protracted jailhouse lawyering." Compl. Ex. 15 at 994, ECF No. 1-18. Although legally deficient, Purkey's pro se complaint is coherent and refutes his claim that he is incompetent. Furthermore, on May 13, 2019, Purkey filed a handwritten pro se "Petition to Expedite Execution of Petitioner's Death Sentence Pursuant to 28 U.S.C. § 2241" in the Southern District of Indiana, in which he stated that he was sentenced to death after he was found guilty of kidnapping resulting in death. Compl. Ex. 15 at 1029-30, ECF No. 1-18. This handwritten petition further demonstrates that Purkey's understands the reason for his execution.

Purkey's allegations in this case, even assuming they are true, indicate at most that he lacks a rational understanding of the reason for setting his execution date. None of his allegations supports his claim that he is unable to rationally understand the reason for his execution.

C.     **Purkey Is Not Entitled Any Particular Process Until He Establishes a Substantial Threshold Showing of Incompetency, and a Habeas Petition Affords Him an Available and Adequate Procedure for Resolving his *Ford* Claim**

Defendants are likely to prevail on their argument that Purkey is not entitled to any particular process unless and until he makes a substantial threshold showing of incompetency. It is clear from *Panetti* that no process—including information sharing or discovery—is required unless and until a prisoner first succeeds in making a substantial threshold showing of incompetency. *See Panetti*, 551 U.S. at 950 ("Petitioner was entitled to these protections once he had made a substantial threshold showing of insanity." (quotation omitted)). As explained above,

5

Purkey has failed to make such a showing. Furthermore, there exists under 28 U.S.C. § 2241 an available and adequate procedure for bringing a *Ford* claim, notwithstanding Purkey's continued refusal to pursue it.

## II.   THE BALANCE OF HARMS WEIGHS IN FAVOR OF ENTRY OF A STAY OF THE PRELIMINARY INJUNCTION

This Court held that the balance of harms weighs in favor of issuance of a preliminary injunction. Defendants respectfully disagree. The Supreme Court has repeatedly recognized the Government and the victims' compelling interest in the timely enforcement of a death sentence. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998); *Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992); *see also Bucklew v. Precythe*, 139 S.Ct. 1112, 134 (2019) ("The people of Missouri, the surviving victims of [the condemned inmate's] crimes, and others like them deserve better. Even the principal dissent acknowledges that the long delays that now typically occur between the time an offender is sentenced to death and his execution are excessive." (citation omitted)). This is particularly the case when the execution date is set and the Government has mobilized its resources to carry out the lawful sentence.

As Mr. Winter explains in his declaration, each execution requires significant advanced planning and coordination, including the "activation of the execution team, which consists of over 40 BOP staff members, Winter Decl. ¶ 5, the mobilization of approximately 200 BOP staff at the Federal Correctional Complex at Terre Haute to serve as institution security and support, *id.* ¶ 8, the synchronization of schedules of BOP contractors who must set aside their own personal and work-related matters for each execution, *id.* ¶ 6, the coordination of security measures with federal, state, and local law enforcement agencies, *id.* ¶ 7, the arrangement of travel and lodging for any victims' family members who have committed to witnessing the execution, *id.* ¶ 11, as well as the participation of approximately 50 additional BOP personnel

6

from specialized teams, such as Special Operations Response Teams and Disturbance Control Teams, who will need to travel to FCC Terre Haute from other BOP institutions, *id.* ¶ 10. These preparations cannot easily be undone: "Any adjustment to the execution dates would require significant planning and coordinately such as that which already has been undertaken by BOP to date." *Id.* ¶ 12. Accordingly, beyond the Government's strong interest in proceeding with the criminal judgment, operational considerations surrounding the planned executions lend further support in favor of a stay.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court stay its injunction pending Defendants' appeal of this Court's July 15, 2020, Order enjoining Defendants from proceeding with Purkey's execution.

Dated: July 15, 2020                                Respectfully submitted,

                                                MICHAEL R. SHERWIN
                                                Acting United States Attorney

                                        By   /s/ *J. Benton Hurst*

                                                BRIAN P. CASEY
                                                KATHLEEN D. MAHONEY
                                                J. BENTON HURST (D.D.C. Bar #MO009)
                                                DAVID WAGNER
                                                Special Assistant United States Attorneys

                                                Charles Evans Whittaker Courthouse
                                                400 East 9th Street, Room 5510
                                                Kansas City, Missouri    64106
                                                Telephone: (816) 426-3122
                                                Fax: (816) 426-5186
                                                E-mail:   Brian.Casey@usdoj.gov
                                                          Kate.Mahoney@usdoj.gov
                                                          John.Hurst@usdoj.gov
                                                          David.Wagner@usdoj.gov

                                                *Attorneys for Defendants*

7
